# MUTUAL RELEASE AND SETTLEMENT AGREEMENT
(Read Before Signing)
Execution version

This Agreement ("**Agreement**") is entered into between Kingdom Chevrolet, Inc. ("**Kingdom**") and Western Avenue Nissan, Inc. ("**Western**") (collectively the "**Dealerships**"); Richard Ruscitti ("**Ruscitti**"); and David Herzog ("**Trustee**"), not individually but solely as the Chapter 7 Trustee of the bankruptcy estate of Michael Helmstetter (the "**Estate**"). The Dealerships, Ruscitti and the Trustee are collectively referred to as the "**Parties**."

WHEREAS, this Agreement will be effective and legally binding conditioned upon the Bankruptcy Court's entry of a final order approving the Agreement in the Bankruptcy Case referenced below (the "**Effective Date**"),

WHEREAS, on December 17, 2014, Michael Helmstetter ("**Helmstetter**"), a former employee and minority owner of Kingdom, filed an accounting action against the Dealerships and Ruscitti in the Circuit Court of Cook County entitled *Helmstetter v. Kingdom Chevrolet, Inc., et al.*, Case No. 2014 CH 20208 to compel examination of corporate books and records (the "**Chancery Action**").

WHEREAS, on March 3, 2015, the Dealerships filed a lawsuit in the Circuit Court of Cook County, entitled *Kingdom Chevrolet, Inc., and Western Avenue Nissan, Inc. v. Michael Helmstetter, Dario Camarillo and ADK Marketing Consultants*, Case No. 2015 L 2134, for breach of fiduciary duty and fraud, (the "**Fraud Action**").

WHEREAS on March 29, 2017, Helmstetter filed, in the Chancery Action, a Third Amended Complaint against the Dealerships and Ruscitti alleging, *inter alia*, deprivation of corporate distributions and loss of corporate opportunities and seeking monetary damages (the "**Damages Counts**").

WHEREAS, on June 22, 2017, the Dealerships filed a counterclaim (the "**Counterclaim**") against Helmstetter in the Chancery Action alleging, *inter alia*, that Helmstetter fraudulently approved payment of over $700,000 for advertising services never received; engaged in an improper relationship with an employee he supervised who was stealing from the Dealerships by double-dipping on her paycheck; and purchased for $25,000, and attempted to resell, a stolen vehicle from a wholesaler.

WHEREAS, on October 9, 2019, Helmstetter filed his voluntary petition for relief under Chapter 7 of title 11 of the United States Code in the United States Bankruptcy Court for the Northern District of Illinois (the "**Bankruptcy Court**"), assigned Case Number 19-28687 (the "**Bankruptcy Case**"), the Hon. Jacqueline P. Cox, Bankruptcy Judge, presiding ("**Bankruptcy Judge**"). The Trustee is the duly appointed and acting Chapter 7 Trustee in the Bankruptcy Case.

WHEREAS, in his Bankruptcy Schedules, Helmstetter lists, *inter alia,* the following assets:

A.  unspecified issued and outstanding shares of common stock of Kingdom, constituting 33% of the issued and outstanding shares of common stock of Kingdom (the "**Scheduled Kingdom Shares**");

B.  a 25% interest in Western (with Ruscitti owning the remaining 75%) (the **"Disputed Western Shares"**); and

C.  an interest in "Reinsurance Entities" defined below.

WHEREAS, Helmstetter has, at various times, claimed an equitable or legal interest in, or proceeds from, various "reinsurance entities" owned in whole or in part or controlled by Ruscitti (or his agents or nominees or family members), including, but not limited to, those referenced below (the "**Reinsurance Entities**"):

- R&R Warranty Reinsurance Company, Ltd.
- RR&M Warranty Reinsurance Company, Ltd.
- Go Cubs Go Reinsurance Company, Ltd.
- Ruscitti Insurance Group Reinsurance Company, Ltd.
- Western Avenue Reinsurance Co.
- Kingdom Reinsurance Company, Ltd.
- SideCars, Inc.
- SideCars Insurance Company, Ltd.

