IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE ) | | Chapter 7 |
| ) | | |
| MICHAEL HELMSTETTER ) | | Case No. 19-28687 |
| ) | | |
| Debtor. ) | | Hon. Jacqueline P. Cox |

### AFFIDAVIT OF DEBORAH J. TEMKIN

I, Deborah J. Temkin, declare and state as follows:

1. I make this declaration based on my experience, including as a Chartered Accountant (South Africa), and as a Certified Fraud Examiner, and my personal knowledge and understanding of the facts in this matter.

2. My expertise includes, but is not limited to eDiscovery, performing forensic accounting reviews, locating hidden assets, identifying fraudulent transfers, tracing assets, and assessing business valuations, coordinating forensic computer imaging, and resolving minority shareholder disputes.

3. I am currently a managing member of Trace Forensic Experts LLC. Trace Forensic Experts is an expert witness testimony and consulting firm specializing in forensic accounting. Trace Forensic Experts is comprised of highly skilled professionals that include CPAs and CFEs who provide litigation support to attorneys and their clients in the areas of: commercial litigation (including breach of contract, tortious interference, franchise and dealership disputes, shareholder disputes, securities fraud); financial fraud (including fraud investigation, misappropriation, bribery and corruption, eDiscovery); valuations (including contractual damages claims and the valuation of privately held corporations); and intellectual property litigation. I recently left my position as a Director at The BERO Group, where I did similar work.

4. I have performed forensic accounting investigations for approximately 20 years

and have more than 25 years of experience in litigation support and in the accounting profession. My duties currently include supporting Trace Forensic Experts' expert witnesses on accounting matters, fraud and financial investigations, embezzlements, breach of fiduciary duty, breach of contract, gross negligence, shareholder and partner disputes, and calculating damages and providing consulting services for numerous litigation matters. I frequently give seminars and presentations to the legal community (for CLE purposes) and various trade associations.

5. In this matter, I have performed a preliminary analysis of documents provided to us including, but not limited to, email communications, contracts and financial statements pertaining to Michael S. Helmstetter ("Helmstetter") and Kingdom Chevrolet, Inc. ("Kingdom Chevrolet").

6. I have read Helmstetter's Notice of Objection and the Exhibits thereto and state that based on information and belief and, to the best of my knowledge at this time, they are correct.

7. At this time and based on the information with which we have been provided, we calculated to a degree of certainty that Helmstetter has a claim against Kingdom Chevrolet in the total of at least $11.9 million, which far exceeds the settlement amount of $555,000.

8. Based on my professional judgment, the discrepancy between the valuations of $11.9 million and $555,000 demands further investigation.   Details of the $11.9 million follow.

9. Kingdom Chevrolet is an S-Corporation, in which Helmstetter has a 33 percent ownership interest.

10. The examination of documents provided to us has revealed no material dispute of facts as to Helmstetter's ownership in Kingdom Chevrolet and Ruscitti does not dispute

2

Helmstetter's ownership interest.

11.  As a 33 percent shareholder in Kingdom Chevrolet, Helmstetter has a 33% share in the assets and dividends of Kingdom Chevrolet.

12.  With regard to the fair market value of Helmstetter's share in Kingdom Chevrolet:

   a. We have calculated an estimated $7 million representing Helmstetter's 33% share of the Fair Market Value of Kingdom Chevrolet.

   b. Our valuation is based on the financial statements of Kingdom Chevrolet from 2011 through May 2016, the latest financial statements that Helmstetter has available to him.

   c. Our valuation considers the following:

      i. Latest available financial statements; and

      ii. Independent, expert market reports on trends and outlooks in auto retail and dealership values, including Blue Sky valuation multipliers.

   d. We would need Kingdom Chevrolet's financial statements from June 2016 onwards and its tax returns for 2016 onwards to update our calculations.

13.  With regard to an estimated $1.1 million in unpaid salary and bonuses due to Helmstetter by Kingdom Chevrolet, we have based our estimate on two years of earnings, using Helmstetter's earnings prior to termination.

   a. We would need the payroll records of Helmstetter's replacement for 2014 onwards to update our calculation of his unpaid salary and bonuses.

