IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE ) | | Chapter 7 |
| ) | | |
| MICHAEL HELMSTETTER ) | | Case No. 19-28687 |
| ) | | |
| Debtor. ) | | Hon. Jacqueline P. Cox |
| | | |
| | | February 8, 2021 |

**RESPONSE OF MICHAEL HELMSTETTER TO AMENDED ATTORNEYS' FIRST APPLICATION FOR ALLOWANCE OF INTERIM COMPENSATION, REIMBURSEMENT OF COSTS AND EXPENSES, AUTHORIZATION TO PAY ALLOWED ADMINISTRATIVE CLAIM AND TO LIMIT NOTICE TO TWENTY LARGEST UNSECURED CREDITORS**

**NOW COMES** Michael Helmstetter by his attorney Nicola S. Tancredi and makes the following response to the Amended Attorneys' First Application for Allowance of Interim Compensation, Reimbursement of Costs and Expenses, Authorization to Pay Allowed Administrative Claim and to Limit Notice to Twenty Largest Unsecured Creditors ("Response") and state as follows:

**INTRODUCTION**

This Response objects to the entirety of the fees requested by the Trustee, David R. Herzog (the "Trustee") for two primary reasons: first, the Trustee failed to consider any expert opinions provided in this case, and second, he failed to consider them specifically as they affect a settlement agreement in the case. A trustee has a duty to maximize the recovery of unsecured creditors and to do so in a manner that ensures transparency of actions. In the present case, the

1

Trustee has not performed his duties as required, and therefore he should not be entitled to the fees for his work.

## RELEVANT FACTS

**1. The Expert Opinions and Potential for Settlement**

The potential for the settlement of certain claims in this case first arose in the spring of 2020. In April 2020, the Trustee, the Trustee's attorney, and the Trustee's consulting attorney (collectively, the "Trustee's Team") participated in a conference call with two expert accountants, Paul Rodrigues and Deborah Temkin (collectively, the "Experts") and the undersigned attorney where the subject of the potential for a settlement arose. (Exhibit 1, Affidavit of Deborah Temkin ("Temkin Aff.") at ¶¶ 6-7).[1]

During this conference call, the Trustee's attorney stated that the Trustee had entered into settlement negotiations with Defendants Ruscitti, Kingdom, and Western. (Exhibit 1, Temkin Aff. at ¶ 7). The Trustee's attorney also informed those on the conference call that these negotiations had progressed to the point where the Trustee felt it appropriate for him to present to the Court for approval a settlement agreement among the Ruscitti, Kingdom, Western, and the Trustee that resolved all issues among the parties in consideration of the payment of five hundred and fifty thousand dollars ($550,000). (Exhibit 1, Temkin Aff. at ¶ 8; *see also* Dkt. 59).

During this same conference call, the Experts and the undersigned attorney discussed the preliminary analysis and examination the Experts had conducted. (Exhibit 1, Temkin Aff. at ¶ 9). The Experts are forensic accountants from Trace Forensic Experts, LLC, formerly of the The

---

[1] Due to a family emergency, Ms. Temkin has been unable to have her affidavit signed and notarized. A signed and notarized copy of the affidavit filed with this Response shall be filed as soon as practicable.

2

Bero Group, and they are both Certified Public Accountants[2] and Certified Fraud Examiners. (Exhibit 1, Temkin Aff. at ¶¶ 1-3; Dkt. 74 at ¶ 1.c-e).

This analysis and examination indicated that Mr. Helmstetter's assets in the dealerships were no less than $11.9 million, and that the Experts could verify these assets to a degree of mathematical certainty based on their examination of relevant business and financial documents. (Exhibit 1, Temkin Aff. at ¶ 14). This review was only based on the review of such documents for certain years; the Experts anticipated and believed that an examination of similar records for additional years would reveal additional assets in Mr. Helmstetter's estate. (Exhibit 1, Temkin Aff. at ¶ 15, n. 1).

Additionally, the Experts conducted an analysis of claims Mr. Helmstetter had against parties other than Kingdom and showed that he had approximately $43 million in claims. (Exhibit 1, Temkin Aff. at ¶¶ 28-29). These other claims are listed in Mr. Helmstetter's Amended Schedules. (Dkt. 63 (Amended Schedules)).

