IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE | ) | Chapter 7 |
| | ) | |
| MICHAEL HELMSTETTER, | ) | Case No. 19 – 28687 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |
| | ) | U.S. Bankruptcy Judge |

**NOTICE OF MOTION**

TO:   Attached Service List

**PLEASE TAKE NOTICE THAT** on September 28, 2021, at 1:00 p.m., I shall appear before the Honorable Jacqueline Cox, or any other judge sitting in her stead and request a hearing on the **Chapter 7 Trustee's Motion To Approve (I) Bidding Procedures, (II) Sale Of Causes of Action Free And Clear Of Liens, Claims, And Other Interests, and (III) To Limit Notice**, a copy of which is attached hereto and thereby served upon you.

**This motion will be presented and heard electronically using Zoom for Government.** No personal appearance in court is necessary or permitted. To appear and be heard on the motion, you must do the following:

**To appear by video**, use this link: http://www.zoomgov.com/. Then enter the meeting ID.

**To appear by telephone**, call (669) 254-5252 or (646) 828-7666. Appearing by telephone will require extra clearance before being allowed into the hearing.

**Meeting ID and password.** The meeting ID for this hearing is 161 273 2896 and the password is 778135. The meeting ID and password can also be found on the judge's page on the court's website.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, these motions will be called on the presentment date. If no Notice of Objection is timely filed, the Court may grant the motions in advance without a hearing.

**CERTIFICATE OF SERVICE**

I, the undersigned, an attorney, hereby state that pursuant to Section II, B, 4 of the Administrative Procedures for the Case Management/Electronic Case Filing System, I caused a copy of the foregoing NOTICE OF MOTION and MOTION to be served on all persons set forth on the attached Service List identified as Registrants through the Court's Electronic Notice for Registrants and, as to all other persons on the attached Service List by mailing a copy of same in an envelope properly addressed and with postage fully prepaid and by depositing same in the U.S. Mail, Chicago, Illinois, on 14th day of September, 2021.

/s/ Monica C. O'Brien
Monica C. O'Brien

Gregory K. Stern (Atty. ID #6183380)
Monica C. O'Brien (Atty. ID #6216626)
Dennis E. Quaid (Atty. ID #02267012)
Rachel S. Sandler (Atty. ID #6310248)
53 West Jackson Boulevard, Suite 1442
Chicago, Illinois 60604
(312) 427-1558

# SERVICE LIST

**Registrants Served Through The Court's Electronic Notice For Registrants**

Patrick S. Layng
Office of the U.S. Trustee, Region 11
219 South Dearborn Street
Room 873
Chicago, Illinois 60604

David R. Herzog
Herzog & Schwartz PC
53 West Jackson Blvd
Suite 1442
Chicago, Illinois 60604

Nicola Tancredi
Law Offices of Nicola S. Tancredi
Two North TransAm Plaza Dr.
Suite 250
Oak Brook Terrace, Illinois 60181

Debra Devassy Babu
Askounis & Darcy, PC
444 North Michigan Avenue
Suite 3270
Chicago, Illinois 60611

Jamie L Burns
Levenfeld Pearlstein, LLC
2 North LaSalle Street
Suite 1300
Chicago, Illinois 60602

Whitman H. Brisky
Mauck & Baker LLC
1 North LaSalle Street
Suite 600
Chicago, Illinois 60602

Christopher R. Schmidgal
Law Office of Garry A. Weiss, PC
Six West 73rd Avenue
Merrillville, Indiana 46410

Charles Tatelbaum
Tripp Scott PA
110 SE 6 Street, 15th Floor
Fort Lauderdale, Florida 33301

James M. Yannakopoulos
Koransky Bouwer & Poracky PC
425 Joliet Street, Suite 425
Dyer, Indiana 46311

Bryan D King
Brown Udell Pomerantz Delrahim
225 W. Illinois, Suite 300
Chicago, IL 60654

Daniel S Hefter
Hefter Law, Ltd.
22 W. Washington, Suite 1500
Chicago, IL 60602

**Parties Served By United States Mail**

Michael Helmstetter
3939 North Star Trail
Odessa, Florida 33556

ADG
Attn: William H. Kelly, Partner
5810 W. 78th Street, Suite 300
Minneapolis, MN 55439

