**EXHIBIT 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FCA US LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 C 1516 |
| v. ) | |
| ) | Judge John Z. Lee |
| SANTANDER BANK, N.A., ) | |
| CFG MERCHANT SOLUTIONS LLC, ) | |
| PREMIUM BUSINESS SOLUTIONS, ) | |
| INC., and NEW CITY HISTORIC AUTO ) | |
| ROW LLC, d/b/a ALFA ROMEO & FIAT ) | |
| OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This is an interpleader action under 28 U.S.C. § 1335 to resolve Defendants' competing claims to funds held by Plaintiff FCA US, LLC ("FCA"), also known as Fiat Chrysler Automobiles. Defendant Santander Bank, N.A. ("Santander"), has filed a motion for summary judgment, which Defendant New City Historic Auto Row, LLC ("New City") opposes. FCA does not oppose Santander's motion. *See* Stip. Regarding Santander Bank, N.A.'s Mot. Summ. J., ECF No. 64.[1] For the following reasons, Santander's motion for summary judgment is granted.

---

[1] Defendants CFG Merchant Solutions, LLC ("CFG"), and Premium Business Solutions, Inc. ("PBS") do not oppose the motion because they have never appeared in this case.

## I.  Background[2]

**A.  Facts**

New City entered into a dealership agreement with FCA to sell Fiat-Chrysler cars in the Chicagoland area. New City Historic Auto Row, LLC's Statement of Additional Facts ("New City's SOAF") ¶ 1, ECF No. 71. In addition to the dealership agreement with FCA, on June 24, 2016, New City executed a Floorplan Financing and Security Agreement ("the Floorplan Agreement") with Santander as the lender. Def. Santander Bank's Statement of Undisputed Facts Supp. Mot. Summ. J. ("Santander's SOF") ¶ 6, ECF No. 58.

Under the Floorplan Agreement, New City was to use advances from Santander to purchase vehicles from FCA in order to maintain the stock of New City's new vehicle inventory. New City's SOAF ¶ 2. The Floorplan Agreement authorized Santander to establish limits on the maximum outstanding aggregate balance of advances to New City ("the Floorplan Limit"). *See* Floorplan Agreement ¶ 1.7, Santander's Ex. 1-A, ECF No. 58-2. The initial Floorplan Limit was set at $3,750,000. *See* Initial Terms Schedule, Santander's Ex. 1-A, ECF No. 58-2 at 24; New City's SOAF ¶ 2.

In exchange for financing New City's inventory, Santander obtained a security interest in substantially all of the operating assets of New City, including "all accounts . . . all payment intangibles and all rights to receive payment, credits, and other compensation, including without limitation, so-called 'factory credits'

---

[2]  The following facts are undisputed, unless otherwise noted.

2

and 'open account' payments and holdbacks, incentive payments, stock rebates, allowances from any manufacturer, distributor, or supplier of motor vehicles or motorcycles, or from any of their subsidiaries or affiliates." Santander's SOF ¶ 7. On May 13, 2016, Santander filed its original UCC-l Financing Statement with the Illinois Secretary of State, claiming a security interest in "[a]ll assets of [New City] whether now owned or hereafter acquired." *Id*. ¶ 8.

New City claims that FCA began shipping it cars without New City's consent or knowledge. New City's SOAF ¶ 5. Specifically, on or around December 30, 2016, New City asserts that it went over its Floorplan Limit with Santander by about 30% because FCA shipped approximately 80 vehicles to New City that it did not order. *Id*. ¶ 7.

The parties agree that on May 18, 2017, Santander gave New City formal notice of its demand for payment in full of all advances within the next sixty days. Santander's SOF ¶ 12. When New City did not meet that deadline, Santander issued New City a formal notice of default. *Id*. ¶ 13. Upon an uncured "Event of Default," the Floorplan Agreement authorizes Santander to take possession of or sell its collateral. *Id*. ¶ 15. The parties agree that New City's failure to make payments is an "Event of Default" under the agreement, and New City admits that it failed to pay the amounts after receiving Santander's sixty-day notice. *See* Def. New City's Resp. Santander's Statement of Undisputed Facts ("New City's Resp. Santander's SOF") at 18–19, ECF No. 72.

