**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 7 |
| **Michael Helmstetter**, | Bankruptcy No. 19-28687 |
| Debtor. | Honorable Jacqueline P. Cox |

**WBL'S RESPONSE TO THE TRUSTEE'S MOTION TO SELL MERITLESS CAUSES OF ACTION (ECF NO. 139)**

A trustee can sell a debtor's causes of action only if those causes of action have merit and only through an open and transparent process. The trustee in this case asks this Court to sell causes of action he has decided cannot be pursued through opaque bidding procedures that deny parties in interest information about the proposed auction. The trustee's request to sell meritless causes of action through an opaque process should be denied.

### 1. BACKGROUND.

Michael Helmstetter (the "Debtor") filed a Voluntary Petition for relief under Chapter 7 of the United States Bankruptcy Code, and David R. Herzog (the "Trustee") was appointed as trustee for the case. On his bankruptcy schedules, the Debtor listed potential claims against World Business Lenders LLC ("WBL").

On May 4, the Trustee contacted WBL's lawyers, demanding payment of $1.5 million based on the Debtor's alleged claim. WBL and the Trustee engaged in extensive correspondence, with WBL explaining to the Trustee in detail why the Debtor's alleged claim was completely meritless. A copy of the parties' correspondence is attached as **Exhibit A**.

In short, the Debtor asserts that WBL conspired with another entity, Ulegra Group, to "steal" real estate—not from the Debtor, but from some other entity the Debtor does business with. The Debtor admits that he does not own the real estate

{00208556}

or the entity that owns the real estate, and that he has "nothing to do with the property." Ex. A. Neither Ultegra nor WBL own the real estate they are accused of "stealing." Faced with these facts, the Trustee charitably interpreted the Debtor's alleged claim as some sort of tortious interference claim. *Id.* Regardless, WBL explained to the Trustee that Ultegra and WBL were far from co-conspirators and were actually adverse to each other in separate litigation. *Id.* The Trustee never rebutted these facts or disputed that the Debtor's claim was meritless.

Given the total lack of merit, the Trustee should have just abandoned the alleged claim against WBL. Instead, the Trustee asserted that the Debtor might pursue the claim if the Trustee abandoned it, that WBL would "have [its] hands full dealing with him," and that WBL should consider "negotiating an accommodation with the Trustee to extinguish any right of Helmstetter to sue [WBL]." Ex. A. That is, even though the claim is frivolous, WBL should pay the Trustee so that the Debtor is later barred from bringing the frivolous claim. WBL refused to pay.

The Trustee has now decided not to bring the claim against WBL, citing "uncertainties regarding the viability of the Causes of Action [and] the ability to procure evidence and witnesses to support the Causes of Action." Mot. ¶ 5. In other words, the Trustee has looked into these claims, they are not viable, and there is no evidence to support them.

Despite determining that the claims are meritless, despite being rebuffed by WBL previously, the Trustee now wants to try to force WBL to buy the frivolous claim at auction or risk some officious intermeddler buying the "claim" and using it to extort money from WBL. The Trustee acknowledges that the "pool of possible purchasers is most likely limited to those parties involved in the litigation described [in the motion to sell]." Mot. ¶ 16. That is, he is just trying to force money out of parties that, like WBL, have likely already rebuffed the Trustee's demands and explained why the claims are frivolous.

## 2. DISCUSSION.

### 2.1. The Trustee cannot sell meritless claims.

A trustee may not sell meritless causes of action. *In re Barkany*, No. 8-14-72941-LAS, 2021 Bankr. LEXIS 2576, 2021 WL 4272589, at *40–48 (Bankr. E.D.N.Y. Sept. 20, 2021). "To permit a trustee to extract some value by selling meritless claims would foment frivolous litigation and potentially create a cottage industry whereby a trustee will seek to monetize claims that have been carefully vetted and determined to lack merit." *Id.* at *48. *Accord In re Boyer*, 354 B.R. 14, 35 (Bankr. Conn. 2006) ("[P]ermitting a trustee to sell causes of action which he would not litigate himself under any circumstances would encourage trustees to traffic in causes of action with no litigation value. That would foment useless litigation and is against public policy."); *In re Milazzo*, 450 B.R. 363, 380 (Bankr. Conn. 2011); *In re Metro. Elec. Mfg. Co.*, 295 B.R. 7, 13–14 (E.D.N.Y. 2003).

