2021 WL 4272589
Only the Westlaw citation is currently available.
United States Bankruptcy Court, E.D. New York.

IN RE: Gershon BARKANY, Debtor.

Case No. 8-14-72941-las
|
Signed September 20, 2021

**Attorneys and Law Firms**

Seth M. Choset, Weinberg Gross & Pergament LLP, Garden City, NY, for Trustee.

Michael Jude Jannuzzi, Law Office of Michael Jude Jannuzzi, Huntington, NY, for Debtor.

Marc A Pergament, Weinberg Gross & Pergament LLP, Garden City, NY, Pro Se, Trustee.

MEMORANDUM DECISION AND ORDER DENYING TRUSTEE'S MOTION TO APPROVE ASSIGNMENT OF CLAIMS AGAINST DEFENDANTS JONATHAN ZELINGER, GILA ZELINGER, ETHICAL PRODUCTS, INC., AND PETEX INTERNATIONAL LIMITED TO BARKANY ASSET RECOVERY & MANAGEMENT LLC[1]

Louis A. Scarcella, United States Bankruptcy Judge

**\*1** Presently before the Court is the motion, dated February 1, 2021 (the "Assignment Motion") [Dkt. No. 680],[2] filed by Marc A. Pergament, Esq., as chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Gershon Barkany (the "Debtor"), seeking an order, pursuant to 11 U.S.C. §§ 105 and 363,[3] approving the Estate's assignment to Barkany Asset Recovery & Management LLC ("BARM")[4] of the Estate's claims against Jonathan Zelinger, Gila Zelinger, Ethical Products, Inc. ("Ethical Products"), and Petex International Limited ("Petex") (collectively, the "Zelinger Parties") for the sum of $70,000, subject to higher and better offers. The claims against the Zelinger Parties stem from a Ponzi scheme operated by the Debtor and are central to the Trustee's pending adversary proceeding against the Zelinger Parties and the Debtor's in-laws, Joseph and Deborah Rosenberg, in which he seeks to avoid certain prepetition transfers as fraudulent under § 544(b) and the applicable provisions of the New York Debtor and Creditor Law.

The amount offered by BARM, to wit, $70,000, exceeds by $24,568.78 the amount the Zelinger Parties offered to pay to the Estate under a proposed settlement of the Trustee's adversary proceeding against the Zelinger Parties. This, the Trustee and BARM assert, is in the best interests of the Estate and creditors and advances the goal of maximizing the value of the Estate. The Assignment Motion is opposed by the Zelinger Parties, the defendants in the action that BARM seeks to prosecute by reason of the proposed assignment.

The Court has jurisdiction to consider this matter under 28 U.S.C. § 1334(b) and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986, as amended by Order dated December 5, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) in which final orders and judgment may be entered by the Court.

The Court has carefully considered the parties' submissions, the relevant law, and the record in this case. For the reasons set forth below, the Assignment Motion is denied. While the Trustee and BARM may have agreed upon a process for the pursuit of avoidance actions and other estate claims against the Zelinger Parties, it is not an agreement vesting BARM with derivative standing to assert and litigate claims on behalf of the Estate and for the benefit of all creditors. BARM's pursuit of claims against the Zelinger Parties (and for that matter, against Joseph and Deborah Rosenberg) and any recovery would be for its sole benefit. Other creditors of the Estate, including those investors who likewise suffered from the Debtor's Ponzi scheme, would not partake in any recovery. That result is not consistent with what should clearly be a shared goal – the prosecution of claims in a manner consistent with maximizing the value of the bankruptcy estate for all creditors, not just one or a select few. As such, the proposed assignment in its current form ignores the long-standing practice established in the Second Circuit under which a creditors' committee or an individual creditor is authorized to pursue estate causes of action in place of a trustee or debtor in possession or pursue such causes of action as co-plaintiff. The common thread found in such cases, whether pursuit of claims centers on a request for derivative standing or an outright sale of estate claims as proposed here, is that pursuit and

**In re Barkany, Slip Copy (2021)**
2021 WL 4272589

recovery is for the benefit of all creditors. The Court declines to follow inapposite out-of-circuit case law that the Trustee and BARM rely on.

### Background

**\*2** The Court presumes the parties' familiarity with the underlying facts and procedural history of the Debtor's bankruptcy case. *See In re Barkany*, 542 B.R. 662, 668–81 (Bankr. E.D.N.Y. 2015). Accordingly, the Court will provide background only to the extent necessary to decide the Assignment Motion.

On June 25, 2014, an involuntary chapter 7 bankruptcy petition pursuant to § 303(b) was filed against the Debtor by Joseph Rosenberg, Marina District Development Co., LLC, and Saul Kessler. [Dkt. No. 1]. On January 12, 2015, the Debtor filed a statement consenting to the entry of an order for relief in the chapter 7 bankruptcy case, and on January 14, 2015, the Court entered an order for relief under chapter 7. [Dkt. Nos. 113, 118].

Mr. Pergament was appointed interim trustee on January 23, 2015 [Dkt. No. 120]. On April 22, 2015, an election for a permanent chapter 7 trustee was held and, on December 29, 2015, Mark A. Frankel, Esq. ("Frankel") was appointed as the permanent chapter 7 trustee of the Debtor's bankruptcy estate. [Dkt. Nos. 288–89]. Frankel eventually resigned as chapter 7 trustee, and Mr. Pergament was appointed as successor chapter 7 trustee and has continued to serve as the permanent chapter 7 trustee of the Debtor's bankruptcy estate. [Dkt. No. 394].

#### A. BARM's State Court Action

On March 3, 2014, BARM commenced a state court action (the "State Court Action") against the Zelinger Parties, as well as Joseph Rosenberg and Deborah Rosenberg (together with the Zelinger Parties, the "State Court Defendants"). For its first through ninth causes of action, BARM alleged that the State Court Defendants received transfers from the Debtor and entities that he controlled constituting fraudulent conveyances under New York's Debtor and Creditor Law. [*See* Dkt. No. 657-1, Ex. A, at ¶¶ 93–152]. For its tenth through twelfth causes of action, and based on the same alleged conduct, BARM asserted claims against the State Court Defendants for unjust enrichment, conversion, constructive trust, and aiding and abetting a fraud (collectively, the "Other State Law Claims"). [*See id.* at ¶¶ 153–78].

On September 8, 2015, the State Court entered an order granting the Trustee's motion to intervene in the State Court Action as a co-plaintiff. [*See* State Court Action NYSCEF 17].

#### B. The Rosenberg-Zelinger Adversary Proceeding

On October 5, 2016, Frankel commenced Adversary Proceeding No. 8-16-08149 (the "Rosenberg-Zelinger Adversary Proceeding") against Joseph Rosenberg, Deborah Rosenberg, and the Zelinger Parties. [Adv. Dkt. No. 1]. Joseph and Deborah Rosenberg are the parents of the Debtor's wife, Sarah Barkany, and Jonathan and Gila Zelinger are Ms. Barkany's uncle and aunt, respectively. [Adv. Dkt. No. 79 at ¶ 2]. Jonathan Zelinger is president of Ethical Products and Petex, and Joseph Rosenberg is Ethical Products' and Petex's vice president and chief information officer. In the complaint, Frankel alleged causes of action against the defendants stemming from a Ponzi scheme operated by the Debtor. Specifically, the six-count complaint asserted actual and constructive fraudulent transfer causes of action under several provisions of the New York Debtor and Creditor Law, to wit, constructive fraud under § 273 (Count I) and § 275 (Count II); intentional fraud under § 276 (Count III); and recovery of attorney's fees under § 276-a (Count IV); and asserted an objection to the allowance of Joseph Rosenberg's claims against the Estate (Count V) and an objection to the allowance of Jonathan Zelinger's claims against the Estate (Count VI). [Adv. Dkt. No. 1 at ¶¶ 82–114].

