IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| MICHAEL S. HELMSTETTER | ) | Case No. 19-28687 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |

**OMNIBUS REPLY OF DAVID HERZOG, CHAPTER 7 TRUSTEE, TO RESPONSES AND OBJECTIONS OF (1) BENITTA BERKE, (2) COUNTY MAYO AND 2401 S. MICHIGAN BUILDING CORP., (3) SANTANDER BANK, N.A., (4) WORLD BUSINESS LENDERS, LLC., a/k/a WBL, (5) TERRY GAOUETTE AND (6) MICHAEL HELMSTETTER, DEBTOR, TO TRUSTEE'S MOTION TO APPROVE BIDDING PROCEDURES AND SELL CAUSES OF ACTION**

Now comes DAVID R. HERZOG, as the duly appointed and Trustee in this Chapter 7 case ("**Chapter 7 Trustee**") and for his Omnibus Reply to the several responses and objections of (1) Benitta Berke (Doc. 158); (2) County Mayo and 2401 S. Michigan Building Corporation (Doc. 144 & 161); (3) Santander Bank, N.A., (Doc. 142 & 160); (4) World Business Lenders, LLC a/k/a WBL, (Doc. 159); (5) Terry Gaouette Doc. 162)[1]; and Michael Helmstetter, Debtor[2] (Doc. 148) to the *Chapter 7 Trustee's to Approve (I) Bidding procedures, (II) Sale of Causes of Action Free and Clear of Liens, Claims and Other Interests, and (III) To Limit Notice* (Doc. 139) and states as follows:

I.  **INTRODUCTION**.

1. In pursuit of his duty to monetize the scheduled property of the Debtor's estate for the benefit of nearly $20 Million of claims filed by claimants, the Trustee presented his *Chapter 7 Trustee's to Approve (I) Bidding procedures, (II) Sale of Causes of Action Free and Clear of Liens, Claims and Other Interests, and (III) To Limit Notice* (Doc. 139) ("**Motion**") to obtain approval of

---

[1] Terry Gaouette filed his response outside of the deadline established by this Court.
[2] Michael Helmstetter, Debtor, appeared through his counsel at the initial hearing but has not filed a response to the Motion, other than his Notice of Objection (Doc. 148).

1

this Court of the bidding procedures proposed by the Chapter 7 Trustee to sell the substantial remaining assets consisting of various causes of action scheduled[3] by the Debtor at a value approaching $24 Million.

2.  The Responses and Objections enumerated above represent self-serving interests advanced by the Debtor and several claimants, which are also the principal parties alleged to be liable to the Debtor and therefore, to the estate.

3.  Benitta Berke (hereafter "**Berke**"), Santander Bank, N.A. (hereafter "**Santander**"), World Business Lenders, LLC a/k/a WBL (hereafter "**WBL**") and Terry Gaouette (hereinafter "**Gaouette**") are all potential defendants in the prosecution of scheduled causes of action. These parties have objected on various grounds, in an apparent attempt to persuade the Court to conduct a trial on the merits of the causes of action against them within the confines of the Chapter 7 Trustee's Motion for the purpose of persuading the Court that no cause of action exists and therefore, the Chapter 7 Trustee should not be permitted to attempt to offer for sale the scheduled cause of action against each of them.

4.  Contrarywise, County Mayo Corporation and 2401 S. Michigan Building Corporation (hereafter "**Landlords**") first objected (Doc. 144) to the Motion but now support the sale by the Chapter 7 Trustee (Doc. 161) to avoid an abandonment of the causes of action to the Debtor.

5.  Finally, the Debtor, Michael Helmstetter, filed a notice of objection to the Motion but has failed to file any written Response to the Motion, despite taking the position at the initial hearing on the Motion in favor of the alternative remedy of abandonment of the scheduled causes of

---

[3] Debtor has filed three sets of schedules with wide-varying dollar amounts of the value of the scheduled causes of action, filed on (1) November 4, 2019, as Docket 26, (2) April 9, 2020, as Docket 47 & 48, and (3) August 26, 2020, as Docket 63.

action by the Chapter 7 Trustee in order to return the actions to the Debtor for his post-bankruptcy prosecution of those actions against the scheduled parties.

