**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| IN RE | ) |
| | ) Case No.:19-28687 |
| MICHAEL S. HELMSTETTER, | ) |
| | ) Chapter 7 |
| Debtor. | ) |
| | ) Hon. Jacqueline P. Cox |
| | ) |

**MOTION TO DISMISS TRUSTEE'S ADVERSARY
COMPLAINT UNDER RULE 12(B)(6) OF THE
FEDERAL RULES OF CIVIL PROCEDURE**

Respondent, BROWN, UDELL, POMERANTZ & DELRAHIM, LTD. ("BUPD"), moves to dismiss the Adversary Complaint of Plaintiff, David R. Herzog, as the Chapter 7 Trustee (the "Trustee") to Invalidate the Secured Claim No. 6-1 of Brown, Udell, Pomerantz & Delrahim, Ltd. (the "Complaint" or "Comp.") (Doc 198), under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support of its Motion, BUPD states as follows:

**INTRODUCTION**

1. This case arises from BUPD's claim for its attorney's fees for work performed under a retainer/representation agreement with Michael S. Helmstetter (the "Debtor") for a pre-filing litigation. This litigation resulted in a significant settlement payment to Debtor which represents the only asset in this bankruptcy.

2. The Trustee filed this Complaint to obtain an order invalidating BUPD's attorney's fee lien, and denying its claim for attorney's fees on the grounds that BUPD can only recover in quantum meruit and has failed to bear its burden of pleading and proving the value of its quantum meruit claim.

3. As shown below, the Complaint should be dismissed for failure to state a claim, as a matter of law, because the facts alleged would not, even if true, invalidate BUPD's

attorney's fee lien or deprive BUPD of its right to assert a claim for the secured and unsecured portions of its attorney's fees.

## FACTUAL BACKGROUND

4.  On October 26, 2018, the Debtor entered into a retainer agreement with BUPD to replace his former counsel, Mark Lyman, in litigation then pending in the Circuit Court of Cook County, *Helmstetter v. Ruscitti, et al.,* Case No. 14CH20208 (the "Litigation"). Debtor had filed the Litigation in 2014 against Richard Ruscitti, Kingdom Chevrolet, Inc. and Western Nissan, Inc. (the 'Defendants'). A copy of this agreement is attached to the Complaint as Exhibit B (the "Retainer Agreement").

5.  Under the Retainer Agreement, BUPD would be compensated on a "hybrid/contingency basis," as follows:

> If we are successful in negotiating a settlement on your behalf with the Defendants in excess of the most recent written offer of $400,000.00, or if litigation is continued against the Defendants and there is any recovery on your part, including any settlement, our firm's fees shall, after payment of all Costs and Expenses (as defined below), be twenty one percent (21%) of (1) the total gross total dollar amount of any settlement reached between you and any of the Defendants or any related or affiliated party and (2) the total dollar amount of any judgment entered by a court-of-law, arbitrator, or mediator. In addition, you agree to pay BUPD a reduced hourly rate of $250.00 per hour for any BUPD attorneys which BUPD assigns to this matter, ***but only*** if there is a recovery on your part, including any settlement reached between you and any of the Defendants or any related or affiliated party, in excess of $400,000.00

(*Id.*) (emphasis in original)

6.  On February 14, 2019, BUPD sent a letter to the Defendants in the Litigation, Kingdom Chevrolet, Western Ave. Nissan, Inc., Richard Ruscitti, and their counsel, Gary J. Blackman. This letter notified them of the firm's attorney's fee lien on any recovery, including by settlement, under the Illinois Attorney's Fee Lien Act, 770 ILCS 5/1. A copy of this letter was

attached to BUPD's Claim No. 6-1, and a true and correct copy of Claim No. 6-1, including the notice letter, is attached hereto as Exhibit 1.[1]

7.  On October 9, 2019, the "Debtor filed his Voluntary Petition for Relief ("Petition Date") under Chapter 7 of the United States Bankruptcy Code with this Court.

