```
           IN THE UNITED STATES BANKRUPTCY COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION



Michael Helmstetter,           )   19 B 28687
                               )   Chicago, Illinois
                               )   1:30 p.m.
                    Debtor.    )   November 16, 2021



        TRANSCRIPT OF PROCEEDINGS VIA ZOOM BEFORE THE
                HONORABLE JACQUELINE P. COX


APPEARANCES:

For the Debtor:                Mr. Nick Tancredi;

For the Chapter 7 Trustee:     Mr. Dennis Quaid;

Chapter 7 Trustee:             Mr. David Herzog;

For County Mayo Corporation
and 2401 South Michigan:       Mr. Whitman Brisky;

For Benitta Berke:             Ms. Cindy Johnson;

For Nissan North
America, Inc.:                 Mr. Charles Tatelbaum;

For Santander National Bank:   Ms. Debra Devassy Babu;

For World Business
Lenders, LLC:                  Mr. Jeffrey Paulsen;

For Terry Gaouette:            Mr. Victor Allen;


Court Reporter:                Jerri Estelle, CSR, RPR
                               U.S. Courthouse
                               219 South Dearborn
                               Room 661
                               Chicago, IL  60604.
```

1  THE CLERK: Michael Helmstetter.
2  MR. QUAID: Good morning, Your
3  Honor -- or good afternoon, Your Honor. Dennis Quaid
4  appearing as one of the lawyers for the trustee,
5  David Herzog.
6  MR. HERZOG: Good afternoon --
7  THE COURT: All right.
8  MR. HERZOG: -- Your Honor.
9  David R. Herzog, the Chapter 7 Trustee.
10  THE COURT: Okay. Where are we --
11  MR. BRISKY: Good afternoon, Your
12  Honor. Whitman Brisky on behalf of the landlord
13  County Mayo, and 2401 South Michigan.
14  MS. JOHNSON: Good afternoon, Your
15  Honor. Cindy Johnson on behalf of Benitta Berke.
16  MR. TATELBAUM: Your Honor, good
17  afternoon. Charles Tatelbaum on behalf of Nissan
18  North America, Inc.
19  MS. DEVASSY BABU: Good afternoon,
20  Your Honor. Debra Devassy Babu on behalf of
21  Santander Bank.
22  THE COURT: Is there anybody else?
23  MR. PAULSEN: Good afternoon, Your
24  Honor. Jeffrey Paulsen for World Business Lenders.
25  THE COURT: All right. Let's proceed.

1       MR. ALLEN:  Good afternoon, Your
2  Honor.  Victor Allen on behalf of Terry Gaouette.
3       THE COURT:  On behalf of who?
4       MR. ALLEN:  Terry Gaouette.
5       THE COURT:  All right.  Let's proceed.
6       MR. QUAID:  Your Honor, this is the
7  hearing on the motion of the trustee for authority to
8  sell certain causes of action against the people who
9  are appearing today or their clients.  There have
10 been written objections filed.  We have responded on
11 behalf of the trustee.
12      As part of our response, we have made
13 changes to the bidding procedures for which we're
14 seeking approval today.  The changes in the bidding
15 procedures are the elimination of a bulk bid.  We
16 will solicit only individual bids for the individual
17 causes of action, and we've made it very clear that
18 the trustee is not picking the winning bid.  The
19 trustee will only recommend to the court who the best
20 and highest bid is.
21      The other change that I'm going to
22 propose is a change in the dates for the submission
23 of bids and the court hearing to confirm any sale or
24 any bids that are made for sale.
25      Mr. Tancredi has submitted today a bid

1  in the sum of $500,000 for all of the causes of
2  action subject to certain contingencies.  That bid
3  has to be changed.  It has to be --
4                THE COURT:  Yes.
5                MR. QUAID:  -- changed from a bulk bid
6  to individual bids.  And I propose that since he
7  needs time for financing, that we change the dates
8  and make the deadline for bids to be January 4 of
9  next year, with a hearing on January 11 of next year,
10 if that date is amenable to the court.
11               THE COURT:  Do you have a proposed
12 order with that information in it?
13               MR. QUAID:  No, Your Honor, we would
14 have to submit a new order.
15               THE COURT:  Any response?
16               MR. BRISKY:  Your Honor, Whitman
17 Brisky on behalf of the landlord.  And unlike most of
18 the other potential defendants, we actually support
19 the -- the sale with respect to our -- the claims
20 against our clients.  However, we want to make sure
21 that the description of the claims in the order in
22 terms of being solved includes everything that the --
23 that the debtor has against our client.  And the
24 description was very general, and I'd just like to
25 work with the trustee to make sure that it's specific