WHEREAS, Ruscitti, Kingdom and Western deny that Helmstetter owns any interest in the Reinsurance Entities.

WHEREAS, Helmstetter now alleges he owns more than 33% of the issued and outstanding shares of common stock of Kingdom (such additional shares, together with the Scheduled Kingdom Shares, the "**Kingdom Shares**").

WHEREAS, Ruscitti and Kingdom admit that Helmstetter owns the Scheduled Kingdom Shares and deny that Helmstetter owns any additional shares of Kingdom.

WHEREAS, Ruscitti and Western deny that Helmstetter owns any interest in Western, deny the authenticity of any copy of a stock certificate for Western which Helmstetter purports to possess, and deny that Helmstetter has a legally enforceable ownership interest in the Disputed Western Shares.

WHEREAS, *Westernavenissan.com* is owned by Western with Helmstetter listed as the "contact person" for that entity. The Estate, through the Trustee, acknowledges that it has no known legal or equitable interest in the *Westernavenissan.com* website or domain name or URL (the "**Western Dealership Domain Name**").

WHEREAS, by entering into this Agreement, the Parties intend to, *inter alia*, accomplish the following:

(1)   compromise and settle all matters in dispute between them related to any past, present or future claims by Helmstetter and the Estate for any legal or equitable relief or damages including, but not limited to, those claims set forth in the Chancery Action, Damages Counts, Counterclaim, and Fraud Action;

(2)   compromise and settle all matters in dispute between them related to any past, present or future claims by Helmstetter and the Estate for any legal or equitable relief, or the proceeds from, any entity owned or controlled, in whole or in part, by Ruscitti or his agents or nominees or family members including,

2

but not limited to, any claimed interest by Helmstetter and the Estate in the "Reinsurance Entities" referenced above;

(3) compromise and settle all matters in dispute between them related to any claim by Helmstetter and the Estate for any claimed interest by Helmstetter and the Estate in Western; and

(4) effectuate the transfer by the Estate to Kingdom of the Kingdom Shares and any and all other shareholder interests in Kingdom or Western; relinquish any claim of ownership by the Estate and Helmstetter in Western; and surrender to Western and/or Ruscitti any interest of Helmstetter and the Estate in the Western Dealership Domain Name.

**NOW, THEREFORE,** for good and lawful consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties intending to be legally bound hereby, agree as follows:

1. **Incorporation of Recitals.** The Recitals set forth above are incorporated in the body of this Agreement as if fully set forth herein.

2. **Ruscitti Settlement Payment**. Upon the terms and conditions of this Agreement and in exchange for the agreements and Releases set forth herein, Kingdom and/or Ruscitti shall pay in good funds to the Trustee for the benefit of the Estate the amount of $555,000.00 ("**Ruscitti Settlement Payment**").

3. **Estate's Release and Transfers**. In exchange for the Ruscitti Settlement Payment, referenced in the preceding paragraph, the Estate will: (a) forever release any claim of ownership in, or claim to proceeds from, the Dealerships, the Reinsurance Entities and the Western Dealership Domain Name; (b) transfer all of its right, title and interest in and to the Kingdom Shares and all other shares of common stock, and any and all other shareholder interests in Kingdom and Western to Kingdom and Western, if any, respectively (collectively, the "**Transfer**"); and (c) execute and deliver a lost share affidavit with respect to the Kingdom Shares ("**Lost Share Affidavit**"), attached hereto as **Exhibit A**. The Transfer will be effective upon entry of the Bankruptcy Court Order (as defined below).