14.  With regard to an estimated $3.1 million in unpaid dividends due to Helmstetter by Kingdom Chevrolet, we have based our estimates on Kingdom Chevrolet's financial statements from January 2011 through May 2016.

    a. Kingdom Chevrolet's financial statements for the period reflect dividends totaling approximately $7.3 million.

    b. The 2014 and 2015 tax returns of Kingdom Chevrolet do not reflect any dividends paid in either year, despite dividends being recorded in the financial statements for those years.

    c. There is no readily ascertainable reason for the difference between the financial statements and the tax return.

    d. As an S Corporation, Kingdom Chevrolet is required to distribute dividends to its shareholders directly in proportion to their shareholding.

    e. Helmstetter received approximately $1.04 million of this total, with the remaining $6.26 million being paid to Ruscitti.

    f. Helmstetter did not receive the remainder of his appropriate pro rata share of the dividends.

    g. Helmstetter has not received any dividends from Kingdom Chevrolet since the termination of his employment.

    h. A proportionate share of any additional dividends declared by Kingdom Chevrolet beyond 2015 is also due to Helmstetter. We would need Kingdom Chevrolet's financial statements from June 2016 onwards to calculate this amount.

15. With regard to the Excess Executive Compensation and Falsified Rent and Mortgage Payments by Ruscitti:

    a. We have based our estimates on Kingdom Chevrolet's financial statements from January 2015 through December 2015.

    b. Kingdom Chevrolet's financial statements recorded executive compensation as approximately $247,000 for the year ended December 31, 2015.

    c. The 2015 tax return of Kingdom Chevrolet showed approximately $56,000 as paid to Ruscitti, with no other executives recorded.

    d. There is no readily ascertainable reason for the difference between the financial statements and the tax return.

    e. Helmstetter's share of the $247,000 less $56,000 is 33.33% of $191,000, which amounts to $63,666.

    f. We would need Kingdom Chevrolet's financial statements from June 2016 onwards and its tax returns for 2016 onwards to calculate any additional excess executive compensation paid by the dealership.

16. With regard to Kingdom Chevrolet's rent:

    a. Kingdom Chevrolet's financial statements from January 2015 through December 31, 2015 show rent paid of approximately $593,000 which is $209,000 in excess of rent of $384,000 payable per Kingdom Chevrolet's lease agreement with Gillespie Properties, LLC dated November 30, 2009.

    b. Helmstetter's 33.33% share of the $209,000 amounts to $69,667.

    c. We would need Kingdom Chevrolet's financial statements from June 2016 onwards to calculate any additional excess rent paid by the dealership.

17. With regard to the mortgage payments by Kingdom Chevrolet:

    a. Kingdom Chevrolet made payments totaling approximately $1.8 million on at least three mortgage loans, none of which Helmstetter either authorized or knew about.

    b. We could not identify the real estate or improvements that Kingdom Chevrolet used to secure these mortgage loans as the financial statements did not reflect any real estate.

    c. Kingdom Chevrolet's buildings and improvements were reflected at $14,000 until the last mortgage loan was taken out in September 2015, when they increased by $2 million.

    d. Kingdom Chevrolet's tax returns for the same period do not reflect any mortgage loans or mortgage interest.

    e. Helmstetter's 33.33% share of the mortgage payments amounts to $600,000.

17. With regard to Helmstetter's share of the Reinsurance business of Kingdom Chevrolet:

    a. Helmstetter does not have access to reinsurance contracts entered into by Kingdom Chevrolet and any reinsurance companies, such as CNA, beyond 2009.

    b. We would need these contracts to determine Helmstetter's share of this business.

    c. We would also need the financial statements and tax returns of Kingdom Chevrolet from June 2016 onwards.

18. Additionally, we have conducted a preliminary analysis of the information of the claims which Michael Helmstetter has all against parties (including the specific claim addressed upon herein).

19. Our preliminary calculations show that his claims total approximately $33 million[1].

20. Commenting only on our preliminary accounting analysis to date, it appears that the Debtor's assets exceed debts alleged by approximately $20 million[2].

21. As a result, we have not seen a factual predicate upon which one might reasonably conclude the Debtor is insolvent.

---

[1] We have not received full discovery of all records for all years from all parties. We therefore reserve the right to revise our analyses and calculations based on new and additional material being received.

[2] We have not received full discovery of all records for all years from all parties. We therefore reserve the right to revise our analyses and calculations based on new and additional material being received.

22.     Our review to date raises the question as to why the Debtor filed bankruptcy at all. Again, due to the materiality of the discrepancy between our calculations and the Trustee's settlement, further investigation is warranted.

_____
Deborah J. Temkin

Subscribed and sworn to me on this \_\_\_\_ day of February, 2021.

_____

Notary Public, State of Wisconsin
My Commission Expires: _____