Finally, the Trustee's Team finished the conference call by confirming that the Trustee felt he had to present the settlement agreement of $550,000 to the Bankruptcy Court for approval. (Exhibit 1, Temkin Aff. at ¶ 10). The Trustee's Team indicated they believed the appropriate opportunity to present the information the Experts had discovered was to the Bankruptcy Court when the Trustee presented the settlement agreement for approval. (Exhibit 1, Temkin Aff. at ¶ 11). The Trustee's Team concluded by stating that the Trustee would be open to discussing proposals for recovery of claims other than those dealing with Ruscitti, Kingdom, and Western. (Exhibit 1, Temkin Aff. at ¶ 12). The Trustee affirmed that with the state of the

---

[2] One of the forensic accountants in this matter, Ms. Deborah Temkin, is originally from South Africa and is a Chartered Accountant, which is the South African equivalent of a Certified Public Accountant. (Dkt. 74 at ¶ 1.c-e).

3

settlement negotiations, he could not entertain proposals on the Ruscitti claims or those within the scope of the settlement agreement—e.g., Mr. Helmstetter's claims against Kindgom and/or Western. (Exhibit 1, Temkin Aff. at ¶ 13).

**2. The Bankruptcy Court Approves the Settlement Agreement**

On August 11, 2020, the Trustee filed a proposed settlement between Kingdom, Ruscitti, and himself that would, among other actions, settle not just the Cook County Cases, but any additional disputes among Kingdom, Ruscitti, and the bankruptcy estate (the "Settlement"). (Dkt. 59-01). Approximately two weeks later, on August 26, 2020, Mr. Helmstetter filed his most recent set of Amended Schedules. (Dkt. 63).

On August 31, 2020, Mr. Helmstetter filed an objection to the Trustee's proposed settlement (the "Objection to Settlement"). (Dkt. 74). In his Objection to Settlement, Mr. Helmstetter noted that the proposed settlement agreement did not reflect the information in the Amended Schedules, which had been filed after the proposed settlement. (Dkt. 74). Specifically, the Amended Schedules contained valuations of available and viable assets to Mr. Helmstetter that would not only pay off his bankruptcy creditors in full but would likely include an excess that would result in a return of funds/assets to Mr. Helmstetter. (Dkt. 74 at ¶ 1.a).

The Experts assisted counsel for Mr. Helmstetter in the valuation of available and viable assets of Mr. Helmstetter's bankruptcy estate. (Dkt. 74 at ¶ 1.c-e). Their valuation concluded that Mr. Helmstetter's claims listed in his Amended Schedules could have a value of as much as $43 million. (Dkt. 74 at ¶ e). Of those, only $20 million in claims listed on Mr. Helmstetter's Amended Schedules had been filed. (Dkt. 74 at ¶ 1.f).

In his Objection to Settlement, Mr. Helmstetter objected to the settlement of these claims for the $550,000 proposed by the Trustee. (Dkt. 74 at ¶ 2). As noted therein, Mr. Helmstetter had engaged counsel and the Experts to pursue his potential claims, including those already filed

4

against Kingdom, Western, and Ruscitti. (Dkt. 74 at ¶¶ 3-4). Mr. Helmstetter then detailed specific potential claims, unpaid dividends, and other potential remedies against Kingdom, Western, and Ruscitti that alone came to approximately $11.9 million. (Dkt. 74 at ¶ 9). Of those claims against Kingdom, Western, and Ruscitti, over $ 4 million had been earned by Helmstetter, but were unpaid. Specifically, the Experts noted:

- $7 million for the fair market value of Mr. Helmstetter's ownership share of Kingdom (Exhibit 1, Temkin Aff. at ¶ 21); and

- $1.1 million in unpaid salary and bonuses due to Mr. Helmstetter from Kingdom (*Id.* at ¶ 22); and

- $3.1 million in unpaid distributions due to Mr. Helmstetter from Kingdom (*Id.* at ¶ 23); and

- $63,666 in excess executive compensation and falsified rent and mortgage payments due Mr. Helmstetter (*Id.* at ¶ 24); and

- $69,667 in rent payments due to Mr. Helmstetter (*Id.* at ¶ 25); and

- $600,000 in mortgage payments due to Mr. Helmstetter (*Id.* at ¶ 26).

These claims, as well as the potential claims in excess of $43 million, were supported by analysis from the Experts. (Dkt. 74 at ¶¶ 10).

The Trustee never filed any expert reports or any documentation that would show that any of these claims and potential claims were questionable, let alone invalid. (*See generally*, Docket). Moreover, despite months passing between the time of the conference call detailed above and when the Trustee proposed the Settlement Agreement to the Bankruptcy Court, the Trustee never contacted the Experts or sought their counsel on the potential claims. (Dkt. 112-1 (Time sheets showing no consultation with the Experts). Moreover, the Trustee never hired other experts or individuals to determine whether the opinions offered by the Experts were valid. (Dkt. 112-1 (Time sheets showing no hiring of experts by Trustee)).