Beerman LLP
161 N Clark Street
Suite 3000
Chicago, IL 60601

J. Kevin Benjamin
Benjamin Legal Services, PLC
1015 West Jackson Blvd.
Chicago, Illinois  60607

Benetta Berke
c/o Cindy M. Johnson
140 South Dearborn Street, Suite 1510
Chicago, Illinois  60603

Chase Card Services
P.O. Box 15298
Wilmington, DE 19850

FCA, aka Fiat
c/o Quarles & Brady
300 N. LaSalle Street, Suite 4000
Chicago, Illinois 60654

Ft. Worth Brothers Automotive LLC
c/o Burke Warren McKay Serritella
330 N. Wabash 21st Floor
Chicago, IL 60611

Terry Gaouette
8021 Greenmeadow Lane
Greendale, WI 53129

Illinois Department of Revenue
Bankruptcy Unit
PO Box 19035
Springfield, IL 62794-9035

IRS
PO BOX 7346
Philadelphia, PA 19101-7346

Monroe Capital
311 South Wacker Drive, Suite 64
Chicago, Illinois 60606

Oak Group bba Warranty Sol'n Mngt Corp
7125 W. Jefferson Ave., Suite S-200
Denver, CO 80235

Oceantime LLC
3208 NE 10th Street
Pompano Beach, FL 33062-3908

O'Rourke & Moody
c/o Michael C. Moody
55 West Wacker Drive, Suite 1400
Chicago, Illinois 60601

Painted Sky/Adam Wimmer
1225 17th Street, Suite 2650
Denver, CO 80202

Pearl Capital Business Funding, LLC
525 Washington Blvd
22nd Floor
Jersey City, NJ 07310

Premium Business Solutions
8019 N. Himes
Tampa, Florida  33611

Reyna Capital Corporation
One Reynolds Way
Kettering, OH 45430

Ridgestone Bank
500 Elm Grove Road
Suite 102
Elm Grove, WI 53122

Ronald Richardson
329 W. 18th Street
Chicago, Illinois  60616

Ultegra Financial Partners, Inc.
1009 18th Street, Suite 2860
Denver, CO 80202

West Lake Financial Services
4751 Wilshire Blvd.
Suite 100
Los Angeles, CA 90010

World Business Lenders
c/o Thomas H. Griesta
105 West Madison Street, Suite 1500
Chicago, Illinois  60602

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE | ) | Chapter 7 |
| | ) | |
| MICHAEL HELMSTETTER, | ) | Case No. 19 – 28687 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |

**TRUSTEE'S MOTION TO APPROVE (I) BIDDING PROCEDURES, (II) SALE OF CAUSES OF ACTION FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND (III) LIMIT NOTICE**

NOW COMES DAVID R. HERZOG, not individually, but solely in his capacity as Chapter 7 Trustee (the "**Trustee**"), by and through his attorneys, Gregory K. Stern, Monica C. O'Brien, Rachel S. Sandler and Dennis E. Quaid ("**Trustee's Counsel**") and pursuant to 11 U.S.C. §§105(a), 363 and 554 and Fed. R. Bankr. P. 2002, 6004, 9007, and 9014, requests that this Court enter orders: (i) approving bidding procedures in connection with the Trustee's intended sale of the Estate's interests in the Causes of Action (as defined below) at auction, (ii) authorizing the sale of the Causes of Action free and clear of liens, claims, encumbrances, and other interests; and (iii) limit notice; and, (iv) granting related relief, if necessary.  In support of this Motion, the Trustee represents and states as follows:

A.     BACKGROUND

1. Michael Helmstetter (the "**Debtor**") filed a Voluntary Petition for relief under Chapter 7 of the United States Bankruptcy Code Court commencing the instant case and David R. Herzog (the "**Trustee**") was appointed as trustee in this case, continuing as the duly appointed and acting Chapter 7 Trustee for the bankruptcy estate of the Debtor (the "**Estate**").