Nonetheless, New City disputes that "any actual default occurred in this instance . . . as no amounts were properly due and owing." New City's Resp. Santander's SOF at 19. Essentially, New City disagrees that the foregoing facts establish that it breached the Floorplan Agreement (which would entitle Santander to collect its collateral). This is because, as New City sees it, Santander owed fiduciary duties to New City, which Santander breached when (1) it paid for the cars FCA shipped to New City but New City did not order, and (2) it issued a Notice of Default with an unrealistic sixty-day deadline. New City also contends that conduct by Santander (which New City has yet to identify) voided its security interest in the collateral and that Santander colluded with FCA to tortiously interfere with New City's contracts, operations, and economic advantage. *See* New City's Resp. Opp'n Santander's Mot. Summ. J., ECF No. 70.

**B.    Procedural History**

The procedural history of this case is intertwined with that of two other federal cases.[3] *See Entm't USA, Inc. v. Cellular Connection, LLC*, No. 1:18-CV-317-HAB, 2019 WL 2138676, at *3 (N.D. Ind. May 16, 2019) ("A court may take judicial notice of public court documents" (citing *Henson v. CSC Credit Servs.*, 29

---

[3]    In addition to the two federal cases described below, on March 30, 2018, New City also filed a complaint against FCA with the Illinois Motor Vehicle Review Board ("MVRB") pursuant to Section 4(d)(6) of the Illinois Motor Vehicle Franchise Act. *See* 4/1/19 MVRB Order at 1, ECF No. 35-2; 815 Ill. Comp. Stat. 710/4(d)(6) ("It shall be deemed a violation for a manufacturer, a distributor, [or] a wholesaler . . . to cancel or terminate the franchise or selling agreement of a motor vehicle dealer without good cause and without giving notice."). After New City filed for bankruptcy, the MVRB matter was stayed and then dismissed; the hearing officer held that the action was either moot or barred by the bankruptcy court's orders, or New City lacked standing after its dealership agreements were terminated because New City was no longer a franchisee under the statute. *See* 4/1/19 MVRB Order at 2–4.

F.3d 280, 284 (7th Cir. 1994)); *In re KJK Constr. Co., Inc.*, 414 B.R. 416, 430 (Bankr. N.D. Ill. 2009) (taking judicial notice of other courts' filings when considering a motion for summary judgment).

### 1. Santander's Replevin Action

On January 10, 2018, Santander filed a replevin action in the Northern District of Illinois, seeking over $4 million it alleged was due pursuant to New City's breach of the Floorplan Agreement. *See* Compl., *Santander Bank, N.A. v. New City Historic Auto Row, LLC*, 18-cv-201 (N.D. Ill.) (Blakey, J.) ("Replevin Action"), ECF No. 1. Although New City filed counterclaims in that action, *see, e.g.,* Second Amended Counterclaim, Replevin Action, ECF No. 105, and was represented by three different firms at various points, *see* Replevin Action docket, all of its attorneys withdrew, *see* 9/24/19 Minute Entry, Replevin Action, ECF No. 149. New City was advised that if it did not retain new counsel, the court would entertain a motion for entry of default. *See* 9/24/19 Minute Entry.

Ultimately, New City failed to retain new counsel, and after nearly two years of litigation, on November 1, 2019, the court entered a default judgment against New City on Santander's breach of contract claims in the amount of $5,028,740.87. *See* Order Granting Motion for Default Judgment, Replevin Action, ECF No. 159. It also dismissed New City's counterclaims for lack of prosecution. *Id.* Despite representing to this Court that it intended to file a motion to vacate that default judgment, *see* New City's Resp. Santander's SOF at 27 ("New City

5

notes that a motion to vacate judgment will be filed shortly"), New City has not done so; nor has it appealed, *see* Replevin Action docket.

### 2. New City's Chapter 11 Bankruptcy

On July 25, 2018, New City filed for Chapter 11 bankruptcy. *See* Voluntary Pet. Non-Individuals, *In re New City Historic Auto Row, LLC*, 18 B 20811 (Bkr. N.D. Ill.) (Cox, J.) ("Bankruptcy Action"), ECF No. 1. Throughout the bankruptcy proceedings, New City repeatedly represented under penalty of perjury that it possessed no "contingent and unliquidated claims or causes of action of [any] nature" against Santander or anyone else. *See* New City's Statement of Financial Affairs at 21, Bankruptcy Action ("New City's Statement of Financial Affairs"), ECF No. 41; New City's Schedule of Assets at 7, Bankruptcy Action ("New City's Schedule of Assets"), ECF No. 65. On January 29, 2019, New City's bankruptcy case was dismissed after the U.S. Trustee informed the court that New City was administratively insolvent, and so there were no assets to reorganize. *See* 1/29/19 Order Dismissing Chapter 11 Case, Bankruptcy Action, ECF No. 109; Tr. Proceedings on 11/27/18, Bankruptcy Action, ECF No. 113.