Despite determining the claim against WBL is meritless, the Trustee now wants to sell it at auction. Allowing such a sale promotes frivolous claims, is against public policy, and should now be allowed. The Trustee's motion should therefore be denied.

### 2.2. The Trustee's proposed auction procedures are improper.

Even if the Trustee could sell the claim against WBL, the Trustee's proposed procedures are improper.

First, the process lacks transparency. Sale procedures in the claim auction should be "as transparent and as flexible as possible." *In re Blixseth*, No. BKR. 09-60452-7, 2010 WL 716198, at *10 (Bankr. D. Mont. Feb. 23, 2010). While the Trustee's bid procedures allow any such bidder to submit a bid, the lack of transparency over competing bids does not maintain a level playing field. "Maintaining a level playing field for bankruptcy sale bidders fosters a transparent auction process that insures the appearance of integrity and trustworthiness of the

bankruptcy court system." *In re Pixius Commc'ns, LLC*, No. 19-11749, 2020 WL 1189519, at *1 (Bankr. D. Kan. Mar. 10, 2020).

The Trustee's proposed bidding process is secret. They require a bidder to submit its best and highest offer, and the Trustee decides what he deems the winning bid. Mot. ¶ 21(a). There is no mechanism for parties to see whether anyone has actually submitted a bid for the claim against them or, if there are multiple bidders, to attempt to outbid other bids.

Second, the Trustee's proposed procedures allow "the Seller and his representatives" to decide the which bid wins "in their collective best judgment." Mot. ¶ 21(b). But it is the *Trustee's* judgement that counts, and he cannot delegate this to unnamed representatives. *In re Stevens*, 407 B.R. 303, 307 (Bankr. N.D. Ill. 2009).

Third, the Trustee proposes to sell all the disparate causes of action together as a whole. Mot. ex. A. As the Trustee acknowledges, the only likely bidders are the defendants themselves. They should not be forced to buy causes of action in which they have no interest. If the causes of action are to be sold, they should be sold separately.

### 3. CONCLUSION.

The Trustee cannot sell meritless claims. Even if he could, the Trustee's proposed auction procedures are improper and opaque. The Court should therefore deny the Trustee's motion.

Dated: October 15, 2021                               Respectfully submitted,

**Would Business Lenders LLC**

By: /s/ Jeffrey K. Paulsen
One of Its Attorneys

—4—

Jeffrey K. Paulsen (6300528)
Ariane Holtschlag (6294327)
**FACTORLAW**
105 W. Madison, Suite 1500
Chicago, IL 60602
Tel:     (312) 878-0969
Fax:    (847) 574-8233
Email:  jpaulsen@wfactorlaw.com

## CERTIFICATE OF SERVICE

I, Jeffrey K. Paulsen, an attorney, certify that I served a copy of this response on each entity shown on the below list at the address shown and by the method indicated on the list on October 15, 2021.

/s/ Ariane Holtschlag

**Registrants**
(Service via CM/ECF)

Debra Devassy Babu on behalf of Creditor Santander Bank, N.A.
ddevassy@askounisdarcy.com, zjohannsen@askounisdarcy.com

Theresa S. Benjamin, Esq. on behalf of Debtor 1 Michael S. Helmstetter
theresa@benjaminlaw.com,
firmecf@gmail.com;jkb@benjaminlaw.com;g5094@notify.cincompass.com;r54940@notify.bestcase.com

Whitman H. Brisky on behalf of Creditor 2401 So. Michigan Building Corporation
wbrisky@mauckbaker.com,
WHBCourt@mauckbaker.com;raguilan@mauckbaker.com;sthomas@mauckbaker.com;awillis@mauckbaker.com

Jamie L Burns on behalf of Creditor Kingdom Chevrolet
jburns@lplegal.com, ikropiewnicka@lplegal.com;rwilliamson@lplegal.com