**\*3** In sum, the complaint alleges that Joseph Rosenberg, Jonathan Zelinger, Ethical Products, and Petex (i) knew, or should have known, that the Debtor was engaged in a Ponzi scheme or other fraudulent scheme, (ii) willfully ignored numerous red flags evidencing the Debtor's fraudulent conduct, and (iii) were the recipients (alongside Deborah Rosenberg and Gila Zelinger) of numerous fraudulent transfers made by the Debtor. [*Id.* at ¶¶ 34–81]. As noted above, the claims alleged by Frankel in the Rosenberg-Zelinger Adversary Proceeding consist of intentional and constructive fraudulent transfer claims under non-bankruptcy law, specifically New York Debtor and Creditor Law §§ 273, 275, 276 and 276-a, avoidable by reason of § 544(b), and do not include allegations that the transfers in question were fraudulent under § 548(a). With respect to the Zelinger Parties, Frankel sought to recover $380,430.98 against Jonathan and Gila Zelinger,

$805,000 against Ethical Products, and $481,700 against Petex. The defendants appeared in the Rosenberg-Zelinger Adversary Proceeding and asked that all claims against them be dismissed with prejudice. [Adv. Dkt. Nos. 12–17].

After he was appointed as permanent chapter 7 trustee, the Trustee filed Adversary Proceeding No. 8-17-08171, alleging fraudulent transfer claims under both New York Debtor and Creditor Law and § 548(a), against fourteen defendants including Jonathan Zelinger and Joseph Rosenberg. Thereafter, the Trustee's claims against Joseph Rosenberg and Jonathan Zelinger in Adversary Proceeding No. 8-17-08171 were discontinued without prejudice by an order entered on February 13, 2018. Thus, the claims currently pending against the Zelinger Parties are those asserted in the Rosenberg-Zelinger Adversary Proceeding under New York Debtor and Creditor Law §§ 273, 275, 276 and 276-a, and the objection to the allowance of the claims filed against the Estate by the Zelinger Parties.

### C. The Settlement Motion

On March 15, 2018, the Trustee filed a motion (the "Settlement Motion") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure seeking approval of a settlement between the Trustee and the Zelinger Parties. [Adv. Dkt. No. 50]. The Settlement Motion requests entry of an order settling the fraudulent transfer claims asserted in the Rosenberg-Zelinger Adversary Proceeding for the sum of $45,431.22. Further, the Settlement Motion provides, *inter alia*, that the Trustee, on behalf of the Estate, and the Zelinger Parties will exchange general releases, and will take joint action to obtain dismissal with prejudice of the State Court Action commenced by BARM and in which the Trustee was permitted to intervene; the Zelinger Parties will also withdraw all proofs of claim filed by them in the Debtor's bankruptcy case. [Adv. Dkt. No. 50-1, ¶ 21].

The Trustee advocates approval of the proposed settlement because his investigation of the subject transactions failed to uncover any facts or evidence to support the allegation that the Zelinger Parties knew that they were investing in, or advancing funds to, a Ponzi scheme. [*Id.* at ¶ 20]. As such, the Trustee avers that any settlement with the Zelinger Parties must be based on a "net winner analysis" whereby the Zelinger Parties would return their "net winnings" of $45,431.22, i.e., the amount of cash they took out of the Ponzi scheme that exceeded the amount invested. [*Id.* at ¶ 21]. Further, the Trustee contends that by accepting the settlement sum, together with the Zelinger Parties' agreement to waive any claims they may have against the Estate and withdraw their filed proofs of claim, the Trustee will realize a significant recovery for the Estate without incurring any further legal fees. [*Id.* at ¶ 33].

On July 30, 2019, BARM objected to the proposed settlement. [Adv. Dkt. No. 79]. In its objection, BARM argues that the Trustee's investigation of the Zelinger Parties has not been conducted in a reasonable or comprehensive manner because the Trustee has failed to challenge the Zelinger Parties' contentions by (i) seeking production of all relevant records from the Zelinger Parties and (ii) taking testimony and obtaining records from outside parties to verify the testimony and the completeness of the document production by the Zelinger Parties. [*Id.* at ¶¶ 5, 29–30]. BARM further argues that the Trustee should not settle with the Zelinger Parties separately from Joseph Rosenberg, and that the settlement should not be approved until certain computer records, obtained in June of 2019, have been thoroughly reviewed by the Trustee. [*Id.* at ¶¶ 31–41]. Finally, BARM argues that, should the Court grant the Settlement Motion, the release provision must be revised so that any particularized claims BARM has or may have against any of the Zelinger Parties are not released. [*Id.* at ¶ 42]. Specifically, BARM contends that, although the Trustee may have the right to release claims that are property of the Estate, the Trustee does not have the any right to release claims in the State Court Action that belong to BARM.

### D. BARM's Motion to Compel

*4 On December 31, 2019, BARM filed a motion (the "Motion to Compel") seeking entry of an order directing the Trustee to assign the Estate's state-law claims against the Zelinger Parties to BARM for $70,000 or, alternatively, to conduct an auction and sell them to the highest bidder. [Dkt. No. 630]. The Motion to Compel was initially supported by the Trustee to the extent that the sale would be subject to an auction, but was opposed by the Zelinger Parties and, later, the Trustee as well.[5] At a status conference held on May 5, 2020, for the reasons set forth on the record, the Court advised the parties that the Motion to Compel was denied without prejudice.

### E. The Court's Reconsideration of BARM's Request

Because the Motion to Compel was denied without prejudice, at the scheduled hearing on December 16, 2020, the Court inquired whether BARM intended to pursue the assignment by the Trustee of Estate claims or move for derivative standing with respect to claims against the Zelinger Parties. If not, the Court intended to move forward on the issues raised by the parties in connection with the Settlement Motion. BARM advised that it remained interested in acquiring all claims against the Zelinger Parties—both those asserted by the Trustee in the Rosenberg-Zelinger Adversary Proceeding, as well as the Other State Law Claims—for a sum certain.

After a discussion between the parties, the Court established the following timeline for submission by BARM of an offer to the Trustee for the assignment of Estate claims against the Zelinger Parties: BARM's offer must be communicated to the Trustee by December 23, 2020 and the Trustee must respond by December 30, 2020. Additionally, the Court directed the Trustee to file a letter on the Court's docket stating whether he and BARM had reached an agreement for the proposed assignment of Estate claims to BARM. The Court further directed that if the parties contemplated additional briefing in support of, or in opposition to, the assignment of claims to BARM, such supplemental memoranda must be filed and served for receipt by January 19, 2021.

### F. The Assignment Motion

On December 31, 2020, the Trustee filed a letter with the Court [Adv. Dkt. No. 137] stating that he had accepted a proposal from BARM for the assignment of claims, the parties were drafting the requisite documents to effectuate the assignment, and he expected to file a motion to approve the assignment in early January 2021. The Court thereafter scheduled a hearing for January 13, 2021 and, at the hearing, the Court established the following briefing schedule for the submission of a motion to approve the assignment: the motion must be filed and served by the Trustee by February 1, 2021, with BARM filing and serving a joinder, if it so desired, by the same date, any objection to be filed and served by March 1, 2021, and a reply, if any, by the Trustee and/or BARM to be filed and served by March 15, 2021.

On February 1, 2021, the Trustee filed the Assignment Motion, and BARM filed a joinder on the same date [Dkt. No. 681].[6] The Assignment Motion provides, *inter alia*, that, pursuant to an agreement between the Trustee and BARM, the Estate's claims against the Zelinger Parties would be sold and assigned to BARM for $70,000, BARM would pursue the claims assigned for its own benefit, and the Estate will retain the $70,000, regardless of whether BARM recovers any sum from the Zelinger Parties.