6. The self-interest of the objecting parties is obvious. Berke, Santander and WBL have filed substantial claims, which are as follows: (A) Berke filed claim no. 20-1 in the sum of $1,873,550.14; (B)Santander filed claim no. 12-1 in the sum of $5,078,740.87; and, (C)WBL under the name of Franklin, Perry & Willis, LLC, filed claim no. 22-1 in the sum of $1,383,983.34. These three claims comprise 40% of the total claims filed against the estate.

7. Notwithstanding presenting these huge claims, these three parties (Berke, Santander and WBL) have rejected the demand of the Chapter 7 Trustee for payment of their respective liabilities and now object on self-serving bases to the Chapter 7 Trustee's Motion to monetize these actions in order to realize additional funds to pay creditors of the estate.

8. County Mayo Corporation has filed claim no. 17-2 in the sum of $324,550.07 and 2401 S. Michigan Building Corporation has filed claim no. 16-2 in the sum of $1,105,657.62 (hereinafter, "**Landlords**"). After first objecting to the Chapter 7 Trustee's Motion, these Landlords now support the Motion and proposed sale. Their rationale is stated in ¶14 of their Response (Doc.161) as follows:

> Landlord's believe that it is unlikely that any party other than themselves and possibly Debtor or someone affiliated with Debtor will likely bid on the claims. But if the causes of action are not sold they will be abandoned to the Debtor. Although such causes of action have no merit, the existence of those causes of action will permit the Debtor to further harass creditors, including Landlords, and bring meritless lawsuits against them. Landlords believe that the best way to bring these causes of action to a conclusion, as well as aid in the administration of this estate, is for these causes of action to be sold.

Landlord's Amended Limited Objection to Trustee's Motion Regarding Sale, ¶14.

9. Landlords adopt a long range viewpoint of seeking a means to finally resolve their controversies between themselves and the Debtor. Obviously, if Berke, Santander and WBL should

3

prevail in blocking a sale of the scheduled causes of action against them, then they will need to litigate with the Debtor over the merits of the scheduled causes of action after the Chapter 7 Trustee's abandonment of those causes of action[4]. These parties should remember the statement at the initial hearing on the Motion of Mr. Tancredi, counsel for the Debtor, proposing the remedy of abandonment so as to permit the Debtor to quickly pursue prosecution against Berke, Santander and WBL as well as all other targeted defendants of the scheduled causes of action. Therefore, the misguided attempts of Berke, Santander and WBL to defeat the Chapter 7 Trustee's proposed sale of the scheduled causes of action against them will not achieve a conclusion successful to their interests of that litigation. Rather, defeating the Motion of the Chapter 7 Trustee will only expedite the commencement of litigation against them – by the Debtor. Santander has described the tenacious litigation pursued by the Debtor under the guise of his business against Santander, including prosecuting an appeal to the Seventh Circuit Court of Appeals. Santander, *Amended Objection*, (Doc. 160), ¶¶18-20.

10. The Landlords have correctly recognized the benefits to themselves offered by the Chapter 7 Trustee's Motion. As the Motion states at ¶ 16, the Chapter 7 Trustee anticipates that the most probable purchaser of any of the causes of action against any given party would be the party named in the scheduled cause of action (hereafter, the "**Targeted Defendant**"). Therefore, it is most likely that Berke (or the Debtor) would be party to purchase the causes of action against Berke. Similarly, the most likely party to purchase the cause of action against Santander would be Santander, and the same for WBL and the Landlords. Such a purchase would affect a settlement and discharge of the cause of action as far as the estate of the Debtor (and the Debtor) is concerned, as

---

[4] Abandonment may occur in either of two different manners; the act of the trustee affirmatively abandoning the cause of action with court approval under §554(a) or through the inaction of the estate in not administering the asset pursuant to §554 (c).