8.  On June 15, 2020, BUPD filed Claim No. 6-1 in the amount of $218,443.79 as a partially secured claim in the sum of $166,621.52, based on an attorney's fee lien, and as a nonpriority general unsecured claim in the amount of $51,822.27. (Comp. ¶ 2, Exhibit A.) These sums were calculated using the hybrid/contingency payment formula in the Retainer Agreement. (*Id.*)

9.  On August 11, 2020, the Trustee filed his Motion for Approval of Settlement of Disputes with Kingdom Chevrolet, Inc., and Richard Ruscitti and Transfer of At Least 33% of Shares of Stock of Kingdom Chevrolet Inc., 25% of Shares of South Chicago Nissan d/b/a Western Avenue Nissan to Kingdom Chevrolet, Inc. And to Limit Notice to Twenty Largest Creditors (Doc 59) (the "Settlement Motion").

10. In the Settlement Motion, the Trustee sought an order approving a settlement agreement with the Defendants in the Litigation which would include a payment of $550,000.00 (Settlement Motion, ¶ 11, Ex. A, Mutual Release and Settlement Agreement (the "Settlement Agreement"), Doc 59-1).

11. On August 28, 2020, BUPD filed a Notice of Objection Pursuant to Second Amended General Order No. 20-03 (Doc 73), and objected to the Settlement Motion on the grounds that it failed to notify the Court or creditors of BUPD's secured claim to the settlement

---

[1] In his Complaint, the Trustee alleged that "a true and correct copy of Claim No. 6-1 is attached hereto as **Exhibit A** (with only the attached 'Ruscitti Retainer Agreement' as an exhibit as defined hereafter)." (Comp. ¶ 2.) Exhibit A to the Complaint contains just one of the 49 pages of attachments to Claim No. 6-1.

-3-

proceeds or to pay for this secured claim, and that the proposed settlement was for less than half of the amount of a previous settlement offer made to the Debtor.

12. The Settlement Motion was granted in an Order entered on September 1, 2020 (Doc 76). This Order provided that "the lien of Michael Pomerantz and/or Brown, Udell, Pomerantz & Delrahim, Ltd.," would be "transferred to the settlement consideration pending further orders of this Court determining the nature, extent, validity and amount of all such liens and interests." (*Id.*)

13. On February 3, 2022, the Trustee filed this Complaint for "entry of an order of [sic] invalidating and denying Claim No. 6-1 of Defendant, BROWN, UDELL, POMERANTZ & DELRAHIM, LTD." (Comp. at 5.)

**ARGUMENT**

I. **LEGAL STANDARD**

14. On a motion to dismiss under Rule 12(b)(6), "all well-pleaded factual allegations in the complaint are taken as true, and all reasonable inferences are drawn in favor of the non-movant." *In re Glick,* 568 B.R. 634, 641 (7th Cir. 2017), citing *Silha v. ACT, Inc.*, 807 F.3d 169, 173-74 (7th Cir. 2015).

15. To survive a Rule 12(b)(6) motion to dismiss, the complaint must describe the claim in enough detail to give fair notice of the claim and the grounds for it. *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019); *see also* Fed. R. Civ. P. 8(a) (made applicable by Fed. R. Bankr. P. 7008). "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And while specifics are unnecessary, *Olson v. Champaign Cty*, 784 F.3d 1093, 1098 (7th Cir. 2015), some facts must support each element, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

16. In addition to the allegations, "the court considers facts evident from exhibits attached to the complaint," *In re Glick,* 568 B.R. at 641, citing *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639-40 (7th Cir. 2015); Fed. R. Civ. P. 10(c) (made applicable by Fed. R. Bank. P. 7010), as well as facts alleged for the first time in a response to a dismissal motion, provided they are consistent with the complaint, *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012), and do not concern fraud, *United States ex rel. Hanna v. City* of Chicago, 834 F.3d 775, 779 (7th Cir. 2016).

## II. THE TRUSTEE'S REJECTION OF BUPD'S RETAINER AGREEMENT IS A BREACH OF THAT AGREEMENT GIVING RISE TO DAMAGES.

17. The Trustee's only argument for limiting BUPD to a remedy in quantum meruit is that the Retainer Agreement was rejected as an executory contract due to the lack of assumption by the Trustee under Section 365(d)(2) of the Bankruptcy Code, 11 U.S.C. § 365(d)(2), so that BUPD is entitled only to a quantum meruit award under Illinois law. (Comp. ¶¶ 8-9.) This contention has no basis in the Bankruptcy Code or in Illinois law.

18. None of the cases the Trustee cited in his Complaint support his quantum meruit argument. His only reported bankruptcy case on this point, *In re Western Real Estate Fund, Inc.* 922 F.2d 592, 595 (10th Cir. 1995), actually undercuts his argument, and supports awarding BUPD its fees based on the hybrid/contingency basis in the Retainer Agreement.