1  enough to include everything.
2              THE COURT:  That benefits the trustee
3  because then you don't have future litigation about
4  what was and wasn't sold.
5              MR. BRISKY:  Exactly.
6              THE COURT:  Hopefully.  Hopefully.
7              MR. TATELBAUM:  Your Honor, Charles
8  Tatelbaum on behalf of Nissan North America.  Nissan
9  also agrees on the same terms.  We'd just like to
10 make sure that the description is adequate, but we
11 have no objection, and, in fact, support the sale so
12 that the claims aren't abandoned to the debtor and
13 estate money is granted -- is gained for the benefit
14 of all creditors of the estate.
15             THE COURT:  Anything further,
16 Mr. Allen?
17             MR. ALLEN:  No, Your Honor.  We would
18 generally object as we specified in our objection,
19 but our main concern was the bulk part, that it was
20 initially contemplated as being done in bulk.  And we
21 would certainly prefer to have this as individual
22 claims, individual bids.
23             THE COURT:  Attorney Babu, any other
24 comment?  Anything you'd like to say?
25             MS. DEVASSY BABU:  Nothing further

1  than what's in my objection, Your Honor.  I think
2  with respect to Santander's two -- the two cases
3  involving Santander, I'm just not certain how the
4  trustee can sell those.
5             Mr. Tancredi is representing New City
6  with respect to the FCA appeal.  That's one of the
7  cases that the trustee purports to sell.  At the time
8  I filed my objection, Mr. Tancredi had filed a motion
9  for extension of time, which was granted.  He filed
10 his brief a couple of weeks ago, so I just don't
11 think there's anything to sell on the trustee's part
12 with respect to that case.
13             And then I outlined the other matter
14 that was before Judge Blakey.  That was closed two
15 years ago, so I don't have anything further to add
16 beyond what was in my objection.
17             THE COURT:  So you would like to have
18 certain claims not be sold?
19             MS. DEVASSY BABU:  Well, I just -- I
20 don't -- at least certainly with respect to the
21 appeal where Mr. Tancredi is representing New City in
22 that case, I don't see how that can be sold.  I don't
23 know.  I guess if he wants to -- if Mr. Tancredi is
24 going to purchase it, even though he's already
25 representing New City, I suppose that's -- that's his

1 decision. But, you know, my objection, the two cases
2 involving Santander, I don't understand what's
3 actually being sold or how those can be sold.
4             THE COURT: Mr. Quaid.
5             MR. QUAID: Well, Your Honor, the
6 motion describes the causes of action. Certainly,
7 there's a difference between me and each of the
8 objectors. The objectors say there is no cause of
9 action or they're innocent or some business that
10 Mr. Helmstetter owns the cause of action. And --
11             THE COURT: Right, another entity owns
12 the cause of action. Go ahead.
13             MR. QUAID: Yes. And, certainly, when
14 somebody commits a wrong, they may -- they may damage
15 more than the -- Mr. Helmstetter's business. They
16 may damage him too since often he was a guarantor of
17 the obligations under the arrangement between these
18 parties. And I think we should let the market
19 determine whether somebody thinks there is something
20 to buy. Let's -- let's submit these causes of action
21 for sale and see if anyone bids on them. We have one
22 potential bid right now, let's see if there aren't
23 any others.
24             THE COURT: Now, when these causes of
25 action are sold, where will they be litigated?

8

1          MR. QUAID:  Your Honor, once they're
2  sold, they're outside of the bankruptcy court and its
3  jurisdiction, and the buyer will decide where to
4  litigate it, presumably in state court or federal
5  court, but not here, not here in the bankruptcy.
6          THE COURT:  Anything further,
7  Ms. Johnson?
8          MS. JOHNSON:  A couple of things.  On
9  this point, I think what our objection was is that
10 this really isn't about an action of the debtor.  But
11 if the trustee wants to sell, and if a sale order
12 says that they are selling whatever right, title, and
13 interest the debtor claims to have, as opposed to --
14 if it's zero, then I guess the buyer has bought
15 nothing in reality.  But as long as it says whatever
16 right, title, and interest the debtor may have that
17 is owned by the estate.  Might be nothing, who knows.
18         THE COURT:  That's an excellent
19 suggestion.  That's an excellent suggestion.
20         MS. JOHNSON:  I don't have a problem
21 as long as that's made clear.
22         And then I'm -- I'm still a little
23 concerned about -- I understand, and I've always
24 understood that the trustee only recommends what they
25 think is the highest and best bid for each of these