4. **Representations and Warranties of the Estate**. The Estate, through the Trustee, represents and warrants to Ruscitti, Kingdom and Western that the following statements are true and correct on the date hereof and will be true and correct as of the date that the Bankruptcy Court Order is entered as though made on such date:

a. The consummation of the Transfer will not: (i) conflict with any existing provision of applicable law or any existing order, rule, regulation, judgment or decree of any court, arbitrator or agency of government applicable to the Estate; (ii) to the best of the Trustee's knowledge and belief, violate, be in conflict with, result in a breach of, or constitute (with or without notice or lapse of time or both) a default under (or give rise to any right of termination, cancellation or acceleration) any of the terms, conditions or provisions of any note, bond, mortgage, indenture, license, agreement or other instrument or obligation to which the Estate is a party; or (iii) violate any order, writ, injunction, decree, statute, rule or regulation applicable to the Estate.

b. Except with respect to the Bankruptcy Case, no consent, approval or authorization of, or declaration, filing or registration with, any governmental authority is required in connection with the consummation by the Estate of the Transfer. No consent, approval or authorization of any party to any

3

agreement or other instrument to which the Estate is a party is required for the consummation of the Transfer.

        c.      The Estate owns all of the Debtor's right, title and interest in the Kingdom Shares, excepting only any voidable interest claimed by Zephry 2020, Inc., Helmstetter Family Trust and Helmstetter Children's Trust, and the Disputed Western Shares. The Estate has the right to sell and transfer the Kingdom Shares and the Disputed Western Shares, free and clear of all encumbrances subject to entry of the Bankruptcy Court Order. Other than the Kingdom Shares and the Disputed Western Shares, the Estate has no knowledge of any outstanding options, warrants, convertible debt, or any other rights to acquire an ownership interest in the Dealerships or the Reinsurance Entities. The Estate has had an opportunity to review with the Estate's own tax advisors the tax consequences of the Transfer. The Estate understands that it must rely solely on the Estate's advisors and not on any statements or representations by Kingdom or any of its representatives. The Estate understands that the Estate will be solely responsible for any tax liability to or of the Estate that may arise from the Transfer pursuant to applicable law and regulations applicable thereto.

        d.      The Trustee will seek approval from the Bankruptcy Court of the Transfer and Release pursuant to Bankruptcy Code 363(f) and Bankruptcy Rules 6004 and 9019.

    5.    **Court Approval**. The Trustee agrees to use his reasonable best efforts to promptly seek upon notice and hearing, in the Bankruptcy Case, the entry of a final order (collectively, the "**Bankruptcy Court Order**"), attached hereto as **Exhibit B**, approving (i) this Agreement and the relief authorized in Bankruptcy Code 363(f) and Bankruptcy Rules 6004 and 9019; and (ii) the Trustee's Motion for Entry of an Agreed Order Determining Ownership of at least 33% of Stock of Kingdom Chevrolet. The Parties expressly agree that this Agreement shall be immediately null and void if the Bankruptcy Court does not enter the Bankruptcy Court Order in the Bankruptcy Case. The Trustee's obligations under this Agreement are subject to and conditional on the approval of this Agreement by the Bankruptcy Court through its entry of a final order approving this Agreement and authorizing the Trustee to perform his obligations undertaken herein.

    6.    **Dismissal of Actions**. The Trustee shall sign such necessary pleadings, drafted by Ruscitti, Kingdom and Western and reasonably acceptable to the Trustee, to dismiss, *with prejudice*, the Chancery Action including the Damages Counts, within three (3) business days of its receipt in good funds of the Ruscitti Settlement Payment, with each party to bear its own fees and costs. Contemporaneously with the Trustee's dismissal pleadings, the Dealerships shall file pleadings to dismiss, *with prejudice*, the Counterclaim and Fraud Action as to Helmstetter.

    7.    **Other Provisions to Effect Settlement Terms**. The Estate through the Trustee will, from time to time on or after the Effective Date (as defined below), execute and deliver all such further assignments, endorsements and other documents, and take all such further actions, as the Dealerships or Ruscitti, as the case may be, reasonably request in order to complete the transactions contemplated by this Agreement. Without limitation of the foregoing, the Estate through the Trustee agrees to assign, transfer, convey and deliver, and hereby assigns, transfers, conveys and delivers, exclusively to Ruscitti (or his named agent or nominee), all right, title and interest in, to and under the Western Dealership Domain Name, including without limitation, all goodwill associated with the Western Dealership Domain Name and any trademark rights in and/or to the Western Dealership Domain Name. The Estate through the Trustee shall reasonably cooperate with Ruscitti, solely at Ruscitti's expense and with no expense being incurred to the Estate, to effect prompt transfer of ownership and control of the Western Dealership Domain Name,

4

including without limitation to the best of the Trustee's resources based on the documents and knowledge available to the Trustee for (i) unlocking the Western Dealership Domain Name with the applicable registrar and (ii) providing to Ruscitti the transfer authorization code from the applicable registrar.