During the hearing on the subject of whether to accept the Settlement Agreement, the Trustee averred to this Court that "there's not real support" for the amounts of potential claims analyzed by the Experts. (Transcript, Sept. 1, 2020 Hearing at 9:2-4). He then noted that the only opinion on that subject was that of Mr. Helmstetter, despite having known of the opinions of the Experts for several months at that point. (*Id*.).

On January 13, 2021, the Trustee filed the Amended Attorneys' First Application for Allowance of Interim Compensation, Reimbursement of Costs and Expenses, Authorization to Pay Allowed Administrative Claim and to Limit Notice to Twenty Largest Unsecured Creditors ("Application for Fees"). (Dkt. 112). The exhibit to that Application for Fees included several notations that indicate contact with individuals on the subject of the valuation of Helmstetter's assets, claims and financial viability, including but not limited to his equity and business interests. (Dkt. 112-1). Nothing in the Application for Fees or the exhibit thereto indicates that such contact led to any substantive findings or opinions. (Dkt. 112; Dkt. 112-1). Neither document reflects the level of contact or depth of discussion with those individuals who were contacted. (*Id*.).

## LEGAL STANDARDS

Pursuant to 11 U.S.C. § 330(a)(1), a court is authorized to pay fee and expense awards to individuals who provide assistance in a bankruptcy proceeding. This Court "has a duty to examine independently the reasonableness of the fees requested." *In re Palladino*, 267 B.R. 825, 830 (Bankr. N.D. Ill. 2001). Moreover, "[t]he burden of proof to show entitlement to the fees requested is on the Attorney." *Id*. However, the court's determination that costs and fees should be awarded is discretionary under 11 U.S.C. § 330(a)(1). *See also Sable v. Maorgan Sangamon Partnership*, 280 B.R. 217, 221 (N.D.Ill. 2002).

6

As noted above, the determination to award costs and fees in a bankruptcy proceeding is a discretionary decision. 11 U.S.C. § 330(a)(1). As the United States Court of Appeals for the Seventh Circuit has noted, "[t]he use of the word 'may' indicates that fees do not have to be awarded in all cases." *In re Reid*, 854 F.2d 156, 159 (7th Cir. 1988).

The "trustee in bankruptcy owes a fiduciary duty to an estate's creditors." *McGarry & McGarry, LLC v. Bankruptcy Management Solutions, Inc.*, 937 F.3d 1056, 1066 (7th Cir. 2019). As such, "[a] bankruptcy trustee is tasked with maximizing the recovery of unsecured creditors." *In re Duckworth*, 776 F.3d 453, 458 (7th Cir. 2014). In performing their duties, "[t]rustees are to ensure a transparent recovery and administration of estate assets." *In re Argon Credit, LLC*, 570 B.R. 70, 74 (N.D.Ill. 2017).

When it comes to the negotiation of a settlement agreement, a Trustee is not allowed to take the easy way out; instead, he or she needs to take all factors into account before approving a settlement agreement. *See In re Central Ice Cream Co.*, 836 F.2d 1068, 1072 (7th Cir. 1987) (faulting trustee for taking easy settlement and noting failure to consider debtor's residual interest as a shareholder); *see also* John A.E. Pottow, *Fiduciary Duties in Bankruptcy and Insolvency*, 566 Pub. L. and Legal Theory (2018) (duties of Trustee to gather and value a debtor's assets).

## REVIEW OF THE PETITION FOR FEES

The determination to award costs and fees in a bankruptcy proceeding is a discretionary decision. In the present case, the court should use its discretion to prevent any awarding of fees in the present case. As noted above, a bankruptcy trustee is required to maximize the recovery of unsecured creditors and to do so in a manner that ensures transparency of actions. In the present

7

case, the Trustee has not performed his duties as required, and therefore he should not be entitled to the fees for his work.

1. **The Trustee Failed to Properly Consider the Expert Opinions in Evidence.**

In April 2020, the Trustee learned that two Experts were participating in this case on behalf of Mr. Helmstetter to evaluate potential claims and assets. Per the evaluations of those Experts, as noted above, Mr. Helmstetter's bankruptcy estate had claims and assets worth $59 million.

Despite his knowledge of these Experts and their opinions, the Trustee never consulted them, despite several months passing between April 2020 and when he presented the Court with his proposed Settlement Agreement. He never phoned the Experts. He never emailed the Experts. He never inquired as to the availability of the Experts.

Perhaps this behavior would have been justified had there been other experts hired by or consulted by the Trustee. However, the Trustee did not do this. Instead, the Trustee averred to this Court that there was no support for the amounts of the potential claims, save for the opinion of Mr. Helmstetter.