2. This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §1334; venue of this Title 11 case is proper in this District pursuant to 28 U.S.C. §1408; and, this matter constitutes a core proceeding under 28 U.S.C. §157(b)(2)(A), (B), (N) and (O).

3. This Court has the constitutional authority to adjudicate the subject matter of this Motion as affecting property of the Estate.  The Trustee consents to this Court's adjudication of the subject

matter of this Motion and the entry by the Court of a final order deciding the Motion.

### B. TRUSTEE'S BUSINESS JUDGMENT FOR CAUSES OF ACTION TO BE SOLD

4. The Debtor has enumerated multiple assertions of liability by third parties to the Debtor in the four sets of Schedules, as amended and exhibits pertaining to the assertions of liability (hereinafter referred to as the "**Causes of Action**").

5. The Trustee has investigated the Causes of Action and has decided in the exercise of his business discretion to refrain from prosecuting any of the Causes of Action enumerated hereinafter due to uncertainties regarding the viability of the Causes of Action, the ability to procure evidence and witnesses to support the Causes of Action and an insufficiency of fiscal resources of the estate to finance the prosecution

6. The Trustee recognizes that the aggregate amount of the scheduled Causes of Action amounts to millions of dollars and that a reasonable effort is required to monetarize the Causes of Action for the benefit of the estate.

7. The Trustee believes in the exercise of his business judgment that the most efficacious manner of seeking to monetarize the scheduled Causes of Action is to offer pursuant to Section 363 of the Bankruptcy Code each individual action for sale in order to seek to elicit a purchaser for such a cause of action or a purchaser for the aggregate of all of the Causes of Action.

8. The Trustee in the exercise of his business judgment will seek to sell each individual action in return for a cash consideration to be paid to the estate at the closing of the sale of each action. Such a payment procedure will allow the estate to be concluded and the funds constituting the property of the estate to be distributed to the claimants holding valid, filed claims in this case. Consequently, the Trustee will not accept any payment terms involving "earn out", participation in the proceeds of the prosecution of the individual actions or deferred payments from a purchaser of any individual action or purchaser of the aggregate Causes of Action as such procedures would unduly delay the closure of the

administration of the estate and distribution of the funds of the estate to the claimants holding valid claims.

9. In the event that any of the individual actions comprising the Causes of Action remain unsold after this offering due to either a failure of bids to be received to purchase an individual action or a failure of a bidder to close the purchase transaction, then the Trustee in the exercise of his business judgment deems any such individual cause of action to be burdensome to the estate and of inconsequential value and benefit to the estate. Based on those circumstances, the Trustee requests approval of the Court to abandon pursuant to Sec. 554 of the Bankruptcy Code any individual action remaining unsold.

10. By this Motion, the Trustee seeks approval of bid procedures to govern the Trustee's offering for sale of the Causes of Action and the final sale of the Causes of Action.

C. **CAUSES OF ACTION**

11. The causes of action which the Trustee seeks to sell relate to the Debtor and/or the operation of one or more of the Debtor's businesses. The Debtor was an owner and operator of several dealerships selling new automobiles. The Debtor owned 51% of the stock of NEW CITY HISTORIC AUTO ROW, INC., (hereinafter "**New City**") which operated primarily at 2401 S. Michigan Avenue, Chicago, Illinois, for the sale of Alfa-Romeo and Fiat automobiles. The Debtor also owned 51 % of the stock of NEW CITY AUTO GROUP, INC., ("**Prime Time Nissan**") which operated in Indiana for the sale of Nissan automobiles. Both New City and Prime Time Nissan ceased business operations and commenced Chapter 11 cases, of which only Prime Time Nissan's case remains pending.

12. In connection with New City and Prime Time Nissan, Debtor contracted and interacted with many business partners, manufacturers of automobiles, financing agencies of the dealerships and creditors of the Debtor, individually, or the dealerships. Those parties are the third parties alleged by the Debtor in his Schedules as amended and exhibits thereto, to be liable to the Debtor and therefore, now to the estate, for a variety of alleged wrongful actions committed by those third parties. Many of

the third parties are also listed in the Debtor's Schedules, as amended and exhibits thereto, to be creditors of the Debtor holding claims against the Debtor of approximately, Nineteen Million Dollars ($19,000,000.00). Claims have been filed by creditors against the estate of the Debtor of approximately that amount.