### 3. FCA's Interpleader Action

On March 1, 2019, FCA initiated this interpleader proceeding to resolve Defendants' competing claims to approximately $440,000 in disputed funds that are comprised of factory credits and incentive payments owed to New City by FCA. Santander's SOF ¶ 34. New City filed counterclaims against FCA, alleging that FCA breached its dealer agreements with New City and violated the Illinois Motor

6

Vehicle Franchise Act, and that the vehicles FCA shipped to New City breached an implied warranty of fitness for a particular purpose. *See* New City's 1st Am. Counterclaim Against Fiat Chrysler Automobiles, ECF No. 31.

FCA moved to dismiss, and this Court ruled that New City was judicially estopped from asserting any counterclaims against FCA because New City had failed to disclose any choses in action to the bankruptcy court. *See* 3/5/20 Minute Entry, ECF No. 48; Tr. Proceedings on 3/5/20, ECF No. 53. Shortly after New City's counterclaims were dismissed, Santander moved for summary judgment, and New City opposed.

## II. Legal Standard

Summary judgment is appropriate where the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must then "come forward with specific facts showing that there is a genuine issue for trial." *LaRiviere v. Bd. of Trs. of S. Ill. Univ.*, 926 F.3d 356, 359 (7th Cir. 2019). To satisfy that ultimate burden, the nonmoving party must establish "that a reasonable jury could return a verdict in [its] favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[S]ummary judgment will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Where the nonmovant would bear the burden of proof at trial—for example, on an affirmative defense or crossclaim—the nonmovant bears the burden of establishing the elements essential to its case. *See Bethine W. Alberding Estate Admin. Tr. ex rel. Moore v. Vinoy Park Hotel Co.*, No. 03 C 1250, 2005 WL 730960, at *2 (N.D. Ill. Mar. 24, 2005) (noting that summary judgment is appropriate if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to the party's case." (quoting *Celotex*, 477 U.S. at 322)).

### III.   Analysis

Here, Santander asserts that it is entitled to the funds held by FCA under the following logical sequence: (1) New City entered into and defaulted under the Floorplan Agreement; (2) in the event of New City's default, the Floorplan Agreement authorizes Santander to repossess or sell its secured collateral; (3) Santander was the first to file a blanket UCC-1 Financing Statement with the Illinois Secretary of State, which perfected Santander's first-priority security interest in all current and future assets of New City; and (4) Santander's security interest encompasses the factory credits and incentive payments held by FCA.

As outlined above, New City does not dispute that: it entered into the Floorplan Agreement; by exceeding the Floorplan Limit and failing to make payments, it defaulted under the Floorplan Agreement; Santander filed a blanket UCC-1 Financing Statement that ordinarily perfects a secured interest in the identified collateral;[4] or that the UCC-1 statement adequately identified collateral

---

[4]   New City also does not dispute that factory credits and incentive payments are "general intangible[s]," *see* 810 Ill. Comp. Stat. 5/9-102(a)(42), or "payment intangible[s]," *see*

that encompasses the funds held by FCA. In short, New City admits the facts that are essential to Santander's claim to the funds.

Nonetheless, New City argues that Santander's claim to the funds in question is invalid, because Santander had allegedly breached a fiduciary duty it owed to New City, or because Santander tortiously interfered with New City's business relationships. But these arguments are more appropriately asserted in the form of crossclaims against Santander, rather than defenses to Santander's claims. *See, e.g.*, *Teachers Ins. & Annuity Ass'n of Am. v. LaSalle Nat'l Bank*, 691 N.E.2d 881, 885 (Ill. App. Ct. 1998) (defendant alleged "theories of breach of fiduciary duty, breach of contract, unclean hands, fraud, constructive fraud, and estoppel" as affirmative defenses and counterclaims); *New Planet Energy Dev. LLC v. Magee*, --- N.E. 3d ----, 2020 IL App (4th) 200043, ¶ 6 (defendant alleged "counterclaims for fraud, tortious interference, breach of contract, and breach of the covenant of good faith and fair dealing"). *Cf. Roy v. Coyne*, 630 N.E.2d 1024, 1032 (Ill. App. Ct. 1994) (a theory should