Joseph D Frank on behalf of Plaintiff Nissan North America, Inc.
jfrank@fgllp.com,
jkleinman@fgllp.com;mmatlock@fgllp.com;csucic@fgllp.com;csmith@fgllp.com

Daniel S Hefter on behalf of Creditor Monte Merz
dhefter@hefter-law.com

David R Herzog
drh@dherzoglaw.com,
dherzoglaw@gmail.com;il59@ecfcbis.com;drh@trustesolutions.net

Richard L Hirsh on behalf of Attorney Nick Tancredi
richard@bankruptcy-dupage.com, rlhpc2@bankruptcy-dupage.com

Cindy M. Johnson on behalf of Creditor Benitta Berke
cjohnson@jnlegal.net, KLindsey@jnlegal.net

Bryan D King on behalf of Creditor Brown, Udell, Pomerantz & Delrahim
bking@bupdlaw.com

Micah R Krohn on behalf of Plaintiff Nissan North America, Inc.
mkrohn@fgllp.com, csmith@fgllp.com;mmatlock@fgllp.com;csucic@fgllp.com

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

Justin M Mertz on behalf of Creditor Terry Gaouette
jmmertz@michaelbest.com, jcalmes@michaelbest.com;courtmail@michaelbest.com;kmburns@michaelbest.com

Jeffrey K. Paulsen on behalf of Creditor World Business Lenders LLC
jpaulsen@wfactorlaw.com, bharlow@wfactorlaw.com;jpaulsen@ecf.inforuptcy.com

Dennis E. Quaid on behalf of Trustee David R Herzog
dquaid3@gmail.com

Christopher R Schmidgall on behalf of Creditor Kerri Fallon-Helmstetter
bankruptcy@wshlegal.com, schmidgallwr70654@notify.bestcase.com

Gregory K Stern on behalf of Trustee David R Herzog
greg@gregstern.com, steve_horvath@ilnb.uscourts.gov

Nicola S Tancredi on behalf of Attorney Nick Tancredi
ntancredilaw@gmail.com

Charles Tatelbaum on behalf of Creditor Nissan North America, Inc.
cmt@trippscott.com, hbb@trippscott.com;eservice@trippscott.com

James M Yannakopoulos on behalf of Creditor Centier Bank
jyannako@kblegal.net, khand@kblegal.net

# EXHIBIT A

## Jeffrey Paulsen

| | |
|---|---|
| **From:** | Dennis Quaid <dquaid3@gmail.com> |
| **Sent:** | Friday, June 18, 2021 4:24 PM |
| **To:** | Tom Griseta |
| **Cc:** | Greg Stern; Monica O'Brien; Jeffrey Paulsen |
| **Subject:** | Re: Michael Helmstetter - World Business Lenders |

Slow down a little. The Trustee awaits further information/documents from M. Helmstetter. Then, the Trustee will decide on a course of action most beneficial to the estate according to his business judgment.

I am amazed that you are in such a hurry for the cause of action to be returned to Mr. Helmstetter via abandonment. He has hired Nicola Tancredi on a contingent fee to prosecute all of the causes of action enumerated in the Schedules of Assets and Liabilities. Tancredi is now handling Helmstetter's appeal from the Bankruptcy Court's order approving the settlement with Kingdom Chevrolet as well as seeking to sue Santander in the federal district court case. You will have your hands full dealing with him. Or you can consider negotiating an accommodation with the Trustee to extinguish any right of Helmstetter to sue your clients.

Think over this situation and advise if you want to pursue a business type of solution.

Dennis E. Quaid
Of Counsel to Gregory K. Stern PC
312-961-3954


On Mon, Jun 14, 2021 at 10:58 AM Tom Griseta <tgriseta@wfactorlaw.com> wrote:

> Dennis –
>
> Any thoughts? I think it's clear that Mr. Helmstetter is incorrect when he says that WBL "stole" property from anyone. When you get a chance, can you confirm that the Trustee is abandoning this claim?
>
> Let me know if you need anything further from the state court case.
>
> Best,
>
> Tom