**\*5** The Trustee contends that the assignment to BARM of the Estate's claims against the Zelinger Parties is in the best interest of all creditors of the Estate, who will be receiving more than the $45,431.22 settlement amount previously negotiated with, and offered by, the Zelinger Parties, with no additional litigation risks or costs for the Estate. The Trustee argues that, with respect to the "*STN Trilogy*,"[7] the facts present here are unique. Specifically, the Trustee asserts that:

> (a) this case is a chapter 7 case; (b) BARM owns approximately 77% of the claims in this bankruptcy case; (c) the $70,000.00 being paid by BARM represents substantially more than $45,000.00 to be paid by the Zelinger Defendants under the settlement agreement; (d) the Claims being assigned, including the fraudulent conveyance claims under the DCL, are purely state law claims that BARM could have asserted, and did asset [sic], against the Zelinger Defendants in the absence of a bankruptcy; (e) after an exhaustive investigation and comprehensive discovery, the Trustee determined that $45,000 was the maximum sum recoverable by the Estate against the Zelinger Defendants; (f) the Assignment will facilitate the Trustee's ability to close this bankruptcy case in an efficient and expeditious fashion; (g) the Trustee consents to the Assignment; and (h) as a result of the Assignment, the Estate will bear no further expense in pursuing the Estate's claims against the Zelinger Defendants, whether by settlement or trial.

[Dkt. No. 680-5 at 4–5]. Further, the Trustee contends that, by consenting to the assignment, he has fulfilled his role of managing potential Estate claims as he and his counsel spent years investigating the fraudulent conveyance action asserted against the Zelinger Parties and determined that, under the "net winner rule," the maximum amount recoverable would be approximately $45,000, and BARM's offer increases this amount by approximately $25,000. [*Id.* at 5–6].

BARM argues that the claims are assignable because they are state-law fraudulent conveyance claims commenced prepetition and the assignment benefits the Estate because of the higher offer, while BARM solely bears the costs of the litigation. [Dkt. No. 681 at 8–11, 13–14]. BARM also argues that, regardless of the assignment terms, it would nevertheless meet the requirements for derivative standing under the *STN* Trilogy and *Commodore* in specific.[8] [*Id.* at 11]. With respect to the framework of derivative standing,

BARM maintains that: (i) the Trustee has indicated his consent to the prosecution of the claims by BARM by entering into the assignment and filing the Assignment Motion; (ii) the assignment is in the best interest of the Estate because the Estate will receive the maximum amount of money available for the claims to be assigned; and (iii) the assignment to BARM is necessary and beneficial to the resolution of the bankruptcy case because it will resolve the Estate's interest in the claims to be assigned, bringing the Trustee one step closer to closing the Debtor's case. [*Id.* at 14]. BARM also contends that fairness is assured as it holds most of the unsecured claims lodged against the Estate.

**\*6** The Zelinger Parties filed opposition to the Assignment Motion on March 2, 2021 [Dkt. No. 695]. In sum, the Zelinger Parties argue the merits of the underlying claims brought against them [*Id.* at 1–33], and repeatedly point to the testimony of the Trustee at the hearing on the Settlement Motion that (i) the Zelinger Parties are only liable to the extent they are "net winners" and (ii) the Other State Law Claims lack merit [*Id.* at 24–30, 32–33]. The Trustee and BARM each filed a reply in further support of the Assignment Motion on March 16, 2021.[9] [Dkt. Nos. 707, 709].

**Discussion**

Section 541(a) defines "property of the estate" to include, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Additionally, pursuant to § 541(a)(3), property recovered by a trustee's use of the "avoiding powers" contained in chapter 5 of the Bankruptcy Code, which includes fraudulent transfers avoided under § 544(b),[10] constitutes property of the estate available for distribution to creditors. 11 U.S.C. § 541(a)(3). The property recovered is "for the benefit of the estate." 11 U.S.C. § 550(a).

A trustee and creditors share a common interest in augmenting the value of a bankruptcy estate, and pursuit of claims and causes of action that arise out of prepetition transfers, through litigation, negotiation, or settlement, ensures that efforts are made to maximize the value of estate assets for distribution to creditors. Efforts to enhance the bankruptcy estate in this manner raises three questions in considering the Assignment Motion and what it seeks to accomplish. First, who can sue to set aside a fraudulent transfer – is commencement of the adversary proceeding the sole province of the trustee (or debtor in possession), or may a creditor ask a court for permission to pursue estate causes of action and under what circumstances may permission be granted? Second, what are the consequences of avoidance – are the recovered funds allocated amongst all creditors to ensure equality of distribution? Lastly, and this is the overarching question raised by the Assignment Motion, is the assignment in its current form in the best interests of the Estate and compatible with long-standing case law in this Circuit? The Court addresses each of these questions below and in doing so is guided by established case law in those instances where a creditor (or creditors' committee) is granted derivative standing to pursue estate causes of action in the interests of the bankruptcy estate and creditors. The framework for derivative standing also plays a pivotal role in those circumstances where a court has allowed an outright sale by a trustee of estate causes of action. And in those instances, we again see that the end game is maximization of estate assets for the benefit of all creditors.

**\*7** In the Second Circuit, "the trustee is the only party who is authorized to bring an action under section 544(b) of the Bankruptcy Code until he 'abandons it or otherwise allows the creditors to pursue it independently.' " *In re Metro. Elec. Mfg. Co.*, 295 B.R. 7, 12 (Bankr. E.D.N.Y. 2003) (quoting *Air Line Pilots Assoc. v. Am. Nat'l Bank & Trust Co. of Chi. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 436 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994)); *see also In re Greenberg*, 266 B.R. 45, 47 (Bankr. E.D.N.Y. 2001) ("An action to recover estate property becomes part of the debtor's bankruptcy estate and the right to pursue the claim on behalf of the estate properly vests solely in the bankruptcy trustee unless the trustee 'abandons it or otherwise allows the creditors to pursue it independently.' " (quoting *Ionosphere*, 156 B.R. at 436)). "Because this grant of authority to bring avoidance actions under the various sections of the Bankruptcy Code is specific to the trustee or debtor in possession, cases entertaining a request for a 'transfer' of such right are rare, and are rarely granted." *Metro. Elec.*, 295 B.R. at 12. This is because "[a]ssignments of the trustee's unique statutory powers, if not carefully scrutinized and narrowly circumscribed, may too easily result in the improper delegation and dilution of the trustee's primary duty to marshal the debtor's property for the benefit of the estate, and to sue parties for recovery of all property available under state law." *Greenberg*, 266 B.R. at 51 (citations and internal quotation marks omitted).

"A party seeking to displace the debtor-in-possession or trustee in an avoidance action already commenced by the debtor-in-possession / trustee faces an even 'heavier burden' than one seeking derivative standing to initiate such an action." *In re Milazzo*, 450 B.R. 363, 370 (Bankr.

D. Conn. 2011) (quoting *Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 177 (2d Cir. 2005)). "Accordingly, a creditor seeking authority to 'stand in the shoes' of the trustee to prosecute or settle an avoidance claim commenced by the trustee must, at a minimum, satisfy the requirements for derivative standing." *Id.*

As to the concept of derivative standing, under the law of the Second Circuit,

> A creditors' committee may acquire standing to pursue the debtor's claims if (1) the committee has the consent of the debtor in possession or trustee, and (2) the court finds that suit by the committee is (a) in the best interest of the bankruptcy estate, and (b) is "necessary and beneficial" to the fair and efficient resolution of the bankruptcy proceedings.