4

there is no discernable difference to the estate between a sale of the cause of action and a settlement and extinguishment of that same cause of action.

11.     The choice of each Targeted Defendant between a purchase from the Chapter 7 Trustee of the cause of action or litigating with the Debtor over the merits of the same cause of action represents a business decision for each party to make. Clearly, the Landlords have made their business decision.

## II.     ARGUMENT

### A.     THE OBJECTORS SEEK TO CONFUSE THE BIDDING PROCEDURES BY ADOPTING MULTIPLE ROLES.

12.     The multiple arguments advanced by the Targeted Defendants in their respective objections are contradictory and intended to confuse this Court as to the real issues at stake in the Chapter 7 Trustee's proposed bidding procedures. The Targeted Defendants argue that there should be no sale of the causes of action because none of the causes of action exist, or that if they do exist, they are owned by the Debtor's business entities rather than by the Debtor. Next they argue that the bidding procedures are unfair to bidders at a sale, although the Targeted Defendants don't want a sale to be conducted. They further argue that if any of them make a bid, the bidding procedures allowing for bidders to make their best bid as opposed to multiple rounds of bidding, the procedures are unfair as forcing them to start with their highest bid amount.

13.     The arguments are self-serving and intended to give to the Targeted Defendants an advantage in making bids to buy-back the scheduled cause of action against them for the cheapest possible price. The Chapter 7 Trustee doesn't begrudge the Targeted Defendants seeking to pay the cheapest price to buy the cause of action against them but disagrees that the Targeted Defendants have the right to rig the bidding procedures in their favor. It is the Chapter 7 Trustee's sale and his prerogative to set the bidding procedures for the purpose of motivating all bidders to make the

highest dollar amount of a bid.  The existing bidding procedures seek to elicit the highest bids to purchase the subject causes of action in order to maximize the return for the estate.

14.     If bidders are required to present their best and presumably highest bid, the estate will benefit by encouraging higher bids to be made.  The Chapter 7 Trustee is agreeable to an alteration of the bidding procedures to eliminate bulk bids and permit all bids to bid on a per lot basis on individual causes of action. In the event of multiple bids on any individual cause of action, the bidders on that individual lot will be permitted to bid in an auction to determine the highest bid. The Chapter 7 Trustee agrees to and will amend the bidding procedures accordingly on Exhibit A attached hereto (the "**Amended Bid Procedures**"). Further, the objectors seek to confuse the Court that the Chapter 7 Trustee will approve the winning bidder.  Such a result is not the intended procedure.  This Court will determine the winning bidder and the Chapter 7 Trustee will recommend to the Court which bidder should prevail as the best and highest bid.

15.     The objection made by some of the Targeted Defendants to the inclusion of a bulk bid to purchase all causes of action has been addressed and rendered moot by the Amended Bid Procedures.

16.     The ultimate question in analyzing the objections of the Targeted Defendants becomes, in what role do they object and for what purpose?  If they are acting as potential defendants in litigation, they lack standing to interfere with the rules of that litigation, whether those rules consist of litigation or a sale of the potential litigation.  They may defend their interests against that litigation but have no right to object to the terms of same.  If they are acting as prospective bidders in the auction, they cannot change the rules to tip the balance of the scales in their favor and against the Chapter 7 Trustee.  And if they are acting as potential defendants attempting to discourage a sale or depress the purchase price(s) offered to the Chapter 7 Trustee, they are

6

interfering with the judicial process and should be sanctioned.