19. In *Western*, the appellant/lawyer sought his attorney's fees under a pre-petition retainer agreement which "provided a hybrid form of compensation, consisting of a reduced hourly fee supplemented with a reduced contingency fee." 922 F.2d at 594. After filing suit, the appellant "secured his contract fee by filing an attorney's lien under state law" and later obtained a $3 million settlement offer. *Id.* When the debtor petitioned for bankruptcy under Chapter 11,

-5-

534186

appellant filed a proof of claim. *Id.* Over a year after the petition-date, the litigation settled, and the debtor was paid without any reduction for appellant's fees. *Id.* at 595.

20. In a hearing on appellant's claim, the bankruptcy court in *Western* "held that should [debtor] reject the retainer agreement, [appellant's] recovery, if any, in this regard would be determined (*i.e.*, limited) by quantum meruit principles." *Id.* The debtor then rejected the retainer agreement, and the court entered a final order which followed its earlier analysis by approving a quantum meruit fee claim and rejecting appellant's contingency fee claim to the settlement which was finally reached. *Id.*

21. If the appellate court had affirmed the holding of the bankruptcy court, later adopted by the district court, the *Western* decision would support the Trustee's Complaint, as he alleged. But the appellate court **reversed**, finding that "the analytical process followed by the bankruptcy court contravened the controlling statutory provisions." *Id.* at 595. Specifically, the court held that analysis of appellant's claim should have proceeded by "(1) acknowledgment of [debtor's] breach of its hybrid hourly/contingency fee contract with [appellant] under section 365(g); (2) assessment of damages under applicable Oklahoma law . . . ; (3) determination under section 502(b)(4) and attendant federal bankruptcy standards, of the reasonableness of the damages claim afforded [appellant] by state law; and (4) reduction of [appellant's] claim by whatever extent, if any it is deemed excessive." *Id.* at 597. Finding that the lower court's erroneous approach "may well have cost [appellant] the benefit of his contingency fee bargain," the court reversed the bankruptcy court's determination of appellant's claim for pre-petition fees, and remanded for reconsideration. *Id.* at 597.

22. The Tenth Circuit in *Western* also noted that, "in other settings where the bankruptcy court has ignored a debtor's reasonable contingency fee obligation and, instead,

-6-

substituted its own determination of a (much lower) reasonable hourly fee, appellate courts have reversed and directed payment in accordance with the terms of the contingency fee agreement. *Id.* at 597-598. One of the cases cited for this point was a Seventh Circuit decision, *In re Innkeepers of New Castle, Inc.*, 671 F.2d 221, 227-28 (7th Cir. 1982).

23. The *Innkeepers* case also involved the claim of an attorney-claimant who had provided pre-petition legal services to the debtor under a contingency fee agreement and had perfected an attorney's fee lien. 671 F.2d at 222. In the debtor's subsequent bankruptcy proceeding, the district court refused to give effect to the contingency fee contract or enforce the liens, and instead set the attorney fee awards on a 'reasonable fee' basis in accordance with bankruptcy law. *Id.* The Seventh Circuit reversed this fee award and remanded with instructions that the district court conduct an evidentiary hearing to determine the "proper amount in settlement and discharge of [claimant's] perfected attorney's lien pursuant to the terms of his valid fee contract under Indiana law, and shall distribute that amount to [claimant] from the net recovery." *Id.* at 231.

24. The Trustee's unreported Kansas district court case, *In re Sydmark,* Case No. 06-41218, 2008 Bankr. LEXIS 1861 (Bankr. Kan. 2008) (Comp. ¶ 8), is inapposite, as it deals with an attorney's post-petition bankruptcy services. In *Sydmark*, the Chapter 7 debtor's counsel sought payment for post-petition, bankruptcy work performed under a retainer agreement which created a security interest in debtor's income tax refunds. *Id.* at 24-25. The trustee moved to reject the retainer agreements and for turnover of tax refunds held in escrow under those agreements. *Id.* The court held that income tax refunds assigned to counsel in a retainer agreement could not be used to pay attorney fees for post-petition services because Section 330(a) of the Bankruptcy Code, not Section 329, governs fees for post-petition work done by a

debtor's counsel who is not employed by the trustee, as authorized by Section 327. *Id.* at 17. In the discussion of trustee's rejection of the retainer agreements under Section 365(d)(1), the court found that: "although the attorney contracts are deemed rejected, they have not been terminated," and the "rejections constituted breaches as of the date of filing." *Id.* at 42-43. The court did not hold, as Trustee alleged, that it rejected the Retainer Agreement by failing to accept it, or that rejected retainer agreements limit attorney's fee claims to a quantum meruit recovery.