1  causes of action.  But the problem is is that they
2  did in their original bid procedures say they would
3  use not only numbers, but other things as well, other
4  criteria.
5              THE COURT:  Yes.
6              MS. JOHNSON:  I think Your Honor
7  should be presented with a list of all bids attached
8  to any motion to approve or recommend a particular
9  bid, and that way Your Honor can go down the line and
10 decide if another bid you think is more appropriate
11 or is really highest and best that the estate should
12 accept.  I mean, that way you know not only what the
13 trustee wants to sell, but if you think that's not a
14 good bid, you're not just saying I refuse to approve
15 it.  At least you'll be able to see what the other
16 bids were.  That would be my only other suggestion,
17 Your Honor.
18             THE COURT:  So, do you think it would
19 be a good idea to record the auction, the bids?
20             MS. JOHNSON:  I think they're
21 requesting sealed bids to be presented and sent in.
22 So --
23             THE COURT:  I see.
24             MS. JOHNSON:  -- they can just attach
25 them or they can -- or if people want them to be

1 confidential for whatever reason, if they're not the
2 winning bidder, I suppose Your Honor could accept
3 them in camera. But at least I think Your Honor
4 should have them in front of you, even if maybe we
5 don't all have it, if there's some confidentiality.
6 Obviously, in bankruptcy you want things to be as
7 public as possible. But if there's some reason, I at
8 least think Your Honor should have them in front of
9 you.
10             THE COURT: Mr. Paulsen, anything
11 further?
12             MR. QUAID: Your Honor, we have no
13 trouble with that.
14             THE COURT: Hold on, Mr. Quaid.
15             Mr. Paulsen, anything further?
16             MR. PAULSEN: Yes, Your Honor. I
17 think there's a couple points that -- that should be
18 made here. First of all, that if the purported bid
19 that we have from Mr. Tancredi -- Mr. Tancredi's the
20 lawyer who represents the debtor -- the trustee
21 represented in his motion that Mr. Tancredi -- or his
22 reply, that Mr. Tancredi had been retained to pursue
23 these claims on a contingent basis, so there's some
24 questions there.
25             The bid procedures require submission

1  of a 50 percent deposit.  It's not clear whether he's
2  submitted a deposit or if this is just a statement to
3  make the court think that there's some value here
4  when there's not an actual, real bid.  That's unclear
5  to me.
6              But beyond that, even if there is
7  some -- some bid here from some insider of the
8  debtor, I don't think that changes anything.  We had
9  extensive --
10             THE COURT:  I don't -- go ahead.  Go
11 ahead.
12             MR. PAULSEN:  We had extensive
13 conversations with Mr. Quaid about the merits of this
14 case.  After we discussed with him why all the -- the
15 cases were not good, Mr. Quaid came back and said,
16 well, maybe you just want to buy the claims so the
17 debtor doesn't pursue this frivolous claim against
18 you.  And to me, when you have a trustee who is going
19 out there and saying, I'm going to sell this
20 frivolous claim, I don't think that's a good use of
21 the bankruptcy system.
22             Ms. Johnson brought up the point that,
23 you know, maybe we just sell whatever the debtor's
24 interest in it is in this piece of property.  But if
25 a debtor comes into bankruptcy and files a schedule

1  and says I own the country of France, and it's worth
2  a trillion dollars, right, a trustee's not going to
3  sell that because there's some obligation on the
4  trustee's part to investigate the cause of action.
5  And they're not going to seek an order allowing them
6  to sell whatever the debtor's interest is in the
7  country of France.
8              We have the same situation here.  The
9  trustee admits in his motion that there's no evidence
10 to support these claims, that he doesn't want to
11 pursue these claims, and yet he's coming in here
12 saying the only people who are going to buy these
13 claims are these defendants, and we're going to do
14 this procedure to try to extract some money from
15 them.  And with all these factors put together, I
16 think there's just no --
17             THE COURT:  Are you suggesting,
18 Mr. Paulsen, that I enter an order saying certain
19 claims cannot be sold because they have no merit or
20 something like that?
21             MR. PAULSEN:  Yes, Your Honor.
22             THE COURT:  Have that ready for the
23 January 11th hearing.
24             Anything further, Mr. Quaid?
25             MR. QUAID:  Your Honor, there's