8. **General Mutual Release of Claims.**

    8.1    **"Claims" Defined.** As used in this Agreement, the term "Claims" shall mean any and all manner and kind of claims, counterclaims, actions, causes of action, lawsuits, damages, debts, defenses, sums of money, accounts, rights, interests, injuries, attorneys' fees, costs, compensation, covenants, controversies, agreements, promises, judgments, executions, demands, reckonings, bonds, bills, specialties, trespasses and variances whatsoever, known or unknown, suspected or unsuspected, contingent or fixed, direct or derivative, in law, equity or otherwise, whether based in contract, equity, tort, negligence, intentional tort, strict liability, express warranty, implied warranty, fraud, consumer fraud, criminal law, by statute, other legal or equitable theory of any kind, including but not limited to, any claims that arise out of the Chancery Action and the Damages Counts or the Fraud Action or the factual or legal obligations referenced therein.

    8.2    **"Release" Defined.** As used in this Agreement, the term "Release" shall mean the full, final, complete, absolute and unconditional release, waiver, discharge, acquittal, relinquishment, forfeiture and forgiveness of any and all Claims.

    8.3    **Mutual Release.** Upon the entry of the Settlement Approval Order, and except with respect to obligations created by or arising out of this Agreement, and in consideration for the promises contained in this Agreement, and the Parties release each other of all Claims, as that term is defined. The Trustee is not releasing in the release contained in this agreement any claims or actions that the Estate as represented by the Trustee may have against Helmstetter.

    8.4    **Scope of Release.** The Mutual Release of Claims above: (a) includes, incorporates, extends to and inures to the benefit of the Parties' respective past, present, and future officers, directors, shareholder, managers, members, owners, principals, employees, agents, attorneys, partners, successors, assigns, subsidiaries, affiliates, parent companies, related companies (including Kingdom Advertising, Inc.), administrators, beneficiaries, spouses, children, heirs, legatees, receivers, trusts, trustees, legal representatives, and any other related persons or entities whose Claims may arise by or through them; (b) extends to Claims both known and unknown, absolute or contingent, choate and inchoate, direct or derivative; (d) is a full, complete, absolute, unconditional, and final waiver and discharge of Claims; (c) extends to Claims arising out of or attributable to events or circumstances or any business relationships occurring at any time prior to the Effective Date; (e) extends to any past, present or future claims by the Estate for any equitable relief or damages, for those claims set forth in the Chancery Action and the Damages Counts; (f) extends to any past, present or future claims by the Estate for any equitable relief or damages for those claims set forth in the Chancery Action and the Damages Counts; (g) extends to any past, present or future claims by the Estate for actions occurring on or before the Effective Date seeking any equitable relief or damages or proceeds from any entity owned or controlled, in whole or in part, by Ruscitti including, but not limited, to the "Reinsurance Entities" referenced above; (h) extends to any claimed interest by the Estate in the Western Avenue Dealership; and (i) is to be interpreted in the broadest possible manner.

9.    **No Assignment or Pledge**. The Parties each warrant that they have made no assignment or pledge of any claim, chose in action, right of action, or any other right released pursuant to this Agreement.

5

10. **Prior Understandings.** This Agreement contains the entire agreement between the Parties with respect to the subject matter of this Agreement. The terms of this Agreement are contractual in nature and are not a mere recital. This Agreement may be modified only by a contract in writing executed by the Parties.