A bankruptcy trustee is required to maximize the recovery of unsecured creditors and to do so in a manner that ensures transparency of actions. A Trustee who cannot even be bothered to attempt to consult the only experts participating in a bankruptcy case is not meeting his duties as a Trustee and should not be rewarded for actions by getting an award of costs and fees.

2. **The $550,000 Settlement of Certain Claims Prevented Creditors from Receiving at Least $4 Million of Assets.**

Similarly, on the specific subject of the assets related to the claims of the Settlement Agreement, the Experts first provided their opinions to the Trustee in April 2020, noting that

8

they believed there were almost $4 million in assets Helmstetter had earned from the parties to the Settlement Agreement, but which remained unpaid.

These $4 million should be considered earned but unpaid claims under the Internal Revenue Code. 26 I.R.C. § 451-2; 26 C.F.R. § 451-2; *see also Jaffke v. Dunham*, 352 U.S. 280 (1957). Thus, this $ 4 million is not a potential claim of the estate but should be considered an asset of the estate held in trust and under control by Ruscitti, Kingdom, Western, and/or their agents. By presenting the Court with the Settlement Agreement, the Trustee failed to acknowledge these as the assets that they properly are; indeed, he appears not to have investigated these at all, and the Settlement Agreement amounts to a windfall for these parties— they get nearly $12 million in estate assets because the Trustee failed to properly account for these in his Settlement Agreement.

Perhaps the most egregious of the Trustee's failures on these assets is his failure to recognize or acknowledge that, of the over $11 million, approximately $4 million consists of unpaid salary, bonuses, and distributions. Rather than attempt to obtain even the $4 million for which there should be no dispute as to whether it is owed or not, the Trustee allowed the very same parties who owe these assets to Helmstetter to obtain releases not to pay these amounts, *but to pay for the release with Helmstetter's own money.* Moreover, the Settlement Agreement the Trustee negotiated leaves over $7 million in additional claims and assets on the table against these same parties.

As with the general claims and assets of Mr. Helmstetter discussed in the previous section, the Trustee never consulted the Experts, nor hired or consulted his own in this matter. Once again, this does not meet his duties as a Trustee, and the Trustee should not be rewarded for his actions (or lack thereof) by being awarded costs and fees.

9

Taken together, the lack of support provided by the Trustee and his failure to consider the only Expert opinions offered in this matter suggest that the Trustee accepted the Settlement Agreement as an easy settlement, rather than doing the harder task of gathering, reviewing, and properly valuing Helmstetter's assets. However, the Trustee has a duty to do exactly this, and the Court should not reward the Trustee with fees when he failed to do so.

### IF THE COURT IS INCLINED TO AWARD FEES, IT SHOULD ALLOW ADDITIONAL DISCOVERY BEFORE MAKING SUCH AN ALLOWANCE

If the Court is inclined to award the requested fees to the Trustee, Helmstetter would request limited discovery into the requested fees before making such an allowance.

Specifically, Mr. Helmstetter requests two additional areas of discovery. First, he requests that he be allowed to determine the specific information on any interactions the Trustee had with anyone who disputed the potential assets and claims of the bankruptcy estate.

Second, Mr. Helmstetter requests limited discovery into the dealerships. As noted in the Temkin Affidavit, the numbers they based their calculations on were not complete; they had only limited information on all the claims and assets related to the dealerships who were part of the Settlement Agreement. (Exhibit 1, Temkin Aff. at ¶ 15, n. 1). Such information should be in the possession of the Trustee, who presumably needed such information to make his determination that the Settlement Agreement was appropriate. If he did not have such information, it is yet further evidence that his actions as Trustee to this point have been inadequate and, thus, he should not be awarded fees and costs in this matter.

## CONCLUSION

In summary, Mr. Helmstetter objects to any award of fees or costs to the Trustee at this time. Should the Court be inclined to award fees or costs to the Trustee, Mr. Helmstetter requests limited additional discovery to determine any interactions the Trustee had with anyone who disputed the opinions of the Experts and discovery into the financial information of the dealerships, which is presumably in the possession of the Trustee.

Dated this 8th day of February 2021.

                              Respectfully submitted,

                              /s/ Nicola S. Tancredi
                              Nicola S. Tancredi
                              Attorney for Appellant
                              Michael Helmstetter
                              LAW OFFICES OF NICOLA S. TANCREDI
                              Two N. Trans Am Plaza Dr., Suite 250
                              Oakbrook Terrace, Illinois 60181
                              Telephone: 630-649-4268
                              ntancredilaw@gmail.com
                              ARDC No. 2795736