13. The Trustee was not a participant in any of the transactions from which the relevant Causes of Action arose and therefore, lacks personal knowledge of the validity of any individual action and of the aggregate Causes of Action. Accordingly, the Trustee makes no warranty of the validity of any individual action or of the certainty of a purchaser of any individual cause of action in being able to secure a judgment for an individual action, defeating the defenses or set-off counterclaims that may be asserted by the third party to be sued under any individual action or to collect any resulting judgment from the third party sued.

14. The Trustee has not filed any actions against any of the third parties alleged to be liable for the Causes of Action and disclaims all warranties of the ability of a purchaser to locate the third party, to serve necessary summons and complaint upon the third party, to secure evidence and testimony to support the action against the third party in form of discovery and at trial and the time remaining to sue any of the third parties under any applicable statute of limitation.

15. The Causes of Action consist of the following individual actions:

(a) **Santander Bank, N.A. – Scheduled Damages of $7.9 Million**. According to the Debtor's Schedules, Santander while providing floor-planning financing to New City, committed the following wrongs: fraud, fraudulent financing accounting practices, fraudulent revenue recognition, constructive termination of the dealership, tortious interference, breach of contract, imposed unauthorized changes to contract terms, theft of personal property, violation of federal Automobile Dealer Franchise Act of 1956 and the Illinois Motor Vehicle Franchise Act. Counsel for Santander has denied all liability and asserts the entry in a suit in the U.S. District Court for the Northern District of Illinois by Santander, 18 cv 00201, on November 1, 2019, of a default

judgment against New City and dismissal of all counterclaims asserted by New City and the Debtor against Santander. The request for a judgment against the Debtor was dismissed due to his discharge in this bankruptcy case.

(b) **F.C.A., a/k/a Fiat – Scheduled Damages of $7.9 Million**. According to the Debtor's Schedules, Fiat granted a dealership to New City and sold new vehicles to it. New City and the Debtor asserted that Fiat shipped vehicles that were never ordered by New City and caused Santander to pay Fiat for these unordered vehicles. Therefore, the general description of alleged wrongs stated in the Santander paragraph above is incorporated herein by reference. Fiat instituted an interpleader action in the United States District Court for the Northern District of Illinois, 19-cv-01516, seeking direction as to the party entitled to payment of credits earned by New City, joining, among others, the Debtor, New City and Santander. Santander sought payment to it of the Fiat credits in the sum of $436,362.80 and Fiat sought a release of liability for making that payment. After the date of this bankruptcy, New City claimed the funds and objected to payment to Santander. On April 19, 2021, the Court overruled New City's objections and ordered payment of $25,000.00 to Fiat and the remainder to Santander. New City has appealed to the Court of Appeals for the Seventh Circuit from that decision and that appeal remains pending.

(c) **2401 S. Michigan Building Corporation, County Mayo Corporation and Maureen Joyce – Scheduled Damages of $1.7 Million**. The Debtor asserts in his Schedules many causes of action including: fraudulent inducement to contract and fraudulent misrepresentation by omission of material facts and theft. New City leased the land and buildings for its showroom and related facilities from 2401 S. Michigan Building Corporation and a vacant lot for vehicle storage from County Mayo Corporation. Maureen Joyce is believed to own both of those entities. New City asserted that the property was not zoned for the use of an automobile dealership, thereby resulting in the imposition against it of fines from the City of Chicago and

orders to cease and remove its business. New City also claimed that road construction was planned and when it did commence access to New City's premises at 2401 South Michigan was hindered. It was claimed that these facts were known to 2401 S. Michigan Building Corporation and County Mayo Corporation but not disclosed to New City or the Debtor. Counsel for those 2401 S. Michigan Building Corporation, County Mayo Corporation and Maureen Joyce deny all liability and assert their success in obtaining a judgment of eviction against New City in a jury trial conducted in the Circuit Court of Cook County, Illinois.