---

*id.* 9-102(a)(61). Or that an interest in general intangibles is perfected by filing a financing statement, *see Riney v. Weiss & Neuman Shoe Co.*, 577 N.E.2d 505, 506 (Ill. App. Ct. 1991), which in turn perfects a blanket security interest against a debtor if it states that it covers "all assets," *see* 810 Ill. Comp. Stat. 9-504(2) ("Indication of collateral. A financing statement sufficiently indicates the collateral that it covers if the financing statement provides . . . an indication that the financing statement covers all assets or all personal property.").

Santander's statement of undisputed facts notes that CFG and PBS also filed financing statements, but states that those interests are junior to Santander's because they were filed later. *See* Santander's SOF ¶¶ 27–33. Because New City does not contest Santander's assertion, *see* New City's Resp. Santander's SOF at 27–29, and CFG and PBS have not appeared in this action, the Court considers it undisputed that Santander's lien was the first to be filed and, therefore, has first priority. *See* 810 Ill. Comp. Stat. 5/9-322(a)(1) ("Conflicting perfected security interests . . . rank according to priority in time of filing or perfection.").

9

be pleaded as an affirmative defense if it "confesse[s] the validity of the plaintiff's prima facie case but assert[s] new matter which avoid[s] its legal effect"). And because New City failed to assert these claims prior to raising them in its opposition to Santander's motion for summary judgment, they are deemed waived.[5]

The reason that New City did not previously assert these claims (and has offered them now in the guise of defenses) is not a mystery. This Court previously ruled that New City is judicially estopped from asserting any claims against interpleader Plaintiff FCA, due to New City's representations to the bankruptcy court that it had no "contingent and unliquidated claims or causes of action of [any] nature" when it previously filed for Chapter 11 bankruptcy. *See* Tr. Proceedings on 3/5/20 at 4:8–14; New City's Statement of Financial Affairs at 21; New City's Schedule of Assets at 7. The same reasoning applies to New City's efforts to assert its breach-of-fiduciary-duty and tortious-interference claims against Santander.

"Judicial estoppel is a matter of equitable judgment and discretion," *In re Knight-Celotex, LLC*, 695 F.3d 714, 721 (7th Cir. 2012), and the Court considers certain non-exhaustive factors to guide its discretion. "First, a party's later position must be 'clearly inconsistent' with its earlier position." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position,

---

[5] Given its own actions, New City was well aware of its obligation to file any affirmative claims against the other parties to this action. *See* New City's 1st Am. Counterclaim Against Fiat Chrysler Automobiles.

so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id.* (cleaned up). "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751. Additionally, the Seventh Circuit has held that "a debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends." *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006).

Here, in dismissing New City's claims against FCA, this Court held that New City's claims were clearly inconsistent with its position during the Chapter 11 proceedings, where it repeatedly represented under penalty of perjury that it possessed no "contingent and unliquidated claims or causes of action of [any] nature" against FCA *or anyone else*. *See* Tr. Proceedings on 3/5/20 at 4:8–14; New City's Statement of Financial Affairs at 21; New City's Schedule of Assets at 7; *see also Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) (affirming the dismissal of a claim on the basis of judicial estoppel where Plaintiff had earlier asserted in a bankruptcy petition that she had no "contingent and unliquidated claims of [any] nature"). Moreover, it was clear that the bankruptcy court had accepted New City's presentations. *See* Tr. Proceedings on 3/5/20 at 5:24–6:16. And, finally, the Court found that New City would reap an unfair advantage if it were allowed to assert new claims now. *Id.* at 6:17–7:1; *see also Williams v. Hainje*,

11

375 F. App'x 625, 627–28 (7th Cir. 2010) (noting that "[t]o hold otherwise would give debtors an incentive to game the bankruptcy system" encouraging a "wait-and-see approach to disclosure," that would "undermine both the primary aim of judicial estoppel, which is to protect the integrity of the judicial process," and "the bankruptcy law's goal of unearthing all assets for the benefit of creditors").

For these same reasons, the Court finds that New City is judicially estopped from asserting that Santander breached some fiduciary duty it owed to New City, or that Santander tortiously interfered with New City's business relationships to oppose summary judgment. To do otherwise would allow New City to reap the benefit of claims and potential assets that it had disavowed before the bankruptcy court.