1



**Thomas H. Griseta**

105 W. Madison St., Suite 1500

Chicago, Illinois 60602

d. 312 629 2031

f. 847 574 8233

e. tgriseta@wfactorlaw.com

---

**From:** Dennis Quaid <dquaid3@gmail.com>
**Sent:** Thursday, June 3, 2021 11:18 AM
**To:** Tom Griseta <tgriseta@wfactorlaw.com>
**Cc:** Greg Stern <greg@gregstern.com>; Monica O'Brien <monica@gregstern.com>; Jeffrey Paulsen <jpaulsen@wfactorlaw.com>
**Subject:** Re: Michael Helmstetter - World Business Lenders

```
Thanks for the documentation. I will review same.

Dennis E. Quaid

Of Counsel to Gregory K. Stern PC

312-961-3954

On Thu, Jun 3, 2021 at 8:46 AM Tom Griseta <tgriseta@wfactorlaw.com> wrote:
```

Dennis – I had typed out the below and thought it was sent. I just noticed it sitting in my "drafts" folder as I went to follow up with you about the status of this. The unsent email is below:

Dennis –

I've attached the counterclaim, which at least lays out WBL's initial allegations. I can follow up with state court counsel's to see if there is a document that contains a more thorough description of the parties' relationship – or perhaps I can send some direct questions that you might have.

And I apologize if I was unclear. I wasn't asking you to paraphrase testimony. I was asking if my understanding was a fair paraphrase of the trustee's claim against WBL. Right now, all I have seen is Mr. Helmstetter accuse WBL of "stealing" property, which obviously never happened.

Best,

Tom

2



**Thomas H. Griseta**

105 W. Madison St., Suite 1500

Chicago, Illinois 60602

d. 312 629 2031

f. 847 574 8233

e. tgriseta@wfactorlaw.com

---

**From:** Dennis Quaid <dquaid3@gmail.com>
**Sent:** Tuesday, May 11, 2021 3:00 PM
**To:** Tom Griseta <tgriseta@wfactorlaw.com>
**Cc:** Greg Stern <greg@gregstern.com>; Monica O'Brien <monica@gregstern.com>; Jeffrey Paulsen <jpaulsen@wfactorlaw.com>
**Subject:** Re: Michael Helmstetter - World Business Lenders

Here is the earlier part of Helmstetter's testimony concerning World Business Lenders
which adds background:

Q. Now, there's another creditor, World Business
13 Lenders. Do you know that name?
14 A. Oh, yes, I do. Yes, I do. That's why Mr. Monty
15 Merz is on the phone.
16 Q. I'm sorry?
17 A. That's why Monty is on the phone with the audio.
18 Q. Okay. They filed a claim, Number 22, in the sum
19 of $1,383,983 claiming a mortgage on real estate at 8500 S.
20 Stewart, S-T-E-W-A-R-T, Chicago. So you recognize World
21 Business Lenders. What was the transaction involving
22 yourself with them?
23 A. Well, they're trying to steal the property that
24 somebody put up as collateral for the loans.
25 Q. Well, where did we start with World Business
72
1 Lenders?
2 A. Nobody ever heard of them until all of a sudden
3 there's this fake loan on a property that was pledged as
4 collateral.
5 Q. Did this deal with one of your businesses?
6 A. Yes, it did.
7 Q. Which one?
8 A. New City Historic Auto Row.
9 Q. And was New City Historic trying to get a loan
10 from World Business Lenders?

3

```
11 A. No, we were not. We were trying to get a loan
12 from Ultegra and we had a $17,000,000 piece of land we put
13 up as, you know, pledged for collateral. They ended up - -
14 Q. And that is located at 8500 S. Stewart in
15 Chicago?
16 A. Yes, that's correct.
17 Q. Who owned that property?
18 A. 8700 Chatham.
19 Q. That's a - -
20 A. LLC.
21 Q. And who owned 8700 Chatham?
22 A. There's four or five people that the group 8700
23 Chatham, LLC consists of.
24 Q. Can you give us their names?
25 A. Yeah. You have - - the two contacts that I was
73
1 dealing with is Dan - - well, it's actually Patrick Daniel
2 Daly and Karen Daly. The other three names are Mark
3 Rooney, James Kanzler, and the other gentleman has got a
4 lot of different letters in his name that I couldn't
5 pronounce but he goes by Max.
6 Q. So what was the relationship between 8700
7 Chatham, LLC and you getting a loan for New City Historic
8 from Ultegra?
```

This testimony fits into the portion I previously sent to you.