*Commodore*, 262 F.3d at 100 (quoting *Liberty Mut. Ins. Co. v. Official Unsecured Creditors' Comm. of Spaulding Composites Co. (In re Spaulding Composites Co., Inc.)*, 207 B.R. 899, 904 (9th Cir. BAP 1997). *see also Republic Credit Corp. v. Boyer (In re Boyer)*, 372 B.R. 102, 106 (D. Conn. 2007), *aff'd*, 328 F. App'x 711 (2d Cir. 2009) ("If a creditor intends to pursue avoidance claims on behalf of the estate, the sale or assignment of those claims may be permitted as long as the trustee consents and the court finds that the sale or assignment is in the 'best interest' of the estate and 'necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings.' " (quoting *Commodore*, 262 F.3d at 100)). *Commodore* constitutes an expansion of *STN Enterprises* in which the Second Circuit held that creditors' committees have a qualified right to initiate suit with approval of the bankruptcy court "when the trustee or debtor in possession unjustifiably fail[s] to bring suit or abused its discretion in not suing to avoid a preferential transfer." *STN Enters.*, 779 F.2d at 904. In *Housecraft,* the third in the cases that make up the *STN* Trilogy, the Second Circuit confirmed that a debtor in possession may request that the court vest a creditors' committee with joint standing to pursue estate causes of action alongside the debtor in possession as co-plaintiff when doing so satisfies the requirements of *Commodore*. *Housecraft*, 310 F.3d at 71; *Adelphia Commc'ns*, 330 B.R. at 374.

With this legal framework in mind, the Court turns to the position of the parties. In the first instance, the Trustee and BARM argue that the very nature of the claims themselves permits assignment since the Trustee is not seeking to assign claims arising under § 548, but rather fraudulent conveyance claims arising under the applicable provisions of the New York Debtor and Creditor Law through § 544(b). As such, the Trustee argues that he is merely asking to sell his "right to bring state law claims existing outside of bankruptcy." [Dkt. No. 680-5 at 8 (quoting *Milazzo*, 450 B.R. at 374)].

**\*8** The Trustee is correct in pointing out that, in *Milazzo*, the court noted "[u]nlike the Avoidance Action in the present proceeding, which arose under §§ 548 and 549, the avoidance action at issue in [*Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253 (5th Cir. 2010)] was a state-law fraudulent transfer action brought by the trustee pursuant to 'strong-arm' powers of § 544(a), and the Fifth Circuit limited its holding to such claims which arise under nonbankruptcy law." *Milazzo*, 450 B.R. at 373–74 (also noting the creditor "would have had no grounds for avoiding the transactions at issue had the Debtor not filed her bankruptcy petition" (*Id.* at 374 fn.12)).

However, the *Milazzo* court also noted that the *Moore* court did not consider "whether a creditor could pursue avoidance actions *for its own benefit*, or whether, as in the Second Circuit, they may only be pursued by a creditor authorized by the bankruptcy court to pursue them *in a derivative capacity for the benefit of the estate*." *Id.* at 374 (emphasis added). Further, as stated by Judge Eisenberg in *Metro. Elec.*, a chapter 7 trustee's power to utilize certain state-law avoidance actions for the benefit of the estate under § 544(b) is a "special grant of authority" and akin to "the power of a public official to carry out various responsibilities in a representative capacity." *Metro. Elec.*, 295 B.R. at 12 (citation and internal punctuation omitted). "It is clear that this special grant of authority is made to the trustee because the trustee is charged with acting in a fiduciary capacity vis-a-vis the creditors of the debtor's estate." *Id.*

Section 544(b), which allows a trustee to use state fraudulent conveyance law to set aside prepetition transfers of an interest of a debtor in property, is representative of a trustee's "primary duty to marshal the debtor's property for the benefit of the estate, and to sue parties for recovery of all property available under state law." *Greenberg*, 266 B.R. at 51. The trustee's duty to marshal property for the benefit of the estate makes clear that claims under § 544(b) are as important a tool to a chapter 7 trustee as claims under §§ 547 and 548 because the claims under § 544(b) likewise allow a trustee to marshal assets for distribution to unsecured creditors under §§ 704(a)(1) and 726(a). Accordingly, the mere fact that the claims the Trustee seeks to assign to BARM arise under § 544(b) and several provisions of the New York Debtor and Creditor Law is not dispositive of the issue and does not, by itself, justify or warrant assignment of the fraudulent conveyance claims asserted in the Rosenberg-Zelinger Adversary Proceeding.

Having so determined, the Court now turns to the grounds asserted in support of the proposed assignment. In the Assignment Motion, the Trustee and BARM rely, in large part, upon case law outside the Second Circuit in advocating approval of the sale and assignment of estate causes of action and seek to distinguish cases in the Second Circuit that hold to the contrary.[11] However, as discussed below, reliance on out-of-circuit case law ignores binding Second Circuit precedent, particularly the doctrine of derivative standing and the exercise of avoiding powers for the benefit of the bankruptcy estate and all creditors as opposed to benefitting but one creditor. The latter theory contravenes basic principles of bankruptcy law – bankruptcy is a collective remedy designed to maximize value for the benefit of the estate and fosters equality of distribution among similarly situated claims. *See McCarthy v. Navistar Fin. Corp. (In re Vogel Van & Storage)*, 210 B.R. 27, 33 (N.D.N.Y. 1997), *aff'd*, 142 F. 3d 571 (2d Cir. 1998); *Greenberg*, 266 B.R. at 49. Equality of distribution is an important purpose of bankruptcy law. As stated by the Supreme Court in *Bailey v Glover*, 88 U.S. 342, 346 (1874): "It is obviously one of the purposes of the Bankrupt[cy] law, that there should be a speedy disposition of the bankrupt's assets. This is only second in importance to securing equality of distribution."

**\*9** This policy of ensuring equity in a distribution to creditors is of particular importance in the Debtor's case as all victims of the Ponzi scheme should share equally in any recovery of avoided transfers. The Trustee and BARM advocate that the lump sum offered by BARM, $70,000, comports with the policy of equality of distribution as it permits the Estate to receive an amount greater than that offered by the Zelinger Parties to settle the adversary proceeding as against them, to wit, $45,431.22. The Court disagrees. At the end of the day, the lion's share of the additional amount paid by BARM, i.e., $24,568.78, trickles down to BARM as it holds close to 80% of the unsecured claims lodged against the Estate and it is not ceding its *pro rata* distribution of the lump sum payment, thus resulting in a "benefit" to the other unsecured creditors of just $4,913.75. That is what the remaining defrauded investors and other unsecured creditors will partake in if the Trustee is authorized to assign the claims to BARM as proposed by the Assignment Motion. That is simply not an equitable result under the circumstances and contravenes the applicable law in this Circuit regarding the criterion for derivative standing or an outright sale of estate causes of action that a trustee seeks to monetize.

Building on their argument that the sale is most beneficial to the Estate, the Trustee and BARM both argue that this case is distinguishable from cases within the Second Circuit such that it should not be bound by those decisions. Again, the Court disagrees. The Trustee and BARM's effort to distinguish the relevant cases is unavailing.