**B.    NONE OF THE OBJECTING PARTIES AS TARGETED DEFENDANTS WILL SUFFER ANY LOSS OR DIMINUTION OF THEIR RIGHTS TO DEFEND ANY FUTURE PROSECUTION BY A PURCHASER OF THE CAUSES OF ACTION.**

17.    The Chapter 7 Trustee's proposed sale of the pre-petition causes of action does not deny to the Targeted Defendant's any of their existing rights to defend those actions as if the bankruptcy case had never been filed. Only pre-petition causes of action are proposed to be sold. No avoiding power actions of the Chapter 7 Trustee, if any exist, are included in the proposed sale. Therefore, the Targeted Defendants will have the same rights and opportunities to defend against the prosecution by a purchaser of the causes of action as they would if that action was prosecuted against them (i) by the Debtor prior to this bankruptcy case or (ii) by the Chapter 7 Trustee.

18.    The rights of the Targeted Defendants are thusly preserved, and no harm will be suffered by them through a sale of the action against them.

**C.    THE CHAPTER 7 TRUSTEE IS ENTITLED TO SELL THE ESTATE'S RIGHT, TITLE, AND INTEREST IN THE CAUSES OF ACTION.**

19.    The Targeted Defendants also object to the proposed sale by the Chapter 7 Trustee on the basis that the causes of action are either non-existent or were owned by a business entity of the Debtor. The Chapter 7 Trustee disagrees for several reasons.

20.    First, the Debtor has scheduled the causes of action as assets of himself or possibly one of his business entities. The nature of the causes of action as being based according to the Debtor on a variety of wrongful actions including fraud, conspiracy, intentional breaches of contracts cast a wide net of victims. The Debtor as an individual could be one of the harmed parties.

21.    In order for this Court to determine who was a victim potentially harmed by the alleged wrongful actions and who was not harmed would need to hear evidence of the wrongful

action and possibly expert testimony as well. None of the Targeted Defendants has offered to produce any evidence to support their proposition that the Debtor was not harmed in any way by the alleged wrong and only the corporate entities of the Debtor were harmed. Absent such evidence, this Court is unable to make such a finding.

22. Such a procedure would constitute a waste of the Court's resources.

23. The Targeted Defendants adopt a too narrow view of the potential victims of the alleged wrongful actions. Debtor was a guarantor or otherwise liable to some of the Targeted Defendants and in that status would or could have suffered harm by the alleged wrongful actions against the corporate entity by creating a liability for Debtor when none would otherwise have existed.

**D.    THE OBJECTORS LACK STANDING TO OBJECT TO THE CHAPTER 7 TRUSTEE'S PROPOSED SALE OF THE CAUSES OF ACTION.**

24. The objectors as the Targeted Defendants lack standing to object to the Chapter 7 Trustee's proposed sale of the causes of action against them.

25. §1109(b) provides that a "party-in-interest" "may" raise and be heard on the subject matter of a contested matter before the Court. However, §1109(b) does not in and of itself create standing for the objectors. Our Court of Appeals for the Seventh Circuit has explained in relation to §1109(b) that:

> [S]ection [1109(b) was [not] intended to waive other limitations on standing, such as that the claimant be within the class on intended beneficiaries of the statute that he is relying on for his claim, although a literal reading of section 11009(b) would support such an interpretation.

*In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992).

26. While the concept of standing in both federal and bankruptcy cases is currently evolving, a party may not be heard in the absence of standing in the contested matter.

8

### (1) Constitutional Standing

27.The most basic element of standing is Constitutional standing under Article III based on a pecuniary interest in the subject matter of the contest matter. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992), For one or more of the following reasons, the objectors do not hold constitutional standing:

(A)Here, all of the objectors lack any pecuniary interest in the proposed sale of the causes of action. Their liability on the cause of action does not qualify as a pecuniary interest in the sale; they are either liable or not liable on the cause of action and the proposed sale of the cause of action does not alter, modify, or change that liability;

(B)The price of any bid they should voluntarily choose to make to buy their cause of action at the proposed sale also does not qualify as a pecuniary interest. That price is a voluntary transaction on their part; and,

(C)The successful sale of the cause of action against any given Targeted Defendant may increase the dividend available to be paid by the Chapter 7 Trustee to all unsecured, non-priority creditors, but such increased dividend is a benefit and not a detriment, therefore not qualifying as pecuniary interest at stake.