25. The Trustee also alleged that "[u]pon rejection of the Ruscitti Retainer Agreement, Claimant is entitled only to compensation based on a *quantum meruit* basis pursuant to the applicable law of the State of Illinois," based on two cases, *Rhoades v. Norfolk & W.R. Co.*, 78 Ill. 2d 217, 227-28 (1979) and *In re Estate of Callahan*, 144 Ill. 2d 32 (1991). (Comp. ¶ 9.) But these cases involve attorneys who sought fees after being discharged by their clients, not bankruptcy trustees who sought to reduce or eliminate contractual attorney's fee obligations to the debtor's pre-petition attorneys by rejecting the fee contract. The concern in *Callahan,* 144 Ill. 2d at 38-39, and *Rhodes,* 78 Ill. 2d at 228-229, was that enforcing a contingency fee agreement after counsel had been fired would infringe upon a party's right to discharge his counsel without incurring damages for breach of contract. There is no such concern when a fee agreement is rejected by a trustee or debtor in possession under bankruptcy law, because the rejection is a breach, leaving a claim for damages.

26. In *Rhoades,* a law firm sued to enforce a contingency fee agreement the client signed a day before he called the firm to say he had changed his mind and decided not to sue the railroad, its employer, for personal injuries. *Id.* at 221. Four days later, the law firm filed suit for its former client and "asserted an attorney's lien by delivering a declaration of lien to the railroad." *Id*. When the railroad later paid its injured employee a settlement, the law firm filed a

petition for attorney's fees in the amount of 25% of the settlement. *Id.* at 222. The court in *Rhoades* held that "by the time the firm attempted to perfect its lien, there was no longer an underlying attorney-client relationship, a necessity for the perfection of the attorney's lien." *Id.* at 226.

27. As to the fee award, the court in *Rhoades* agreed with the reasoning in *Fracasse v. Brent*, 494 P.2d 9 (1972), which held that when an attorney is discharged without cause, he may still recover reasonable fees, and that "in cases in which an attorney who has done much work is fired immediately before a settlement is reached, the factors involved in determining a reasonable fee would justify a finding that the entire contract fee is the reasonable value of services rendered." *Id.* at 230. Since BUPD was the Debtor's counsel of record in the Litigation when the Trustee reached a settlement agreement in July 2020, and had worked on the Litigation since 2018, the reasonable fees value of its services is the "entire contract fee," even under *Rhodes*.

28. In the Trustee's only other Illinois case, *In re Estate of Callahan*, 144 Ill. 2d 32 (1991), the Illinois Supreme Court distinguished its decision in *Rhodes*, and held that a firm could recover a reasonable attorney fee when the case remained pending with a subsequent law firm, and no settlement had been reached or judgment entered. This case has no relevance here, where the Litigation has already been settled.

29. Accordingly, the Trustee has asserted no legal authority for its claim that BUPD is limited to a quantum meruit recovery rather than a claim for its contractual fees, and the Trustee's allegations seeking this relief are insufficient, as a matter of law, and should be dismissed with prejudice.

534186

30. Alternatively, if the Court should find that BUPD's Claim is based on quantum meruit, BUPD must still be given an opportunity to establish the reasonable value of its services based on the detailed fee records provided with the Claim, and on evidence of the qualifications and experience of BUPD's attorneys and on the complexity and difficulty of the case.

### III. THE TRUSTEE HAS FAILED TO ALLEGE ANY GROUNDS FOR INVALIDATING BUPD's STATUTORY ATTORNEY'S FEE LIEN.

31. The Trustee alleged that BUPD's attorney's lien is invalid because the "notice of attorney's lien attached to Claim No. 6-1, a copy of which is attached hereto as Exhibit B, fails to comply with the Illinois Attorneys Lien Act, 770 ILCS 5/1 by not 'stating therein the interest they have in such suits, claims, demands or causes of action.'" (Comp. ¶ 12.) Further, the Trustee alleged that "BUPD's description of its interest as 'a retainer agreement to compensate us' fails to even attempt to adequate [sic] describe a lien interest and its lack of specificity as to the amount of BUPD's compensation secured by the attorney's lien is therefore void." (*Id.* ¶ 13.) And according to the Trustee, the description in BUPD's attorney's lien notice "as compensating the attorneys as opposed to the attorney's [sic] receiving compensation directly from the res of the recovery defeats any attorney's lien or equitable assignment of an interest in Debtor's Kingdom Litigation." (*Id.* ¶ 14.)