1  certainly a big difference between trying to sell the
2  country of France and a cause of action.  Everyone
3  disagrees on causes of action, if they're good or
4  bad.  Your Honor, we want to proceed, and I think
5  that would allow us to come back on a hearing where
6  we are not speculating as to whether there will be
7  bids or won't be bids.  We'll come back, and we'll
8  present all the bids to the court, and then we can
9  all decide the best action.
10             THE COURT:  All right.  I expect to
11 have the responses between now and January 11.  I'm
12 happy I have a -- I think I have a grasp, a good
13 preview of what's going to happen.  I'll continue
14 this matter.
15             Get that order in, Mr. Quaid.
16             MR. QUAID:  Yes, I will.
17             THE COURT:  Today I'm going to enter
18 an order that says this matter is continued to
19 January 11, next year, at 1:30.
20             But I'm also expecting an order that
21 sets it all out, the January 4 deadline.  All right?
22 That's it.
23             MR. QUAID:  Very good.
24             MR. TANCREDI:  Your Honor --
25             THE COURT:  When am I going to get

1  that --
2              MR. TANCREDI:  -- may I address the
3  court?
4              THE COURT:  When am I going to get
5  that order?
6              MR. QUAID:  You will get it by
7  tomorrow, Your Honor.
8              THE COURT:  Okay.  Thank you.
9              MR. TANCREDI:  Your Honor, may I
10 address the court?
11             THE COURT:  Who is that?
12             MR. TANCREDI:  This is Nick Tancredi,
13 Your Honor, on --
14             THE COURT:  Go ahead.
15             MR. TANCREDI:  -- behalf of the
16 debtor.
17             Thank you, Your Honor.
18             Your Honor, our -- our position is
19 as -- as stated on the record at the prior hearing
20 that really these matters are best addressed by
21 having them returned to the debtor so that they could
22 be resolved outside of the bankruptcy process in --
23 in regular civil litigation.
24             First of all, Your Honor, if I might,
25 I'd like to correct a misunderstanding that my

1  colleague put on the record.  I -- I was never
2  retained to do anything on a contingency basis.  That
3  comment was really a -- a first -- a first comment in
4  response to a question of what did I think a
5  contingency cost might be for this.
6              And, in fact, what I had mentioned was
7  25 percent for the accountants and 25 percent for --
8  for the attorneys.  So -- and that was just in the
9  conversation with -- with the trustee.  So I'd
10 like -- I'd like that cleared up as a matter of
11 record.
12             But beyond that, Your Honor, going
13 forward here, just -- just does not merit the court's
14 time, nor the trustee's.  These claims are -- are
15 extremely complex.  It's not something that could
16 easily be evaluated between now and January or
17 February.  And -- and we really feel that it's better
18 to return them so that right now the debtor can deal
19 directly with -- with the other claimants.
20             At present, Your Honor, the debtor's
21 stance here with the finding of this court and the
22 U.S. District Court is that he lacks standing.  So
23 where we might be able to resolve these much more
24 efficiently, we're -- we're hampered from doing so.
25             The other point, Your Honor, is that

1  there are two appeals pending.  One, as my colleague
2  has mentioned, deals with the FCA and Santander
3  claim.  The other is the one as to the standing of
4  the debtor.  Your Honor, we really feel that this
5  matter should be, at a minimum, held in advance
6  until, you know, those appeals are -- are resolved.
7  And if it -- if it helps to put the case on an
8  inactive status or ask the Seventh Circuit for an
9  expedited resolution, you know, we're certain --
10 certainly would -- would support that.  But -- but
11 barring --
12            THE COURT:  But in order to have a
13 motion to stay pending appeal, you have to check the
14 rules, and get it on file.
15            MR. TANCREDI:  Yes, Your Honor.
16            THE COURT:  Read all the required
17 elements.
18            MR. TANCREDI:  Thank you, Your Honor.
19            THE COURT:  All right.  Thank you all
20 very much.
21            MR. QUAID:  Thank you, Your Honor.
22            (Which were all the proceedings had in
               the above-entitled cause, November 16,
23             2021, 1:30 p.m.)
   I, JERRI ESTELLE, CSR, RPR, DO HEREBY CERTIFY
24 THAT THE FOREGOING IS A TRUE AND ACCURATE
   TRANSCRIPT OF PROCEEDINGS HAD IN THE ABOVE-
25 ENTITLED CAUSE.  /S/