11. **Drafting Ambiguities.** This Agreement shall be deemed to have been mutually prepared by the Parties and shall not be construed against either of them by reason of authorship.

12. **Successors-in-Interest and Assigns.** Each Party represents and warrants that it is the rightful owner of the Claims released by this Agreement, and that it has not assigned or transferred to any other person or entity any portion of the Claims mutually released herein. Notwithstanding, this Agreement shall be binding upon, and inure to the benefit of, the successors, representatives, assigns and heirs of the Parties hereto.

13. **Authorization Warranty.** The undersigned each represents and warrants that he or she is authorized to sign this Agreement on behalf of his or her respective principals.

14. **Jurisdiction.** The Parties consent to the jurisdiction of the Bankruptcy Court with respect to any dispute concerning interpretation and enforcement of this Agreement.

15. **Execution in Counterparts/PDF Signatures.** This Agreement may be executed in counterparts, by PDF or Fax and each of which is deemed an original which together constitute one document.

16. **Attorney Fees**. Each party shall bear its own fees and costs relating to the drafting of this Agreement.

17. **Effectiveness.** This Agreement is effective upon entry of the Bankruptcy Court Order (the "Effective Date").

Kingdom Chevrolet, Inc.

By: [signature]

Its: Pres.

Date: 7-24-20

Richard Ruscitti, individually

By: [signature]

Date: 7-24-20

David Herzog, not individually but solely as Trustee of the Chapter 7 Estate of Michael Helmstetter

By: _____

Date: _____

Solely with respect to paragraph 8:

**Michael Helmstetter**

By: _____

Date: _____

17. **Effectiveness.** This Agreement is effective upon entry of the Bankruptcy Court Order (the "**Effective Date**").

**Kingdom Chevrolet, Inc.**

By: _____

Its: _____

Date: _____

**David Herzog, not individually but solely as Trustee of the Chapter 7 Estate of Michael Helmstetter**

By: _____

Date: 7-27-2020

Solely with respect to paragraph 8:

**Michael Helmstetter**

By: _____

Date: _____

**Richard Ruscitti, individually**

By: _____

Date: _____

7

# EXHIBIT A

AFFIDAVIT OF LOSS STOCK CERTIFICATE

July __, 2020

Michael Helmstetter ("Helmstetter") hereby certifies and swears as follows:

1. As of October 9, 2018, Helmstetter is entitled to the possession and is the true, lawful, present and sole legal and beneficial owner of at least 33% of the shares of common stock (the "Shares"), issued by Kingdom Chevrolet, Inc., an Illinois corporation (the "Corporation"). Helmstetter remains the legal owner of the Shares.

2. A certificate representing the Shares in the name of Helmstetter (the "Original Certificate") was either not received or misplaced, lost or destroyed on or about an unknown date, under unknown circumstances.

3. Helmstetter, has made a diligent search of his records and is unable to locate or recover the Original Certificate.

4. Helmstetter further states that (a) the Original Certificate, or any interest therein, has not been endorsed, pledged, deposited under any agreement, hypothecated, sold, delivered, transferred or assigned, (b) no person, firm, corporation, agency or government has or has asserted any right, title, claim, equity or interest in, to or respecting the Shares or the proceeds thereof, and (c) Helmstetter has not signed any power of attorney or other authorization respecting the Original Certificate which is now outstanding and in force.

5. Helmstetter hereby requests that the Corporation, its transfer agents, registrars and trustees, depositaries, and redemption, fiscal and paying agents refuse to recognize any person other than Helmstetter as the owner of the Original Certificate and refuse to make any payment, transfer, registration, delivery or exchange called for by the Original Certificate to any person other than Helmstetter and refuse to take any other action pursuant to the request or demand of any person other than Helmstetter.

6. Helmstetter agrees that, in the event the Original Certificate or any old certificates representing the Shares are recovered, at any time, Helmstetter will immediately cause such old certificates to be returned to the Corporation for cancellation without requiring any consideration therefor.