(d) **Nissan North America/Nissan Motor Acceptance Corporation – Scheduled Damages of $2 Million**. The Debtor asserts in his Schedules several causes of action including: fraudulent inducement to contract, material misrepresentations, fraudulent revenue recognition, obstruction of bankruptcy recovery efforts, breach of contract, breach of fiduciary duties, constructive trust/unjust enrichment, and civil RICO. Nissan granted a dealership to Prime Time Nissan and sold an inventory of new vehicles to it. Prime Time Nissan claimed that Nissan sought to wrongfully reclaim the vehicles sold to Prime Time Nissan. Nissan denies all liability and asserts wrongs committed by Prime Time Nissan in accepting and reselling Nissan's vehicles when Prime Time Nissan lacked any floor planning financing to pay for said vehicles despite its representation and agreement to have such financing. In Prime Time Nissan's Chapter 11 bankruptcy case, a settlement was reached and approved by that court releasing Nissan from any liability to Prime Time Nissan and paying an agreed amount to Nissan from the proceeds of sale of the assets of Prime Time Nissan. Nissan also filed an adversary complaint in this case alleging that the Debtor made misrepresentations to Nissan especially as to having floor-planning financing.

(e) **Benitta Berke – Unknown Damages**. Ms. Berke was a partner with the Debtor in the ownership of both of his dealerships, being New City and Prime Time Nissan. The Debtor asserts in his Schedules that Ms. Berke agreed to contribute 51% of the value of her real property

situated at 647 W. Division St., Chicago, IL as the payment for her stock of New City but failed to do so. Ms. Berke denies liability and asserts a right of set-off against the $1,000,000.00 loan that she made to the Debtor or that the Debtor guaranteed and that only New City has a right to seek payment from her.

(f) **Keri Fallon – Scheduled Damages of $91,000.00.** The Debtor asserts in his Schedules that Ms. Fallon, his former spouse was required to sign necessary tax returns and documents to procure a tax refund from the Internal Revenue Service for the tax year 2014 but refused to do so. Debtor further claims that he was damaged due to his inability to use this return to offset other tax liabilities remaining unpaid thereby generating additional penalties and interest against him as a result. Ms. Fallon's counsel denies all liability and asserts that the Debtor both failed to provide requested back-up documents to support the validity of the 2014 returns and violated the terms of their divorce decree thereby freeing Ms. Fallon from any obligations.

(g) **Terry Gaouetter – Scheduled Damages of $3 Million**. Mr. Gaouetter acted for several years as the Debtor's accountant, business consultant and officer of his businesses. The Debtor asserts that Mr. Gaouetter and his companies committed various acts of accounting malpractice and fraud as to Mr. Helmstetter and his businesses. Mr. Gaouetter has not expressed a position.

(h) **O'Rouke & Moody –Unknown Damages**. The Debtor scheduled malpractice and deceptive business practice claims against the former lawyers for the Debtor and his businesses. These lawyers handled many transactions and attempted to negotiate with Santander a workout agreement for New City. The lawyers represented New City in an unsuccessful Chapter 11 case in Chicago. They also performed some work for Prime Time Nissan. Debtor blames them for the demise of those insolvent businesses of which the Debtor owned 51% of the stock. The lawyers deny all liability and contend that the management failures of the businesses were insurmountable and caused the failure of the business. Any cause of action may accrue to

New City and Prime Time Nissan which are insolvent and owned 51% by the Debtor.

(i)     **World Business Lenders and Ultegra – Scheduled Damages of $1,500,000.00.** The Debtor scheduled a liability against each of two lenders, World Business Lenders and Ultegra. Debtor sought to use the realty of an acquaintance as collateral for a loan from each of the lenders. Neither loan closed but World Business Lenders redeemed real estate taxes before loss of title to the property and then took title to the property in return. Debtor claims World Business Lenders "stole" the realty owned by his acquaintance. World Business Lenders denies all liability.

(j)     **Ronald Richardson – Scheduled Damages of $3.5 Million**. The Debtor contends that Richardson agreed to lend or invest $5 Million with the Debtor but tendered only a check for $3.5 Million which check was dishonored. The Debtor asserts a scheme of fraud on Mr. Richardson's part. The position of Mr. Richardson is unknown.