New City's arguments cannot save it from summary judgment for another reason—collateral estoppel. Four elements must be present for collateral estoppel to prohibit re-litigation of a previously decided issue: "(1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action." *Meyer v. Rigdon,* 36 F.3d 1375, 1379 (7th Cir.1994) (quoting *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.,* 914 F.2d 900, 906 (7th Cir.1990)).

On November 1, 2019, the court in the replevin action entered a default judgment against New City in the amount of $5,028,740.87, for the balance owed

12

Santander for New City's breach of the Floorplan Agreement.[6] *See* Order Granting Motion for Default Judgment, Replevin Action ECF No. 159. It also dismissed New City's counterclaims for lack of prosecution. *Id.*

Ordinarily, collateral estoppel does not apply to default judgments because they have not been actually litigated. *In re Catt*, 368 F.3d 789, 792 (7th Cir. 2004) ("the federal rule is that default judgments are not entitled to collateral estoppel effect"). Nonetheless, where a party has actively participated in a litigation and is defaulted for failure to comply with a court order, collateral estoppel may be appropriate. *See, e.g.*, *Herbstein v. Bruetman*, 266 B.R. 676, 685 (N.D. Ill. 2001), *aff'd*, 32 F. App'x 158 (7th Cir. 2002) ("In this atypical setting for default judgment, where [Defendant] participated extensively then failed to comply with an express court order issued multiple times at a risk of incurring default, . . . [Defendant] should not now be able to sidestep the collateral estoppel doctrine and litigate an issue in this forum that was forestalled in [the other litigation] due solely to [Defendant's] decisions. [Defendant] is not entitled to a second bite at the apple."); *In re Daily*, 47 F.3d 365, 368 (9th Cir. 1995) ("A party who deliberately precludes resolution of factual issues through normal adjudicative procedures may be bound, in subsequent, related proceedings involving the same parties and issues, by a

---

[6]  Santander also argues that an Agreed Order for Replevin entered in that case similarly collaterally estops certain of New City's arguments. *See* 2/1/18 Agreed Order, Replevin Action ECF No. 23. But because New City moved to vacate the Agreed Order for Replevin after switching attorneys (even though its motion to vacate was denied), it is not clear that the Agreed Order for Replevin was actually litigated. *See* 5/10/18 Minute Entry, Replevin ECF No. 42 (denying motion to vacate). Because the Court finds in favor of Santander on other grounds, it need not address this argument.

13

prior judicial determination reached without completion of the usual process of adjudication."); *In re Bush*, 62 F.3d 1319, 1324 (11th Cir. 1995) (same).

This is because "a party . . . who deliberately prevents resolution of a lawsuit [is] deemed to have actually litigated" the issues. *In re Docteroff*, 133 F.3d 210, 215 (3d Cir. 1997). "To hold otherwise would encourage [obstructive] behavior . . . and give litigants who abuse the processes and dignity of the court an undeserved second bite at the apple." *Id.*; *see also In re Sharif*, 549 B.R. 485, 514 n.17 (Bankr. N.D. Ill. 2016) (noting the Seventh Circuit's approval of *Docteroff*).

Over the two years that the replevin action was pending, New City actively participated in the litigation; it was represented by counsel, filed counterclaims, and took discovery. *See* Replevin Action ECF Nos. 28, 29, 94, 119 (attorney appearances on behalf of New City); 125 (New City's second amended counterclaims); 136 (motion outlining discovery schedule). And the default judgment was entered only after the court had warned New City that it would entertain a motion for entry of a default judgment if New City delayed in retaining new counsel after it had fired its third set of attorneys. *See* 9/24/19 Minute Entry, Replevin Action ECF No. 149. It was only after New City failed to comply with this order that the court entered the default judgment. Under these circumstances, the Court concludes that the doctrine of collateral estoppel bars New City from contesting its liability to Santander here.

14

## CONCLUSION

For the above-stated reasons, Santander's motion for summary judgment is granted. Santander's motion to strike New City's exhibits is denied as moot. Final judgment will be entered accordingly in favor of Santander. This case is hereby terminated.

**IT IS SO ORDERED.**               ENTERED  3/17/21

*[signature: John Z. Lee]*

**JOHN Z. LEE**
**United States District Judge**