I examined Helmstetter on 12/29/20 via Zoom pursuant to the order directing his Rule 2004 examination.

I decline to paraphrase the testimony.

So, send me the pleadings to which you referenced and I will review same. Then we can discuss any next actions.

Dennis E. Quaid

Of Counsel to Gregory K. Stern PC

312-961-3954

On Tue, May 11, 2021 at 12:45 PM Tom Griseta <tgriseta@wfactorlaw.com> wrote:

Dennis –

4

Ok, so this is related to the state court proceeding, then. I'll discuss again with counsel in that case with the transcript you provided me as guidance.

What I am gathering form the below testimony is that Mr. Helmstetter thinks that this Ultegra Group is working together with WBL in order to give some property to WBL. That them working together is how WBL would somehow "steal" property? Is that an accurate paraphrase of his claim? If it is, I would imagine that showing you that WBL and Ultegra are adverse parties would clear all of this up. I can get you some documents from WBL's counterclaim against Ultegra and a number of other parties if you think those will be helpful.

I don't see anything in there about interfering with or breaching a loan to the Dalys. Is there another section of the transcript where he discusses that? Is this transcript from his 341 meeting? Is the Trustee the person asking the questions?

I appreciate you digging this up. I just have a hard time fully responding until I understand what I am responding to. I will look over our POC and also discuss that with the client.

Best,

Tom



**Thomas H. Griseta**

105 W. Madison St., Suite 1500

Chicago, Illinois 60602

d. 312 629 2031

f. 847 574 8233

e. tgriseta@wfactorlaw.com

---

**From:** Dennis Quaid <dquaid3@gmail.com>
**Sent:** Tuesday, May 4, 2021 11:07 AM
**To:** Tom Griseta <tgriseta@wfactorlaw.com>
**Cc:** Greg Stern <greg@gregstern.com>; Monica O'Brien <monica@gregstern.com>
**Subject:** Re: Michael Helmstetter - World Business Lenders

```
Tom: Thank you for your response. I will await a more detailed statement from you.

Here is Helmstetter's testimony as to World Business Lenders:

Q. So what was the relationship between 8700

7 Chatham, LLC and you getting a loan for New City Historic

8 from Ultegra?

9 A. Well, when I met the Dalys, this was in the old
```

5

10 E2 nightclub at 2355 S. Michigan Avenue which was actually

11 built in 1906 as the original Alfa Romeo dealership, so I

12 was going to be putting the Alfa store into that facility

13 and then Daly ended up doing a deal with them and he got

14 the facility. So we got to know each other over the next

15 couple of months and he had a problem with parking and I

16 had a problem whereas I needed money, so we put together a

17 deal where, you know, he would pledge his land if we could

18 get the money to work this out. And that's what we did,

19 but we never got any money and his land got stolen.

20 Q. His land. Which land?

21 A. 8500 S. Stewart. It's 16 and a half acres there

22 on the south side of Chicago.

23 Q. And how did it get stolen?

24 A. Well, World Business Lenders ends up giving a

25 loan to this Ultegra group, a guy named John Lewis Monroe

74 1 that's got these not-for-profits out of Virginia and D.C.

2 So this guy takes out a loan on the property. I have no

3 idea who this guy is other than he's represented from the

4 same attorney that was representing Moe Howard, so we're

5 assuming it's an extension of Ultegra.

6 Q. So New City Historic, your business, was trying

7 to get a loan from Ultegra and Ultegra was trying to get a

8 loan from World Business Lenders. Do I understand that

6

9 correctly?

10 A. Yes, correct.

11 Q. And why did Ultegra have to get a loan from

12 World Business Lenders, if you know?

13 A. I do not know.

14 Q. Did you ever have any ownership interest in the

15 realty at 8500 S. Stewart in Chicago?