In *Greenberg*, the court held that "the trustee's authority to pursue these claims may be properly assigned to [a creditor] provided that such authority is *limited to the pursuit of claims on behalf of the estate* and that *any subsequent recovery is equitably distributed to [the debtor's] creditors under the trustee's supervision*." *Greenberg*, 266 B.R. at 51 (emphasis added). The trustee in *Greenberg* sought to settle an avoidance action with the debtor's wife for $150,000. A creditor holding 99% of the estate's claims, and who aggressively pursued postpetition litigation against the debtor's wife to recover alleged fraudulent conveyances by the debtor, objected to the trustee's Bankruptcy Rule 9019 motion and offered to pay the trustee $175,000 for an assignment of and the right to prosecute the claims. The *Greenberg* court stated that "the sale of the trustee's powers to a single creditor, no matter how impartially executed, may nevertheless contribute to the appearance of unfairness and a lack of neutrality," however, such appearance of impropriety is minimized insofar as the creditor seeking the sale held 99% of the claims, the immediate benefit to the estate of $25,000 in excess of the original settlement offer clearly maximized value for the estate, *and the creditor was willing to pursue the claims on behalf of the estate*. *Id.* As such, *Greenberg* highlights the importance of pursuing avoidance actions on behalf of the estate, with any recovery inuring to and distributed amongst *all* creditors, rather than simply for the assignee's sole benefit (notwithstanding the benefit provided to the estate *vis-à-vis* the higher purchase price). This is even so where the assignee or purchaser is the largest creditor in the case.

The Trustee argues that the proposed assignment to BARM is distinguishable from *Greenberg* on the basis that the assignment will maximize the value of the Estate and will not prejudice the equality of distribution amongst the Debtor's creditors, given that BARM represents nearly 80% of the unsecured creditor claims, and he has determined that the Estate is not likely to recover more than approximately $45,000 from the Zelinger Parties at trial. In joining the Trustee's argument, BARM notes that, like the creditor in *Greenberg*, BARM commenced the State Court Action prepetition, it holds a large majority of the outstanding claims in this case and is offering the Trustee approximately $25,000 more than the settlement sum currently being offered by the Zelinger Parties.

Neither party, however, addresses the point that, in *Greenberg*, the creditor expressed a clear willingness to pursue the claims on behalf of the estate, regardless of whether they had commenced a prepetition action. Specifically, the *Greenberg* creditor included in its second reply that "[i]f the Court finds that for Chubb to pursue the Claims using the Trustee's avoidance powers any recovery must be for the benefit of the estate, Chubb is willing to pursue the Claims on behalf of the estate, and will accept that as a condition of any assignment." *Id.* (citation omitted). This is an important distinction, given Judge Bernstein's emphasis on the appearance of unfairness associated with the sale or assignment of a trustee's avoidance powers to a single creditor, *even where that creditor held 99% of the claims against the estate*. Here, BARM has been steadfast both in the prior Motion to Compel and in its joinder to the Assignment Motion that pursuit of the assigned claims is for its sole benefit and any recovery would not be allocated for distribution to other creditors of the Estate.[12]

**\*10** In *Metro. Elec.*, the court held that a proposed sale, for $25,000 and 20% of any sums recovered, of § 544(b) claims, which the chapter 11 trustee had investigated and deemed to have "minimal, if any, value," to a shareholder of the debtor who had been at odds for years with some of parties whom he wished to sue, could not be approved as being in best interest of estate and necessary and beneficial to a fair and efficient resolution of the proceedings. There, Judge Eisenberg noted that it was not a "case where the Trustee lacks funds to commence the actions in question, and failure to bring the actions will likely result in the loss of a significant benefit to the estate." *Metro. Elec.*, 295 B.R. at 14. Judge Eisenberg further stated that

> "If [the creditor] is permitted to purchase the Trustee's rights and pursue the alleged wrongdoers, there will be no end in sight to litigation in this case and the only benefit to the estate is the purchase price of $25,000 plus a highly unlikely recovery in the amount of 20% of any recovery by the offeror. ... It will only delay the conclusion of this case and the case would have to remain open for quite some time if the Application is granted. It is not at all clear that there will that there will be any gain to the estate beyond the initial $25,000 purchase price. Putting an end to litigation in this bankruptcy case and distributing the funds available to creditors is in the best interests of this estate, and this benefit far outweighs any benefit in selling the Trustee's rights.
>
> *Id.*

The Trustee argues that *Metro. Elec.* is distinguishable because the court there rejected the assignment agreement, in part, because the trustee did not believe the avoidance claims had merit, the assignment would have resulted in continued litigation before the court, the trustee admitted the claims had little or no value, the action had yet to be commenced, and the proposed purchasing creditor made no attempt to investigate the claims. The Trustee contends that the fraudulent conveyance claims brought against the Zelinger Parties have merit and have a value of up to approximately $45,000, and, once assigned, any further litigation would occur in the State Court Action, thereby allowing the Trustee to proceed to close out the Debtor's bankruptcy case. The Trustee further points out that unlike the creditor in *Metro Elec.*, BARM investigated and initiated the state-law fraudulent conveyance claims prepetition and has continued to be an active participant in the Debtor's bankruptcy case. [Dkt. No. 680-5 at 10–11]. For its part, BARM contends that *Metro Elec.* is distinguishable because the Trustee has expressed strong support for the proposed assignment of claims asserted against the Zelinger Parties.

"Strong support" is a stretch, but even if that were the case, what both BARM and the Trustee overlook is that although the Trustee has consented to the assignment on the basis that the fraudulent conveyance claims are meritorious, he has previously taken the position, and unequivocally so, that the Other State Law Claims lack merit and that he would not, on behalf of the Estate, pursue any of these claims against the Zelinger Parties. Accordingly, his consent to the assignment of the Other State Law Claims, much like the trustee in *Metro. Elec.*, is half-hearted at best given that he has foreclosed any possible recovery on these claims. Hence, he seeks authority to sell claims that upon investigation he determined were unmeritorious and could not form the basis of any recovery to the Estate.[13] A proposed sale of claims determined by a trustee to be without merit is an issue separate and apart from whether a sale of estate claims thought to have value is in the best interests of the estate and its creditors. While the latter, under certain circumstances with appropriate safeguards in place, may be authorized under established case law here in the Second Circuit, the former is offensive to the integrity of the bankruptcy system and should not be permitted. As discussed further below, neither the Trustee nor BARM provided any authority to support the creation of a "cottage industry" of selling off claims determined by a trustee to be without merit to a creditor solely as a means of monetizing the meritless claims.

**\*11** Further, as expressly stated in *Metro. Elec.*, a trustee's "statutory rights to commence avoidance actions pursuant to Section 544(b) of the Bankruptcy Code and

the enabling statutes cannot be sold or assigned where the only benefit to the estate is the purchase price received for that purchase." *Metro. Elec.*, 295 B.R. at 16. Under the proposed assignment, BARM will pay to the Estate the sum of $70,000, approximately $25,000 more than proposed settlement sum offered by the Zelinger Parties, and will pursue the causes of action for its own benefit. Any recovery on the assigned claims will not be allocated to the Estate for distribution to all creditors. Thus, the only benefit to the Estate identified by the Trustee and BARM is the higher purchase price, nothing more. Moreover, if the $70,000 purchase price is available for distribution to unsecured creditors, BARM will receive its *pro rata* share of the $70,000, which amounts to approximately $56,000, and the remaining unsecured creditors would receive a *pro rata* share of approximately $14,000. By comparison, if the Court were to approve the Trustee's proposed settlement with the Zelinger Parties, BARM's *pro rata* share of the settlement sum is approximately $36,000, and other unsecured creditors would share in the remaining balance of approximately $9,000. It's a $5,000 swing.[14] Is the extra $5,000 for unsecured creditors such a difference maker that it unequivocally supports the argument that the assignment of the claims is in the best interests of all creditors? The Court concludes that it is not. Additionally, these facts differ markedly from *Metro. Elec.*, where the creditor seeking assignment sought to also include a portion of the amounts so recovered in a distribution to creditors, and *Greenberg*, where the court was unwilling to grant the sale-assignment absent the creditor pursuing the claims on behalf of the estate *despite the creditor holding 99% of the claims*. This distinction is crucial, as the proposed terms of the assignment would make it such that, were BARM to recover in the State Court Action an amount more than $70,000, the remaining 20% of the creditors in this case—also Ponzi scheme victims—would not benefit beyond the additional $5,000 that would flow to them through the higher assignment price.