Therefore, all of the objectors lack Constitutional standing. 7 Collier on Bankruptcy ¶ 1109.04[4][a] (16th ed.).

### (2) Statutory Standing

28.The second element of standing is Statutory standing, wherein a statute confers a right to bring an action. *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128, 134 S. Ct. 1377, 188 L.Ed.2d 392 (2014). No statute confers on the objectors as Targeted Defendants a right to be heard on the method chosen by the Chapter 7 Trustee on administering

the cause of action against them. Consequently, the objectors all lack Statutory standing.

### (3) Prudential Standing

29. Prudential standing involves the:

> general prohibition of a litigant's raising another person's legal rights … and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.

*Lexmark Int'l, Inc.* at 126. *See also*, *In re Fencepost Prods., Inc.*, 679 B.R. 289 (Bankr. D. Kan. 2021). See, *In re C. P. Hall Co.*, 750 F.3d 659 (7th Cir. 2014), wherein an insurer objected to a settlement between the debtor and another party for the reason that the settlement consideration was so low that the debtor would then be motivated to seek recovery from Columbia, a second insurer, with the holding that Columbia lacked standing:

> [T]o become a party to the bankruptcy proceeding Columbia had to show not merely standing but that 'a legislatively conferred cause of action encompasses' its claim. *Lexmark Int'l, Inc. v. Statis Control Components, Inc., supra*, 134 S. Ct. at 1387. Specifically, it had to show that the Bankruptcy Code conferred the right that it sought – the right to butt into a settlement negotiation between other parties. Its desire to butt in is understanable. Agreements settling lawsuits often have third-party effects. A company might pay so much in settlement of a suit that it could no longer afford to honor its contract to buy some input from a third party; the third party would be harmed. The logic of Columbia's claim to be entitled to object to Hall's settlement with Integrity is that Hall received so little in the settlement that it is bound to come after Columbia for the difference. The claim is weak. Columbia's lawyer would have to agree that by this logic an employee whom the lawyer's client laid off because it foresaw having to make a big payout to Hall could challenge the settlement. That way madness lies – settlements made impossible by crowds of objectors.

30. All of the objectors (except the Debtor) are Targeted Defendants and creditors as well. But none of them, including the Debtor[5], possess standing under any of the three recognized bases to be heard. None will lose any defenses by virtue of the sale. None as potential defendants are beneficiaries of any provision of the Bankruptcy Code in their capacity as

---

[5] The Debtor lacks Constitutional standing as having no pecuniary interest at stake.

10

potential defendants. None will lose any dividend or experience a diminution of their dividend by virtue of the Chapter 7 Trustee's proposed sale of the cause of action scheduled as an asset of the estate and may well see an increase in the amount of such a dividend.

31.     Therefore, the Court should not countenance any of the objections from the Targeted Defendants as well as the Debtor.

E.     **ADEQUATE DISCLOSURES OF THE NATURE OF THE CAUSES OF ACTION HAVE BEEN MADE IN THE MOTION AND WILL BE AVAILABLE FROM THE TARGETED DEFENDANTS.**

32.     The motion of the Chapter 7 Trustee contains multiple disclosures of the opinion of the Chapter 7 Trustee as to the merits and cost benefit considerations for prosecuting or declining to prosecute the causes of action. However, the objectors are speaking as tortfeasors and wrong-doers which desire to escape a day in court to answer for their alleged wrongs when they claim that the Trustee has not adequately disclosed the nature of the causes of action. Such self-serving statements should not sway the opinion of this Court. Better to let the marketplace decide the salability of the causes of action than to listen to the alleged wrong-doers decide their fate at the expense of the dividend otherwise payable. As a final piece of information that will be available to any prospect purchaser as to the merits of the causes of action, the prospective bidders will undoubtedly include the Debtor and his knowledge as a source of information to accurately evaluate the cause of action being offered for sale.