32. The Trustee's allegations fail, as a matter of law, to support a claim to invalidate BUPD's attorney's lien because the Trustee relied on and quoted from BUPD's October 28, 2018 Retainer Agreement, attached as Exhibit B to the Complaint, not on BUPD's attorney lien notice. As noted above, the Complaint does not even attach a copy of BUPD's notice of attorney's lien, dated February 14, 2019, which is attached hereto as Exhibit 1.

33. Under the Illinois Attorney Lien Act, perfection of an attorney lien for enforcement requires that the attorney "serve notice in writing, which service may be made by

-10-

534186

registered or certified mail, upon the party against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action." 770 ILCS 5/1. BUPD's notice of attorney's lien was sent to Defendants and their counsel by certified mail and stated:

> Pursuant to 770 ILCS 5/1, please take notice that Michael Helmstetter has entered into a retainer agreement to compensate us for services rendered and to be rendered in connection with this matter from any amount that may be recovered by way of suit, settlement, or otherwise. Accordingly, Brown, Udell, Pomerantz & Delrahim, Ltd. asserts a lien pursuant to said statute.

Exhibit 1, Desc Attachment 1 Page 21 of 49.

34.     Because BUPD's attorney lien notice was in strict compliance with the Act's requirements for enforcement, the Trustee has failed to allege grounds for invalidating the secured portion of BUPD's Claim and its Complaint for this relief should be dismissed under Fed. R. Civ. Pro. 12(b)(6).

534186

WHEREFORE, Brown, Udell, Pomerantz & Delrahim, Ltd. respectfully request that this Honorable Court enter an order granting its Motion to Dismiss the Trustee's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, with prejudice, and for such other relief as the Court deems just.

Dated: March 4, 2022　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　BROWN, UDELL, POMERANTZ & DELRAHIM, LTD.,

　　　　　　　　　　　　　　　　　　　　By: *Shelley Smith*
　　　　　　　　　　　　　　　　　　　　　　　One of its Attorneys

Michael Pomerantz (ARDC # 6205384)
Shelley Smith (ARDC #6208287)
Brown, Udell, Pomerantz & Delrahim, Ltd.
225 W. Illinois St., Suite 300
Chicago, IL 60654
Tel: (312) 475-9900
Fax: (312) 475-1188
ssmith@bupdlaw.com

534186

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| IN RE<br>    MICHAEL S. HELMSTETTER,<br>    Debtor | )  Case No.: 19-28687<br>)  Chapter 7<br>)  Hon. Jacqueline P. Cox<br>) |

## CERTIFICATE OF SERVICE

I, Shelley Smith, an attorney, certify that a copy of this **MOTION TO DISMISS TRUSTEE'S ADVERSARY COMPLAINT UNDER RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE.**, was served upon the persons listed on the attached service list on March 4, 2022, via electronic notice by Pacer/ECF.


Michael S. Pomerantz (ARDC # 6205384)           _/s/ Shelley Smith_
Shelley Smith (ARDC # 6208287)
Brown, Udell, Pomerantz & Delrahim, Ltd.
225 W. Illinois Street, Suite 300
Chicago, IL 60654
312-475-9900
mpomerantz@bupdlaw.com
ssmith@bupdlaw.com

-2-

## SERVICE LIST

Patrick S. Layng, U.S. Trustee

David R. Herzog, Herzog & Schwartz PC

Gregory K. Stern, Gregory K. Stern, P.C.

Richard L. Hirsh, Richard L. Hirsh, P.C.

Debra Devassy Babu, Askounis & Darcy, PC

Jamie L Burns, Levenfeld Pearlstein, LLC

Whitman H. Brisky, Mauck & Baker LLC

Christopher R. Schmidgall, Law Office of Garry A. Weiss, PC

Charles Tatelbaum, Tripp Scott PA

James M. Yannakopoulos, Koransky Bouwer & Poracky PC