7. On October 9, 2019 (the "Petition Date"), Helmstetter filed his voluntary petition for relief under Chapter 7 of title 11 of the United States Code in the United States Bankruptcy Court for the Northern District of Illinois, assigned Case Number 19-28687 (the "Bankruptcy Case"). David Herzog is the duly appointed trustee (the "Trustee") in the Bankruptcy Case. The Trustee is entitled to the possession, and is the true, lawful, present and beneficial owner, of the Shares and has not disposed of such Shares.

*[Signature page follows]*

      IN WITNESS WHEREOF, the undersigned has executed this Affidavit as of the date first written above.

By:_____
    Michael Helmstetter

Subscribed and sworn to
Before me this \_\_\_\_\_ day
_____, 2020

With respect to Paragraph 7 only:

By:_____
David Herzog, not individually but solely as Trustee of the Chapter 7 Estate of Michael Helmstetter

Case 19-28687    Doc 59-1    Filed 08/11/20    Entered 08/11/20 16:26:47    Desc Exhibit
Mutual Release and Settlement Agreement    Page 11 of 12

Form G5 (20200113_bko)

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | | |
|---|---|---|
| In Re:<br>MICHAEL S. HELMSTETTER<br><br><br><br><br>Debtor(s) | )<br>)<br>)<br>)<br>)<br>)<br>) | Case Number: 19-28687<br><br>Chapter: 7<br><br>Honorable Jacqueline Cox |

**STIPULATION AND AGREED ORDER DETERMINING OWNERSHIP OF AT LEAST 33% OF SHARES OF STOCK OF KINGDOM CHEVROLET INC.**

THIS CAUSE COMING ON TO BE HEARD ON David R. Herzog, Chapter 7 Trustee's Motion for Entry of Agreed Order Determining Ownership of at least 33% of the Shares of Stock of Kingdom Chevrolet Inc., based on the Stipulation of Counsel contained herein, due and proper notice having been served, this Court having jurisdiction over the parties and subject matter, as well as having the Constitutional authority to enter this order and being fully advised in the premises;

IT IS HEREBY ORDERED THAT:

1. The Debtor scheduled ownership of at least 33% of the shares of common stock of Kingdom Chevrolet, Inc., ("Kingdom Stock") is an asset of the Debtor owned as of the Petition Date solely by Michael S. Helmstetter and by no other person or entity;

2. Any purported transfer of any one or more shares of Helmstetter's 33% of the Kingdom Stock in February 2019, or at any other time, as described in Debtor's Statement of Financial Affairs, to the Debtor as trustee of the Helmstetter Family Trust and the Helmstetter Children's Trust or to any other person or entity, is a nullity as said transfer was never completed by being registered with the stock registry of Kingdom Chevrolet, Inc.

STIPULATED AND AGREED:

| Kingdom Chevrolet Inc., and Richard Ruscitti | David R. Herzog<br>Chapter 7 Trustee | Michael S. Helmstetter, Debtor and Trustee of the Helmstetter Family Trust and Children's Trust |
|---|---|---|
| By:_____<br>Harold D. Israel, Esq.<br>Levenfeld Pearlstein, LLC<br>2N. LaSalle St., Suite 1300<br>Chicago, Illinois 60602 | By:_____<br>Gregory K. Stern, Esq.<br>Gregory K. Stern, P.C.<br>53 West. Jackson Blvd<br>Suite 1442<br>Chicago, Illinois 60604 | By:_____<br>Richard L. Hirsh, Esq.<br>Richard L. Hirsh, P.C.<br>1500 Eisenhower LN<br>Suite 800<br>Lisle, IL 60532 |

Enter:

Dated:

Honorable Jacqueline Cox
United States Bankruptcy Judge

**Prepared by:**

Gregory K. Stern (Atty. ID #6183380)
Monica C. O'Brien (Atty. ID #6216626)
Dennis E. Quaid (Atty. ID #02267012)
Rachel S. Sandler (Atty. ID #6310248)
53 West Jackson Boulevard
Suite 1442
Chicago, Illinois 60604
(312) 427-1558