(k)     **Adam Wimmer & Painted Sky – Scheduled Damages of $1.5 Million.** The Debtor contends that Wimmer or Painted Sky acted as a loan broker to arrange financing from Ultegra, Trade River and Monty Merz. The broker's actions constituted predatory lending practices according to the Debtor. The broker's position is unknown.

(l)     **Monty Merz – Unknow Damages**. The Debtor alleges that Merz made a bridge loan to either the Debtor or Prime Time Nissan and committed predatory lending practices by making the loan. Debtor did not specify the amount of damages resulting from the bridge loan when the permanent loan failed. Merz has filed a claim in the sum of $787,628.76 for the unpaid loan.

(m)     **Monroe Capital – Scheduled Damages of $50,000.00**. Monroe received a payment from New City of $50,000.00 to procure floor-planning financing which was never obtained. Monroe's position is unknown.

(n)     **Kevin Benjamin – Unknown Damages**. Mr. Benjamin filed this Chapter 7 case

on behalf of the Debtor and has withdrawn from the case. A second and now third counsel has appeared for the Debtor. Debtor contends that Mr. Benjamin committed malpractice by (A) failing to explain to Mr. Helmstetter the advantages of filing a Chapter 11 reorganization case allowing Helmstetter to maintain control of his right to sue the aforementioned third parties and (B) filing a Chapter 7 case for Mr. Helmstetter resulting in his loss of control over the right to sue the aforementioned parties.

### D.   MARKETING EFFORTS

16. The Causes of Action sought to sold by the Trustee are unique in that (a) the pool of possible purchasers is most likely limited to those parties involved in the litigation described herein, and (b) the nature of the litigation is complex. Accordingly, the Trustee has not engaged in broad marketing efforts for the sale of Causes of Action other than demanding payment from the third parties involved.

17. The alternative to a sale of the Causes of Actions is the prosecution of those actions by the Trustee as a substituted party for the Debtor. The Trustee is informed and reasonably believes that the Causes of Action would extend over a time period of several years due to the hostile relations existing between the parties and the efforts expended to date. Furthermore, there is no certainty of success in prosecuting the Causes of Action due to a number of factors, including but not limited to, (i) the speculative and contingent nature of all of the causes of action, (ii) the manner in which the Debtor has conducted his business operations, (iii) the uncertainty of the Debtor's cooperation in prosecuting the Causes of Action for the benefit of the Estate as opposed to his personal benefit, and (iv) the history and track record of the Debtor's litigation to date. To succeed in collecting the Causes of Action, the Trustee would depend upon the cooperation and testimony of the Debtor, which is not assured and may prove to be unreliable. The Trustee also lacks funds to pay substantial costs and/or legal expenses needed to prosecute the Actions.

18. The Trustee has determined that conducting an auction of the Causes of Action will yield the best and highest price for these assets for the benefit of the Estate.

E. **PROPOSED SALE OF CAUSES OF ACTION**

**(i)    Overview of Proposed Sale Process**

19. The Trustee has determined, in the exercise of his business judgment, that the best mechanism for maximizing value for the benefit of Debtor's Estate and its creditors is through an expeditious sale of the Causes of Action. Consequently, the Trustee requests authority pursuant to Section 363(f) of the Bankruptcy Code to sell the Causes of Action free and clear of all liens, claims, encumbrances, and interests.

20. The proposed sale transaction contemplates a sale of the Causes of Action at an auction (the "**Auction**").

21. The Auction would be conducted pursuant to Bid Procedures approved by this Court which would provide, *inter alia*, as follows:

(a). In order to be a "Qualified Bidder," any such bidder shall be required to submit the following to the Seller, c/o Gregory K. Stern, P.C., 53 West Jackson Blvd., Suite 1442, Chicago, Illinois 60604, email greg@gregstern.com (Attn.: Greg Stern), on or before **5:00 p.m. (prevailing central time) on October 21, 2021:** (a) its best and highest offer for the purchase of any individual cause of action or all of the Causes of Action, in writing (the **"Bid"**); and (b) a wire transfer or cashier's or certified check in the amount equal to 50% of the Bid (the "**Deposit**"), payable to Seller (to be held in the Seller's IOLTA account or a segregated account).