16 A. No, I did not.

17 Q. Any interest in 8700 Chatham, LLC?

18 A. No, I did not.

19 Q. Did you sign any loan documents with World

20 Business Lenders?

21 A. No, I did not.

22 Q. Well, apparently World Business Lenders to you

23 loaned money, which we can just leave that statement to lie

24 there. But I will note that the interest rate on the

25 document of World Business Lenders is 75.80 percent. Would

75 1 you ever have signed a loan document with such a high rate

2 of interest?

3 A. No. I've never dealt with World Business

4 Lenders, never signed a document, never seen a document.

5 Afterwards, you know, once this all came to light we got

6 the documents. I produced them all to Richard. None of

7 them have my signature on it. I mean, I have nothing to do

7

8 with the property. We listed them as a potential cause of

9 action for stealing the pledged collateral of the business

10 and in retaliation or whatever they sent that letter saying

11 that they're suing us for a million and a half which is

12 just the most ridiculous thing in this whole, in this whole

13 event.

So, Helmstetter believes he can sue WBL for interfering or breaching a loan to the Dalys which hindered Helmstetter from doing a deal with the Dalys. On the same or similar basis, you filed a secured claim for the loan against the Stewart property which is not property of the estate, Therefore, you will need to amend that claim to reduce it to an unsecured claim.

Dennis E. Quaid

Of Counsel to Gregory K. Stern PC

312-961-3954

On Tue, May 4, 2021 at 10:44 AM Tom Griseta <tgriseta@wfactorlaw.com> wrote:

Dennis –

My firm is not handling WBL's state court litigation in which Mr. Helmstetter is a defendant. I am not sure of any details surrounding a claim that Mr. Helmstetter could have against WBL, but I am in communications with them about the same. I spoke with the firm handling the state court litigation, and they were not aware of any such claim that Mr. Helmstetter might have. They also pointed out that Mr. Helmstetter has not appeared in that case and has not asserted any counterclaims. Obviously, as long as he in in bankruptcy, nothing affirmative is being sought against him in that litigation.

I will put together a response to your message below. I'm reaching out to you now to indicate that I received your email and am working on a response in case our response comes after the 7th. Do you have anything that you can send me that supports the claim? I'm not sure if the two parties have ever even had a formal relationship.

Best,

Tom

8

| | |
|---|---|
| ![FactorLaw - The Law Office of William J. Factor, Ltd.] | **Thomas H. Griseta**<br><br>105 W. Madison St., Suite 1500<br><br>Chicago, Illinois 60602<br><br>d. 312 629 2031<br><br>f. 847 574 8233<br><br>e. tgriseta@wfactorlaw.com |

**From:** Dennis Quaid <dquaid3@gmail.com>
**Sent:** Friday, April 23, 2021 4:27 PM
**To:** Tom Griseta <tgriseta@wfactorlaw.com>
**Cc:** Greg Stern <greg@gregstern.com>; Monica O'Brien <monica@gregstern.com>
**Subject:** Michael Helmstetter – World Business Lenders

Helmstetter as Debtor has scheduled in his Chapter 7 bankruptcy case pending in the Northern District of Illinois under docket number 19-28687, a cause of action against your clients, World Business Lenders, and/or Franklin, Perry & White in the sum of $1.5 Million +. . The basis of the cause of action is the alleged improprieties committed by World Business Lenders in a loan transaction and allegedly improperly encumbering realty.

I represent David R. Herzog, the Chapter 7 trustee of the estate of Mr. Helmstetter, The Trustee is the representative of the estate and is entitled to prosecute all actions on behalf of the estate.

Demand is hereby made by the Trustee on World Business Lenders and Franklin, Perry & White for the payment of the sum of at least $1.5 Million as damages for the wrongdoing that it allegedly committed to Helmstetter. Payment may be made via check payable to "David R. Herzog, Trustee of the estate of Michael Helmstetter, 19-28687" and sent to the undersigned. Alternatively, I will provide wire transfer instructions upon request.

In the event that your client disputes its liability to Helmstetter for the alleged wrongdoings, I require that you provide to the undersigned a narrative of your defense and copies of relevant documents pertaining to this issue.

I require a response by May 7, 2021.

Dennis E. Quaid

Of Counsel to Gregory K. Stern PC

9

312-961-3954

--