Simply put, at the end of the day, under the proposed assignment, the other unsecured creditors receive a *pro rata* share of $14,000 instead $9,000, and BARM is free to prosecute causes of action which it firmly believes to have significant value, namely tens of millions of dollars, for its sole benefit, all by paying an additional flat sum of $5,000 to other unsecured creditors. When weighed against a potential recovery allocated *pro rata* among all defrauded investors and other victims of the Ponzi scheme operated by the Debtor, the additional $5,000 pales in comparison and is not outcome-determinative.[15]

There is only one case in the Second Circuit—*Knoll, Inc. v. Zelinsky,* No. 05-CV-1499 (GLS/DRH), 2008 WL 11504632, at *1 (N.D.N.Y. Apr. 8, 2008)—that has allowed an outright sale-assignment of fraudulent conveyance and preference claims to an individual creditor for a sum certain, which would then be pursued by the creditor for its own benefit. In *Knoll,* the trustee elected not to bring an action against a creditor, Key Bank, to recover or avoid a prebankruptcy payment made by the debtor to Key Bank; instead, the trustee sought to sell the claims to the debtor's largest unsecured creditor. The *Knoll* court analyzed the *STN* Trilogy and noted that, specifically with respect to *Housecraft*:

> Here, by contrast, INE's bankruptcy is over, and no portion of Knoll's recovery will go to benefit INE's bankruptcy estate. Nevertheless, the policy reasons underlying the court's decision in *Housecraft Industries* are equally applicable to the facts of the present case. In *Housecraft Industries*, the trustee had determined that it lacked the resources to pursue the avoidance claims, and thus those claims would have been abandoned absent the creditor's assistance in bringing suit. *Id.* at 68. Thus, under the circumstances, the goals of augmenting the debtor's estate and preventing preferential treatment could best be furthered by approving creditor standing. *See id.* at 71-72. The same is true here. Trustee Danaher determined that it would not be a beneficial use of the estate's funds to pursue an avoidance action against Key Bank. Thus, Trustee Danaher, with approval of the bankruptcy court, elected to sell the estate's claims against Key Bank, thereby obtaining at least some monetary benefit for the estate where otherwise there would have been none.

**\*12** *Knoll,* 2008 WL 11504632, at *7.

The Trustee argues that *Knoll* is applicable because, if granted, the assignment will provide a monetary benefit to the Estate by the additional sum of $24,568.78 where otherwise there would have been none, much like the *Knoll* case. BARM adds that, like *Knoll*, it is the largest creditor and would be bearing the expense of the litigation. Of note, however, is the fact that the *Knoll* trustee sought to sell or alternatively abandon the claims at issue. Here, in contrast, the Trustee brought an adversary proceeding to avoid, as fraudulent, prepetition transfers made to the Zelinger Parties and has determined that the Other State Law Claims lack merit and will not be pursued by him on behalf of the Estate. Nothing in the record establishes that the Estate lacks sufficient resources to initiate and prosecute litigation against the Zelinger Parties, or Joseph and Deborah Rosenberg for that matter.

The reasoning behind *Knoll*, while apt based on the facts, does not lead this Court to conclude that it should ignore the *STN* Trilogy on derivative standing, a pivotal

framework from which to assess whether a creditor may obtain standing to pursue estate causes of action for the benefit of all creditors, as well as the reasoning set forth in *Metro. Elec.* and *Greenberg*, by allowing BARM to pursue Estate claims for its sole benefit, especially where BARM would be taking its *pro rata* share of the $70,000 assignment price. In short, the "maximized" benefits inherent in the assignment only total an additional $5,000 to other unsecured creditors in an estate that already holds several million dollars for distribution.

Accordingly, neither the Trustee nor BARM has convincingly explained why BARM should be allowed to pursue avoidance claims under § 544(b) in exchange for an additional $5,000 to other unsecured creditors where, most importantly, BARM seeks to pursue the aforesaid claims, as well as other claims, *solely for its own benefit*. To allow such a result, particularly under the circumstances of this case—a Ponzi scheme that affected all creditors—is not consistent with established case law in this Circuit and, as discussed earlier, contravenes the basic bankruptcy principle of maximizing value for all creditors and ensuring equality of distribution. While there is a disagreement among courts as to whether avoidance actions can be sold by a trustee,[16] in the Second Circuit a sale of avoidance actions and claims may be authorized in extremely limited circumstances, and the common thread in such cases where a sale is contemplated is that pursuit of the avoidance actions and claims must be on behalf of the estate and for the benefit of *all* creditors. Simply put, BARM is not asking the Court to confer derivative standing or approve a sale on such terms that would be permissible in the Second Circuit, and the Court is not bound by decisions outside the Second Circuit that permit a sale of estate claims and causes of action for a creditor's sole benefit. The Court sees no reason, particularly in this Ponzi scheme case, to deviate from the well-reasoned opinions here in the Second Circuit concerning the framework under which a creditor or a creditors' committee may seek and obtain standing to pursue estate causes of action. Adhering to the guiding principles of the *STN* Trilogy and the maxim that pursuit of avoidance actions is for the benefit of all creditors ensures that all defrauded investors and other Ponzi scheme victims share ratably in any recovery by the Trustee, or by a third party granted derivative standing or permission to pursue claims for the benefit of the Estate.

**\*13** The Court now turns to the request to sell and assign to BARM the Other State Law Claims under the proposed assignment. For the following reasons, the Other State Law Claims, which the Trustee has declined to bring himself, may not be assigned or sold under the proposal advocated by the Trustee and BARM.

Under applicable case law and public policy concerns, the sale of these claims that the Trustee determined to be meritless and has not sought to prosecute in the State Court Action or even allege in the Rosenberg-Zelinger Adversary Proceeding is impermissible. *See Milazzo*, 450 B.R. at 380 ("In this Court's view permitting prosecution or continued prosecution of causes of action without merit, is against public policy. ... Reasonable settlements should be encouraged. Pursuing claims without merit should not." (internal citation omitted)); *In re Boyer*, 354 B.R. 14, 35 (Bankr. D. Conn. 2006), as amended (Nov. 20, 2006), *aff'd*, 372 B.R. 102 (D. Conn. 2007), *aff'd*, 328 F. App'x 711 (2d Cir. 2009) ("[T]he court notes that permitting a trustee to sell causes of action which he would not litigate himself under any circumstances would encourage trustees to traffic in causes of action with no litigation value. That would foment useless litigation and is against public policy."); *Metro. Elec.*, 295 B.R. at 11 (noting that the trustee refused to bring the claims himself and refused to be a co-plaintiff on those claims and, as such, his consent to assignment thereof was "half-hearted" at best and was merely given to bring money into the estate).[17]

This is a case where an experienced trustee, one who has been a chapter 7 trustee for nearly thirty-three (33) years, has investigated the Other State Law Claims and testified that he believes they lack merit. In an affirmation filed on June 2, 2020, the Trustee stated that:

> After becoming the permanent Chapter 7 Trustee, my counsel and I investigated the claims asserted by Mr. Frankel and conducted discovery regarding those claims in the context of the Adversary Proceeding. *As a result of that investigation and discovery, I determined that Frankel's decision to not assert the Other State Law Claims in the Adversary Proceeding was correct, **as the claims were without merit*** and, in any event, sought damages that were largely duplicative of the damages recoverable on the Fraudulent Conveyance Claims.