F.     **NONE OF THE TARGETED DEFENDANTS IS BEING FORCED TO BID TO PURCHASE ANY CAUSE OF ACTION INCLUDING THE ONE SCHEDULED AGAINST THEM.**

33.     The mixture of roles subsumed in the responses of the Targeted Defendants supports the false premise that the bidding procedures of the Chapter 7 Trustee are forcing the Targeted Defendants to bid to purchase the scheduled cause of action against them. Such a

premise is completely untrue. As stated hereinabove in Section B, none of the Targeted Defendants loses any defense or legal right to ward off a suit by a purchaser through the proposed sale and bidding procedures.

34. The discussion in the responses regarding the purported unfairness of the bidding procedures as to the Targeted Defendants bidding to purchase the scheduled cause of action against them in a defense manner involved a business decision of those parties. Such action is logical. But once again, the Targeted Defendants do not have the right to slant the rules of the game in their favor and to the detriment of the Chapter 7 Trustee for the purpose of giving them a better outcome. It is the Chapter 7 Trustee's sale and right to structure the sale through the bidding procedures. The involvement of each of the Targeted Defendants to decide whether to bid or not, how to bid and how much to bid, are strategic business decisions properly made by each of those parties. They have no right to enhance the potential outcome and by doing so, reduce the monies available to pay a dividend to non-priority creditors, including themselves.

35. The Court should allow each of the Targeted Defendants to decide how to proceed in bidding and on what terms. Any intervention by the Court on these points would only work a detriment to the non-priority creditors at the benefit of the Targeted Defendants. In the event that any one of the Targeted Defendants dislikes the rules of the auction, they may choose not to participate and defend any lawsuit prosecuted against them by the purchaser of the cause of action.

**G. THE NECESSITY OF COURT APPROVAL FOR ANY SALE OF A CAUSE OF ACTION OFFERS ALL OF THE NECESSARY PROTECTIONS THAT THE OBJECTORS REQUIRE**

36. A sale of the scheduled causes of action requires approval of this Court. §363(b)(1). The Chapter 7 Trustee will submit a Report of Sale to the Court and request the

entry of an order confirming the sale(s) the prospective purchaser(s) submitting the best and highest bid. See, *Matter of Met-L-Wood Corp.*, 861 F.2d 1012 at 1018 (7th Cir. 1988):

> ". . . but the practice is that the bankruptcy judge, following the hearing, will issue an order authorizing the sale (if he decides the property should indeed be sold), and after the sale is made he will issue a second order, confirming the sale

37. The second order, confirming the sale, is the final and appealable order. *In re Sax,* 796 F.2d 994, 996-97 (7th Cir. 1986); *In re Allen*, 816 F.2d 325, 327 (7th Cir. 1987); *Met-L-Wood Corp.*, 861 F.2d 1012 at 1016 (7th Cir. 1988). The Chapter 7 Trustee submits and requests that this Court approve the Amended Bid Procedures and authorize the sale to proceed in compliance therewith. The conduct of the sale will eliminate the great deal of speculation underlying the Targeted Defendants' objections and allow the Court to rule to confirm the sale based on the actual results of that transaction.

Wherefore, DAVID R. HERZOG, Chapter 7 Trustee, prays that this Honorable Court overrule the objections of Berke, Santander, WBL and Gaouette and approve the bidding procedures, as modified, of the Chapter 7 Trustee.

DAVID R. HERZOG, Chapter 7 Trustee

/s/ Gregory K. Stern

Gregory K. Stern, Esq

Gregory K. Stern (Atty. ID #6183380)
Monica C. O'Brien (Atty. ID # 6216626)
Dennis E. Quaid (Atty. ID #02267012)
Rachel S. Sandler (Atty. ID #6310248)
53 West Jackson Boulevard, Suite 1442
Chicago, Illinois 60604
(312) 427-1558