(b) After October 21, 2021, the Seller and his representatives will engage in an analysis of the Bids to determine which Qualified Bid(s) is, in their collective best judgment, the highest or otherwise best offer(s) (each a "**Winning Bid**"). A Qualified Bidder making a Winning Bid is hereinafter referred to as the "**Winning Bidder**." A Qualified Bidder making the second highest or best offer (the "**Back-Up Bid**") is hereinafter referred to as the "**Back-Up Bidder**." At the conclusion of the Bid Analysis,

the Seller will ask the Court to enter an order (the "**Sale Order**") at the Sale Hearing (defined below) authorizing the Seller to consummate the sale of the Causes of Action upon the terms of the Winning Bid, with a Winning Bidder (and the terms of a Back-Up Bidder if a Winning Bidder does not close), and to execute such additional documentation as is reasonably necessary to close such sale upon the terms of the Winning Bid and the Back-Up Bid.

(c)　　A final hearing ("Sale Hearing") to obtain authorization to accept and approval of the Winning Bid(s) and Back-Up Bid(s) through the entry of the Sale Order, shall commence on **October 26, 2021 at 1:30 p.m. (prevailing central time)** before the Honorable Jacqueline P. Cox in Courtroom 680 of the United States Bankruptcy Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois, via Zoom for Government. The Sale Hearing may be continued from time to time without further notice other than by announcement in open court.

(d)　　A Winning Bid shall have been accepted by Seller only upon entry of the Sale Order approving the Sale to the Winning Bidder(s) and Seller will not be obligated to take any action related to the sale of the Causes of Action unless and until the Court enters the Sale Order, which must be in form and substance reasonably satisfactory to Seller. However, Seller's presentation to the Court for approval of a Winning Bid does not constitute Seller's acceptance thereof.

(e)　　Upon the Court's entry of the Sale Order, a Winning Bidder shall become a "**Purchaser**."

A copy of the Bid Procedures is attached hereto as Exhibit A and are thereby made a part hereof.

**(ii)　　Applicable Legal Authority For Proposed Sale**

　　**(a).**　　Sales Outside The Ordinary Course Of Business

22. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). Moreover, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. §105(a).

23. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). Moreover, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. §105(a).

24. "A trustee has considerable discretion when it comes to the sale of estate assets, and that discretion is entitled to 'great judicial deference' as long as a sound business reason is given." *In re Efoora, Inc.*, 472 B.R. 481, 488 (Bankr. N.D. Ill. 2012) (citations omitted). *See also United Retired Pilots Benefits Protection Assn. v United Airlines, Inc. (In re UAL Corp.)*, 443 F.3d 565, 572 (7th Cir. 2006) ("the criteria for approval [of a transaction other than in the ordinary course of business is] whether the transaction makes good business sense and does not disturb creditors' rights…."); *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991) (sale under §363 involves exercise of fiduciary duty and requires an "articulated business justification"). Courts generally approve sales outside of the ordinary course of business under § 363(b)(1) whenever such a sale is in the best interests of the estate. *See In re Telesphere Communications, Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1994); *In re Apex Oil Co.*, 92 B.R. 847, 866 (Bankr. E.D. Mo. 1988).

25. As explained above, the Trustee submits that the proposed sale of the Causes of Action through the Auction represents a prudent and proper exercise of the Trustee's business judgment under the circumstances and is in the best interests of the Debtor's creditors. The Causes of Action sought to be sold would be costly to pursue and would extend the closing date of the administration of this Estate

into the future by a period of several years, thereby delaying payment of a dividend to creditors for such period of time. The proposed sale will augment the funds of the estate without the risks associated with litigation. For these reasons, the Trustee has determined, in the exercise of his business judgment, that the most viable option for maximizing the value of the Causes of Action is through a sale in the manner and in the timeframe set forth in the Bidding Procedures. Accordingly, the Trustee's request for approval to sell the Causes of Action in accordance with the Bidding Procedures should be allowed.