[Dkt. No. 657-1 at ¶ 19 (emphasis added)]. This is directly akin to *Milazzo,* where the court noted that "an experienced Trustee, specifically nominated and elected by [the creditor seeking the assignment-sale], testified that '... I don't believe ... that after discovery and having given this greater thought that those [postpetition] claims really had any merit.' " *Milazzo*, 450 B.R. at 380 (second alteration in original).

The Trustee contends that the proposed assignment to BARM is different and thus permissible because he believes the fraudulent conveyance claims in the Rosenberg-Zelinger Adversary Proceeding have merit.

This, however, does not persuasively carry the day. The Trustee is not only seeking to assign fraudulent conveyance claims, but *also* the Other State Law Claims, which he has investigated and deemed to be meritless. To allow a trustee to sell claims that he has investigated and deemed to be meritless, *even packaged with meritorious claims*, would fly in the face of *Boyer*, *Milazzo*, and *Metro. Elec.*

**\*14** Declining to approve a sale or assignment of the Other State Law Claims on the record placed before the Court is not inconsistent with the administration of a bankruptcy case by a trustee seeking to monetize assets of the bankruptcy estate for the benefit of creditors. A trustee has "an obligation 'to act on behalf of the bankruptcy estate, that is, for the benefit of the creditors.' " *Metro. Elec.*, 295 B.R. at 11 (citation omitted). This duty extends to collecting and reducing to money the property of the estate. *See* 11 U.S.C. § 704(a)(1). While § 704 does not contain an explicit "duty" of a chapter 7 trustee to maximize distributions for the benefit of creditors, the Supreme Court in *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985) recognized the notion of a chapter 7 trustee "seeking to maximize the value of the estate." *Id.* at 353. *See also Merit Mgmt. Grp. LP v. FTI Consulting, Inc.*, 138 S. Ct. 883 (1918) ("To maximize the funds available for, and ensure equity in, the distribution to creditors in a bankruptcy proceeding, the Bankruptcy Code gives a trustee the power to invalidate a limited category of transfers by the debtor or of an interest of the debtor in property.").

Here, in keeping with the "duty" to maximize value, we have an experienced trustee prosecuting estate causes of action, to wit, the state-law fraudulent conveyance actions against the Zelinger Parties, and Joseph and Deborah Rosenberg as well. If the Trustee, after due investigation, believed that the Other State Law Claims had merit and prosecution of these claims in an efficient and economical manner would augment the Estate, he would have pursued them. This is especially so given that, in the State Court Action, BARM seeks tens of millions of dollars in connection with the Other State Law Claims. The Trustee, in seeking to satisfy what he perceives to be his his statutory duties, avers that he has investigated the Other State Law Claims to ascertain whether pursuit of these claims would increase the property of the bankruptcy estate for distribution to all creditors. According to the Trustee, his investigation came up empty. He decided not to pursue the Other State Law Claims on the basis that they lacked merit rather than because the Estate lacked funds to pursue them. The Trustee refused to bring the claims on the basis that he would not succeed given their lack of merit and, as such, prosecution thereof would only serve to drain rather than augment Estate funds.

To the issue of merit, BARM notes the distinction between *Greenberg*, where an assignment was granted, and *Metro. Elec.*, where an assignment was denied. BARM argues that, in *Greenberg*, the purchasing creditor held what appeared to be legitimate claims arising out of breach of contract and violation of the RICO Act against a debtor who had pled guilty to federal criminal charges and was serving a federal prison sentence. [Dkt. No. 681 at 16]. BARM argues that this is similar to the instant case, whereas in *Metro. Elec.*, the proposed purchaser-plaintiff and proposed defendants had been at odds with each other over the debtor's business for years, and the proposed assignee had not investigated the claims to be assigned. [*Id.*]. BARM contends that, here, all parties acknowledge that the claims have merit. [Dkt. No. 709 at 8–9]. However, BARM's contention is unavailing given the Trustee's affirmation in which, without equivocation, he stated that the Other State Law Claims lack merit. The record is clear – the Trustee determined that the fraudulent conveyance claims asserted in the Rosenberg-Zelinger Adversary Proceeding have merit, and he continued prosecution of those claims, and the Trustee investigated the Other State Law Claims and deemed them meritless.

BARM alternatively contends that, even if the Trustee viewed the Other State Law Claims as lacking in "substantial value," it is not a basis under the law of the Second Circuit to bar their assignment. [*Id.* at 9]. To this end, BARM again points to *Knoll*, where "[t]he Trustee wrote that he had concluded that 'direct actions against Key Bank, N.A. and/or John Zelinsky, would not appear to in any way benefit the Bankruptcy Estate, and would rather only serve to delay Final Distribution herein.' " *Knoll*, 2008 WL 11504632, at \*3.

**\*15** BARM's argument regarding "substantial value" is faulty on its face, as it appears to suggest that where a trustee has affirmed that he or she has investigated claims and found them to be without merit, the trustee is stating that the claims lack "substantial value." The Court disagrees. Claims lacking "substantial value" and claims "without merit" are two different concepts. A determination not to pursue claims that a trustee finds to be without merit is different from claims a trustee decides not to pursue because they lack substantial value. In the latter, there would not be a benefit to the estate by the trustee's pursuit of such claims – it's a cost-benefit analysis. For example, a trustee may have claims that may potentially have value, but prosecution would involve some level of uncertainty and cause the trustee to incur potentially significant legal fees to obtain recovery and,

thus, severely reduce or eliminate funds that would flow to the estate for distribution to creditors. As such, under a cost-benefit analysis, a trustee may very well decide to forgo litigation that in the end will not result in augmenting the estate to any degree. That is not the same analysis undertaken when claims are determined by a trustee, after due investigation, to be without merit. Although in both instances a trustee has determined that pursuit of claims will not benefit the estate, how that determination is arrived at is markedly different. It's not a cost-benefit analysis that keeps a trustee from pursuing meritless claims. Rather, it's the fact that upon investigation the claims are without merit and will not be pursued. Reliance on *Knoll* is misplaced and does not weigh in favor of BARM and the Trustee on this point. There is nothing to suggest that the *Knoll* court's decision is grounded on the sale of meritless claims. The court in *Knoll* noted that the bankruptcy case was over and the trustee's pursuit of the claims to be assigned would delay final distribution and would not be a beneficial use of estate funds.

Accordingly, for these reasons, it would be improper under *Boyer*, *Milazzo*, and *Metro. Elec.* to allow a trustee to sell causes of action that he or she has investigated and declined to bring, not because the claims lack "substantial value," but rather because they are meritless and thus without *any* value. To permit a trustee to extract some value by selling meritless claims would foment frivolous litigation and potentially create a cottage industry whereby a trustee will seek to monetize claims that have been carefully vetted and determined to lack merit. The Court refuses to sanction monetizing worthless claims in such fashion.

**Conclusion**

For the foregoing reasons, the Assignment Motion [Dkt. No. 680] is denied.

So Ordered.

**All Citations**

Slip Copy, 2021 WL 4272589

Footnotes

1   This Memorandum Decision and Order is consistent with and explains further the bases of the Court's ruling at the conclusion of the status conference on August 26, 2021. At the status conference, the Court also advised the parties that the Trustee's motion to preclude the testimony of C. David Belsky, C.P.A. in support of BARM's objection to the proposed settlement of the Trustee's pending adversary proceeding against the Zelinger Parties was likewise denied. That ruling is the subject of a separate written decision of the Court. *See* Memorandum Decision and Order, dated September 9, 2021, entered in the adversary proceeding Pergament v. Rosenberg et al., Adv. Proc. No. 8-16-08149-las.