    **(b).**    **Sales Free and Clear of Liens, Claims and Interests**

26.    Under §363(f) of the Bankruptcy Code, a trustee may sell property free and clear of any lien, claim, or interest in such property if, among other things:

    (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    (2)    such entity consents;

    (3)    such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;

    (4)    such interest is in bona fide dispute; or

    (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). As §363(f) of the Bankruptcy Code is stated in the disjunctive, when proceeding pursuant to section 363(b), it is only necessary to meet one of the five conditions of §363(f). The Trustee's satisfaction of any one of its five requirements will be sufficient to permit the sale of the Causes of Action free and clear of liens, claims, encumbrances and interests. There are no known valid and enforceable liens, claims, or encumbrances against the Estate's interests of the Causes of Action and the Trustee will thereby satisfy the requirements of §363(f)(2).[1]

    **(c)**    **Proposed Good Faith Purchaser Finding**

27.    Finally, the Trustee requests that the Court make a finding that the Original Bidder or the

---

[1] To the extent that any other entity asserts a lien on the Property, the Trustee reserves the right to request approval of this motion under 11 U.S.C. §363(f)(1) and (f)(3).

holders of the Winning Bid(s) at Auction or Back-Up Bid(s) qualifies for designation as a good faith purchaser. A good faith purchaser under §363(m) has been defined in the case law to mean "one who purchases in 'good faith' and for 'value.'" *Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997) (citing *Cumberland Farms Dairy, Inc. v. National Farmers' Org. (In re Abbotts Dairies of Penn., Inc.)*, 788 F.2d 143, 147 (3d Cir. 1986)); *see Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992); *Badami v. Burgess (In re Burgess)*, 246 B.R. 352, 355-56 (B.A.P. 8th Cir. 2000).

28.    As the Seventh Circuit explained in *In re Rock Industries Machinery Corp.*, 572 F.2d 1195 (7th Cir. 1978), the "good faith" component of the test:

> speaks to the equity of [the bidder's] conduct in the course of sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

*Id.* at 1198; *see Kabro Assocs.*, 111 F.3d at 276; *Mark Bell Furniture Warehouse, Inc. v. D.M. Reid Assocs. (In re Mark Bell)*, 992 F.2d 7, 8 (1st Cir. 1992); *In re Ewell*, 958 F.2d at 281.

29.    The Trustee has adequately marketed the Causes of Action to the limited parties who might have an interest in purchasing the Causes of Action to expose it to higher and better offers at an auction. The Trustee accordingly believes that the holder of the Winning Bid or Back-Up Bid at Auction are good faith purchasers of the Property.

F.    **NOTICE**

30.    Rules 2002(a)(2) and 6004(a) of the Federal Rules of Bankruptcy Procedure require that notice of a proposed sale of substantially all of a debtor's assets be sent to all creditors.  Within two business days after the entry of the Bidding Procedures Order, the Trustee will serve a notice of the approval of the Bid Procedures and the Sale Hearing to approve the sale of the Causes of Action by mail or through the Court's CM/ECF system to the following persons: (i) the Debtor and his present counsel; (ii) counsel to the United States Trustee; (iii) all entities known to the Trustee having demonstrated an

interest in purchasing the Personal Property; (iv) the twenty largest unsecured creditors; and (v) all parties that have filed appearances or requested notices through the Court's CM/ECF system. Due to the volume of creditors in this case, the Trustee is requesting that notice pursuant to Rule 2002 be limited to the individuals listed in the preceding sentence, for cause shown.

WHEREFORE, the Trustee respectfully requests that the court enter orders substantially in the forms annexed hereto: (i) approving the Bidding Procedures, (ii) authorizing the Trustee's sale of the Causes of Action free and clear of liens, claims, encumbrances and interests; (iii) limiting notice pursuant to Rule 2002; and, (iv) granting such other and further relief as is just and proper.

By:    /s/ Gregory K. Stern
      Gregory K. Stern, Attorney for Trustee

Gregory K. Stern (Atty. ID #6183380)
Monica C. O'Brien (Atty. ID #6216626)
Rachel S. Sandler (Atty. ID #6310248)
Dennis E. Quaid (Atty. ID #2267012)
53 West Jackson Boulevard
Suite 1442
Chicago, Illinois 60604
(312) 427-1558