2   Unless otherwise stated, all docket references to the bankruptcy case are cited as "[Dkt. No. __]" and all docket references to the related adversary proceeding of Pergament v. Rosenberg et al., Adv. Proc. No. 8-16-08149-las, are cited as "[Adv. Dkt. No. __]."

3   All statutory references to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., will hereinafter be referred to as "§ (section number)."

4   According to the claims register in this case, BARM's claims represent approximately 79.3% of the non-priority unsecured claims against the Estate. Contingency claims were not included in the calculation of the percentage held by BARM.

5   A series of dueling letters were filed by BARM, the Trustee, and the Zelinger Parties throughout February 2020 on issues raised by the Motion to Compel. [*See* Adv. Dkt. Nos. 108–17]. Additionally, the Motion to Compel placed the Settlement Motion and the Trustee's motion *in limine* to exclude the testimony of Mr. Belsky in support of BARM's objection to the proposed settlement with the Zelinger Parties on hold pending the Court's ruling on the Motion to Compel and the assignment of estate causes of actions to BARM.

6   The filing of the Assignment Motion again placed on hold the Settlement Motion and the Trustee's motion *in limine* to exclude the testimony of Mr. Belsky in support of BARM's opposition to the settlement reached between the Trustee and the Zelinger Parties.

7   Neither the Trustee nor BARM requested that BARM be vested with derivative standing to pursue claims against the Zelinger Parties on behalf of the Estate. Derivative standing in the Second Circuit, i.e., circumstances where a creditor or creditors'

|   |   |
|---|---|
|   | committee may seek and obtain standing to pursue an estate cause of action on behalf of the estate is governed by *Unsecured Creditors Comm. of Debtor STN Enters., Inc. v. Noyes (In re STN Enters.)*, 779 F.2d 901 (2d Cir. 1985), *remanded*, 73 B.R. 470 (Bankr. D. Vt. 1987); *Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.)*, 262 F.3d 96 (2d Cir. 2001); and *Glinka v. Murad (In re Housecraft Indus. USA, Inc.)*, 310 F.3d 64 (2d Cir. 2002). The Court refers to *STN*, *Commodore* and *Housecraft* as the *STN* Trilogy. For a thorough discussion of the *STN* Trilogy, *see Adelphia Commc'ns Corp. v. Bank of Am.*, N.A. (*In re Adelphia Commc'ns Corp.*), 330 B.R. 364 (Bankr. S.D.N.Y. 2005). "The practice of authorizing the prosecution of actions on behalf of an estate by committees, and even by individual creditors, upon a showing that such is in the interests of the estate, is one of long standing, and nearly universally recognized." *Id*. at 373. |
| 8 | It bears repeating that the Assignment Motion does not request that the Court vest BARM with derivative standing under the *STN* Trilogy. Rather, it is an outright sale with BARM pursuing the assigned causes of action for its own benefit, and not on behalf of and for the benefit of the bankruptcy estate. Accordingly, the Court need not, and does not, address whether the requirements to obtain derivative standing to pursue claims on behalf of the Estate have been met. Because the parties referenced *Commodore* in particular, the Court notes that in *Commodore*, the Second Circuit held that a creditors' committee may, subject to court approval, prosecute causes of action *on behalf of the estate* where the suit is (i) in the best interest of the bankruptcy estate and (ii) "necessary and beneficial" to the fair and efficient resolution of the case. *Commodore*, 262 F.3d at 100 (emphasis added). |
| 9 | On March 8, 2021, the Court entered an order extending the time by which the Trustee and/or BARM may file a reply to the Zelinger Parties' objection from March 15, 2021 to March 16, 2021, on the basis that the Zelinger Parties untimely filed their objection on March 2, 2021. At a hearing held on March 11, 2021, the Zelinger Parties explained that their delay in filing the objection was caused by an outage with the Court's Electronic Filing (CM/ECF) System. |
| 10 | Section 544(b)(1) authorizes a trustee to avoid a transfer of an interest of the debtor in property that could have been invalidated under state law by an actual creditor holding an unsecured claim in the absence of bankruptcy. 11 U.S.C. § 544(b)(1); *see Mendelsohn v. Kovalchuk* (*In re APCO Merch. Servs., Inc.*), 585 B.R. 306, 314 (Bankr. E.D.N.Y. 2018). The trustee may thus seek to avoid a transfer under applicable state fraudulent conveyance law and avoidance is not only for the benefit of the actual creditor whose shoes the trustee steps into, but it is "also for the benefit of all of the unsecured creditors of the estate." *Silverman v Sound Around, Inc*. (*In re Allou Distribs., Inc.),* 392 B.R. 24, 32 (Bankr. E.D.N.Y. 2008). |
| 11 | BARM relies heavily on the Firth Circuit decision in *Moore* for the proposition that the Trustee is empowered to sell and assign, and BARM may purchase and pursue for its own benefit, estate causes of action, including state-law fraudulent conveyance claims that become property of the estate under § 544(b). [Dkt. No. 680 at 8–11; Dkt. No. 709 at 4–6]. |
| 12 | The proposed terms of the assignment provide that, *inter alia*, "BARM will receive the entirety of any proceeds resulting from any outcome of the Claims, including by way of judgment or settlement. The Estate shall not be entitled to any credit against BARM's allowed proof of claim for any recoveries it may obtain on the Claims assigned it in this assignment." [Dkt. No. 680-2 at 3]. |
| 13 | Whether the Other State Claims are meritorious is not an issue presently before the Court, and the Court makes no findings or conclusions as to the merits of each of these claims. The Court simply relates the Trustee's position as to the value of the Other State Law Claims in the context of his attempt to distinguish the well-reasoned opinion in *Metro Elec*. The Court notes that BARM, with equal certitude, contends that the Other State Law Claims have merit and disagrees with the Trustee's conclusion. Had the parties sought derivative standing, a merits inquiry would be required, at least to determine whether the claims are "colorable" as that is the appropriate standard employed when faced with a motion under *STN*, *Commodore* and *Housecraft*. *See Adelphia Commc'ns*, 330 B.R. at 376. The required showing is not a high bar. *Id*. |
| 14 | As stated earlier, $24,568.78 is the amount BARM proposes to pay under the assignment in excess of the settlement sum offered by the Zelinger Parties and results in an additional $4,913.75 for other unsecured creditors. Here, for ease of reference, the Court is simply rounding up to show it is a "swing" of approximately $5,000. |
| 15 | The Court's analysis of the assignment and the purchase price is not to be construed as the Court's making any findings or conclusions as to whether the proposed settlement of the adversary proceeding is in the best interest of the estate and satisfies the governing standard for approval of a settlement. That determination will be made after conclusion of the adjourned hearing to consider the Trustee's motion to approve the proposed settlement with the Zelinger Parties. |
| 16 | *See Brekelmans v. Salas (In re Salas)*, No. 318-02662, 2020 WL 9172379, at *4 (Bankr. M.D. Tenn. Dec. 7, 2020) (collecting cases); *In re Clements Mfg. Liquidation Co., LLC*, 558 B.R. 187, 189 (Bankr. E.D. Mich. 2016) (collecting cases and holding that the chapter |

**In re Barkany, Slip Copy (2021)**
2021 WL 4272589

    7 trustee therein could not assign avoidance actions or powers).

17    It bears repeating that the Court is not making any conclusions or findings as to whether the Other State Law Claims have merit and acknowledges that the Trustee and BARM have differing views as to the merits of these claims. Had the parties sought to confer standing on BARM to pursue these claims, the Court would be tasked with making the appropriate merits inquiry.

**End of Document**    © 2021 Thomson Reuters. No claim to original U.S. Government Works.